# United States Court of Appeals
# for the Third Circuit

---

IN RE:

WHITTAKER, CLARK & DANIELS, INC.,

*Debtor-Appellee,*

---

PETER PROTOPAPAS; OFFICIAL COMMITTEE OF TALC CLAIMANTS,

*Appellants,*

v.

WHITTAKER, CLARK & DANIELS, INC.,

*Appellee,*

---

On Appeal from the United States District Court for the District of New Jersey
Civil Action No. No. 23-4151 (Quraishi, J.)

---

## APPELLANTS' CONSOLIDATED OPENING BRIEF
## AND JOINT APPENDIX
## VOLUME I OF II
## (Pages JA1 to JA46)

---

BRYAN KILLIAN
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004
bryan.killian@morganlewis.com

ANDREW J. GALLO
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110

*Counsel for Appellant Peter Protopapas*

MATTHEW KUTCHER
COOLEY LLP
110 North Wacker Drive, Suite 4200
Chicago, IL 60606
mkutcher@cooley.com

CULLEN D. SPECKHART
PATRICK J. HAYDEN
EVAN M. LAZEROWITZ
JEREMIAH P. LEDWIDGE
COOLEY LLP
55 Hudson Yards
New York, NY 10001

BENJAMIN B. SWEENEY
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401

*Counsel for Appellant the Official Committee
of Talc Claimants*

*(Additional Counsel Listed in Signature Block)*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Third Circuit Local Rule 26.1, Appellants make the following disclosures:

## The Official Committee of Talc Claimants

Appellant the Official Committee of Talc Claimants of Whittaker, Clark & Daniels, Inc. ("Committee") was appointed by the United States Department of Justice, Office of the United States Trustee, Regions 3 & 9, effective as of May 23, 2023. JA211. The Committee is not a corporation.

The current members of the Committee are:

1. Kathy Ripley Didawick (on behalf of Ann Ripley)

2. Blue Cross Blue Shield Association

3. Katia Figueroa

4. Virginia Harrington

5. Juliet Gray

6. Sandra Jankowski (individually and on behalf of Leo Jankowski)

7. Sarah Plant

8. Tara Valentine (on behalf of Patricia Krempecki)

9. Shelly Yerkes

## The Receiver

Peter Protopapas, in his capacity as court-appointed receiver, was appointed

by Chief Justice Jean H. Toal (Ret.), sitting by appointment on the South Carolina Court of Common Pleas in the action captioned *Sarah J. Plant and Parker Plant v. Avon Products, Inc., et al.*, C/A No. 2022-CP-40-1265 (S.C. C.P.), on March 10, 2023.  JA213.  The Receiver is not a corporation.

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION.........................................................4

STATEMENT OF THE ISSUES..............................................................4

STATEMENT OF RELATED PROCEEDINGS.....................................6

STATEMENT OF THE CASE.................................................................6

I.      Background of WCD and Its Debtor Affiliates.............................6

II.     WCD Is a Shell Company Focused on Defending Against Claims Arising from the Use of Asbestos in Talc Products .....................6

III.    The South Carolina Court Appoints a Receiver for WCD and Confirms the Receiver's Broad Authority at a Reconsideration Hearing............................8

IV.     An Unauthorized Bankruptcy Petition Is Filed on WCD's Behalf...............11

V.      The Bankruptcy Court Denies the Motion to Dismiss the Bankruptcy Case13

VI.     The District Court Dismisses the Appeal .....................................14

SUMMARY OF THE ARGUMENT .....................................................15

ARGUMENT .........................................................................................17

I.      WCD's Purported Board of Directors Lacked Authority to Petition for Bankruptcy on WCD's Behalf.........................................17

        A.      Standard of Review Pursuant to Local Rule 28.1(b) ..........17

        B.      State Law, Including State-Court Receivership Orders, Determines Who Has Authority to File a Bankruptcy Petition..............................18

        C.      The Receivership Order Divested WCD's Board of the Authority to File for Bankruptcy ..........................................19

                1.      The Text of the Receivership Order Gives the Receiver General Authority to Control the Affairs of WCD, Including Exclusive Authority to File for Bankruptcy ...............................21

2.    The Bankruptcy Court's Order Conflicts with the South Carolina Court's Interpretation of the Receivership Order ......24

3.    The Bankruptcy Court Ignored the Manifest Purpose of the Receivership Order ................................................................32

D.    South Carolina Law Allowed the South Carolina Court to Give the Receiver the Power to File Bankruptcy .............................................33

II.    The Bankruptcy Court's Review of WCD's Challenge to the Receivership Order Violated the *Rooker-Feldman* Doctrine .............................................38

A.    Standard of Review Pursuant to Local Rule 28.1(b) .........................38

B.    The *Rooker-Feldman* Doctrine Bars Federal Review of a *De Facto* Appeal of the Receivership Order ......................................................39

III.    The Bankruptcy Court's Alternative Public Policy Holding Is Meritless.....43

A.    Standard of Review Pursuant to Local Rule 28.1(b) .........................43

B.    The Bankruptcy Court's Alternative Holding Should Be Rejected....43

IV.    To the Extent the Scope of the Receivership Order Is Unclear or Nonjusticiable, the Automatic Stay Should Be Lifted Pending Review in State Court ....................................................................................................49

CONCLUSION ....................................................................................................51

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re 3P Hightstown, LLC,*
631 B.R. 205 (Bankr. D. N.J. 2021) ..................................................44

*A.M. Law & Co. v. Farmers' & Merchants' Bank,*
115 S.E. 812 (S.C. 1923) .................................................................37

*In re Allison,*
182 B.R. 881 (Bankr. N.D. Ala. 1995) ............................................50

*Alsobrook v. Watts,*
19 S.C. 539 (1883) ..........................................................................34

*Anderson v. Buonforte,*
617 S.E.2d 750 (S.C. Ct. App. 2005) ..............................................25

*In re Arista Imaging of N. Miami, LLC,*
2020 WL 609613 (Bankr. S.D. Fla. Feb. 7, 2020) ..........18, 19, 21, 40

*Avery Outdoors, LLC v. Peak Rock Capital, LLC,*
2017 WL 5178063 (W.D. Tenn. Aug. 7, 2017)................................41

*Badii ex rel. Badii v. Metro. Hospice, Inc.,*
2012 WL 764961 (Del. Ch. Mar. 12, 2012) ....................................24

*In re Bennett,*
376 B.R. 918 (Bankr. W.D. Wis. 2007) ...........................................50

*In re Bernard L. Madoff Inv. Sec. LLC,*
740 F.3d 81 (2d Cir. 2014) ..............................................................26

*Bolus v. Cappy,*
141 F. App'x 63 (3d Cir. 2005) .......................................................40

*Brookshire v. Farmers' All. Exch.,*
52 S.E. 867 (S.C. 1905) ..............................................................24, 34

*Bush v. Gore,*
531 U.S. 98 (2000)...........................................................................26

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Campione v. Best*,
868 S.E.2d 378 (S.C. Ct. App. 2021) ...........................................20, 25

*ComScape Telecomms.*,
423 B.R. 816 (Bankr. S.D. Ohio Feb. 11, 2010) ..............................18

*In re Corp. & Leisure Event Prods., Inc.*,
351 B.R. 724 (Bankr. D. Ariz. 2006).............................................45, 48

*In re del Castillo*,
2022 WL 4658687 (Bankr. D.P.R. Sept. 30, 2022).........................41

*Doe v. Bishop of Charleston*,
754 S.E.2d 494 (S.C. 2014) .........................................................20, 29

*Eddins v. Eddins*,
403 S.E.2d 164 (S.C. Ct. App. 1991) ...............................20, 21, 25, 29

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005)................................................................39, 40, 41

*In re Fine Paper Antitrust Litig.*,
695 F.2d 494 (3d Cir. 1982) .............................................................25

*First Nat. Bank of Bethel v. Nat'l Pahquioque Bank*,
81 U.S. (14 Wall.) 383 (1871) ...........................................................35

*In re Gilmore*,
261 B.R. 175 (Bankr. W.D. Pa. 2001)...............................................49

*Graefenhain v. Pabst Brewing Co.*,
870 F.2d 1198 (7th Cir. 1989) ...........................................................26

*Great W. Mining & Min. Co. v. Fox Rothschild LLP*,
615 F.3d 159 (3d Cir. 2010) ..............................................................39

*Hastert v. Illinois State Board of Election Commissioners*,
28 F.3d 1430 (7th Cir. 1994) .......................................................25, 26

vi

*Heidel v. Voight*,
456 F. Supp. 959 (E.D. Wis. 1978) .................................................................30

*In re Heritage Highgate, Inc.*,
679 F.3d 132 (3d Cir. 2012) ...........................................17, 18, 38, 43

*Home Port Rentals, Inc. v. Ruben*,
957 F.2d 126 (4th Cir. 1992) ...........................................................26

*Kirven v. Lawrence*,
137 S.E. 2d. 764 (S.C. 1964) ............................................................19

*In re Lake Cnty. Grapevine Nursery Operations*,
441 B.R. 653 (Bankr. N.D. Cal. 2010) ............................................50

*LaSala v. Bordier et Cie*,
519 F.3d 121 (3d Cir. 2008) .............................................................21

*In re LTL Mgmt., LLC*,
58 F.4th 738 (3d Cir. 2023) ..............................................................21

*In re LTL Mgmt., LLC*,
637 B.R. 396 (Bankr. D.N.J. 2022) ..............................................4, 45

*In re LTL Mgmt., LLC*,
64 F.4th 84 (3d Cir. 2023) ...........................................................4, 44

*Marx v. Gen. Rev. Corp.*,
568 U.S. 371 (2013).........................................................................38

*In re Metz*,
165 B.R. 769 (Bankr. E.D.N.Y. 1994) ........................................49, 50

*In re Milestone Educ. Inst., Inc.*,
167 B.R. 716 (Bankr. D. Mass. 1994) ..............................................50

*Monmouth Inv. Co. v. Means*,
151 F. 159 (8th Cir. 1906) ................................................................35

*In re Monroe Heights Dev. Corp., Inc.*,
    2017 WL 3701857 (Bankr. W.D. Pa. Aug. 22, 2017) ...............................*passim*

*Montgomery & Crawford v. Arcadia Mills*,
    176 S.E. 589 (S.C. 1934) ...............................................................34

*NLRB v. SW Gen., Inc.*,
    580 U.S. 288 (2017) .......................................................................22

*Pebble Creek Homes, LLC v. Upstream Images, LLC*,
    547 F. Supp. 2d 1214 (D. Utah 2007) ..............................................30

*Peppertree Resorts, Ltd. v. Cabana Ltd. P'ship*,
    431 S.E.2d 598 (S.C. Ct. App. 1993) ..............................................20

*PJM Power Providers Grp. v. FERC*,
    96 F.4th 390 (3d Cir. 2024) ...........................................................22

*Price v. Gurney*,
    324 U.S. 100 (1945).................................................................*passim*

*Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C.*
    *v. Lowenstein Sandler, P.C.*,
    839 A.2d 52 (N.J. Super. Ct. App. Div. 2003) ................................24

*In re Reinz Wisconsin Gasket, LLC*,
    2023 WL 2568326 (Del. Ch. March 20, 2023) ..................................9

*Reusser v. Wachovia Bank, N.A.*,
    525 F.3d 855 (9th Cir. 2008) ..........................................................39

*In re Rivera*,
    2014 WL 6675693 (B.A.P. 9th Cir. Nov. 24, 2014) ........................30

*In re SA Hospital Acquisition Grp.*,
    660 B.R. 97 (D. Del. May 31, 2024) ...............................................35

*Sino Clean Energy Inc. ex rel. Baowen Ren v. Seiden*,
    565 B.R. 677 (D. Nev. 2017)................................................45, 46, 48

# TABLE OF AUTHORITIES
(continued)

*In re Sino Clean Energy, Inc.*,
901 F.3d 1139 (9th Cir. 2018) ........................................18, 45, 47, 48

*In re StatePark Building Grp., Ltd.*
316 B.R. 466 (Bankr. N.D. Tex. 2004).............................................24

*Taliaferro v. Darby Tp. Zoning Bd.*,
458 F.3d 181 (3d Cir. 2006) ...............................................................39

*In re Thriftway Auto Rental Corp.*,
340 F. Supp. 595 (S.D.N.Y. 1971) ....................................................23

*Vossbrinck v. Accredited Home Lenders, Inc.*,
773 F.3d 423 (2d Cir. 2014) ...............................................................39

*W. Ben. Sols., LLC v. Gustin*,
2012 WL 4417190 (D. Idaho Sept. 24, 2012) ................................30

*WC 1st & Trinity GP, LLC, v. Milligan*,
2021 WL 6750934 (W.D. Tex. 2021)..................................................19

*In re Wilson*,
116 F.3d 87 (3d Cir. 1997) ..................................................................49

**Statutes**

11 U.S.C.
§ 305(a) ...............................................................................................50
§ 362(a) ...............................................................................................49
§ 362(d)(1) ..........................................................................................49
§ 524(g) .........................................................................................14, 47

28 U.S.C.
§ 157 ......................................................................................................4
§ 158(a) .................................................................................................4
§ 158(d) .................................................................................................4
§ 1334....................................................................................................4

S.C. Code Ann.
    § 14.32 ..................................................................................36
    § 15-65-10 ...........................................................34, 35, 36, 37
    § 15-65-10(4) ...............................................................14, 42
    § 16-65-10 ..................................................................................36
    § 33-14-320 ..........................................................35, 36, 37

## Other Authorities

A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts*
    (2012) ..................................................................................23

*Fletcher Cyclopedia of the Law of Corporations* § 7784 (Sept. 2024) ...................35

*Hon. Jean Hoefer Toal*, Univ. of South Carolina, https://perma.cc/4JCF-GYC4 ..... 8

S.C. Jurisprudence*, Receivers*
    § 3 ..................................................................................34, 36
    § 19 ..................................................................................34

# INTRODUCTION

This appeal arises from an unauthorized bankruptcy petition filed on behalf of Whittaker, Clark & Daniels, Inc. ("WCD"), a corporation that once operated one of the largest talc and industrial-compound supply-and-distribution businesses in the United States. WCD's talc contained asbestos, and for the last twenty years, WCD's only function has been to defend against lawsuits arising from the devastating health and environmental impacts of its historic operations. After one of those lawsuits yielded a $29 million jury verdict in South Carolina, Chief Justice Jean H. Toal (Ret.), sitting by appointment on the South Carolina Court of Common Pleas, sought to protect the judgment by appointing a receiver, Appellant Peter Protopapas ("Receiver"), with broad power to control WCD and its assets—including the exclusive authority to put the company into bankruptcy.

Seeking to evade the South Carolina Court's receivership order, a new set of directors claiming to act on WCD's behalf then filed a bankruptcy petition in the District of New Jersey. They had no authority to do so: the South Carolina Court had vested the Receiver with *exclusive* authority to manage WCD's affairs— including by making any decisions regarding bankruptcy—and the petition should have been dismissed. In denying the Receiver's motion to dismiss, the Bankruptcy Court committed several legal errors, any one of which warrants reversal.

***First***, the Bankruptcy Court misinterpreted the South Carolina Court's receivership order, which gave the Receiver—not anyone else—the power to decide whether to put WCD into bankruptcy. The text of the receivership order is clear: it grants the Receiver authority "as broad as the law permits" to "fully administer all assets of WCD" and "take any and all steps necessary to protect the interests of WCD." That language plainly encompasses the power to decide whether to file for bankruptcy, even if the order does not use the word "bankruptcy." And beyond the text of the receivership order, the lower courts improperly minimized the South Carolina Court's on-the-record interpretation of its own order, which confirmed that the receivership order was intended to prevent precisely what has now happened—an unauthorized bankruptcy filing by WCD's former controllers as a means of frustrating the South Carolina Court's efforts to marshal WCD's assets for talc and asbestos plaintiffs. And to make matters worse, the lower courts *sua sponte* decided that the South Carolina Court's interpretation of its order contradicts irrelevant provisions of South Carolina law—effectively reversing the court's interpretation of its own order based on a false understanding of state law. Their reading of the receivership order is indefensible, which alone is sufficient to reverse.

***Second***, the lower courts' review of WCD's attack against the receivership order violated the *Rooker-Feldman* doctrine, which prohibits federal courts from hearing challenges to state-court orders. That is unmistakably what WCD has sought

in this bankruptcy proceeding: in pursuing bankruptcy, WCD has "dispute[d] the validity and enforceability of the receivership order," insisting that the order is "neither valid nor enforceable." And the Bankruptcy Court took up that challenge, finding that the receivership order—as interpreted by the South Carolina Court itself—was "misguided," "erroneous," and "mistaken" under South Carolina law. Thus, while purporting not to disturb the receivership order, the Bankruptcy Court did just that by determining that the receivership order simply could not do what it says—vest the Receiver with exclusive authority to petition for bankruptcy—under state law. These attacks on a state-court order—whatever their merits—belong in a state-court appeal; they may not be resolved by a federal court in the first instance.

*Finally*, the Bankruptcy Court issued an alternative justification—which, again, no party had raised—that it could ignore the South Carolina Court's order on policy grounds. In particular, the Bankruptcy Court suggested that state court is simply a less efficient forum for litigating "asbestos-related" cases—a view untethered from bankruptcy law, the receivership order in this case, and basic principles of federalism and comity. This is not the first time that this particular Bankruptcy Court has given the green light to unlawful bankruptcies based on such policy preferences—only last year, this Court reversed the same Bankruptcy Court's failure to dismiss another mass-tort bankruptcy on similar policy-based grounds. *See*

*In re LTL Mgmt., LLC*, 64 F.4th 84, 99, 110–11 (3d Cir. 2023).[1]  The Bankruptcy

Court's resort to policy is a further ground for reversal.

For all of these reasons, the judgment below should be reversed, and WCD's

invalid bankruptcy case should be dismissed.  If this Court believes the Receivership

Order is unclear with respect to the authority of the appointed receiver, however, the

automatic bankruptcy stay should be lifted to allow WCD to seek review of that

order in state court.

## STATEMENT OF JURISDICTION

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. §§ 157 and

1334.  The District Court had jurisdiction under 28 U.S.C. §§ 158(a) and 1334. This

Court has jurisdiction to review the District Court's order dismissing Appellants'

appeal of the Bankruptcy Court's order pursuant to 28 U.S.C. § 158(d).  Appellants

filed timely notices of appeal on July 1, 2024.  JA1; JA4.

## STATEMENT OF THE ISSUES

1.     Did the Bankruptcy Court err as a matter of law in holding that the

Receivership Order did not grant the Receiver exclusive authority to file a

---

[1] In the decision this Court reversed, the Bankruptcy Court had claimed:  "In the eyes of this Court, the tort system produces an uneven, slow-paced race to the courthouse, with winners and losers. . . . The bankruptcy courts offer a unique opportunity to compel the participation of all parties in interest (insurers, retailers, distributors, claimants, as well as Debtor and its affiliates) in a single forum with an aim of reaching a viable and fair settlement."  *In re LTL Mgmt., LLC*, 637 B.R. 396, 414 (Bankr. D.N.J. 2022), *rev'd*, 64 F.4th 84 (3d Cir. 2023).

bankruptcy petition for WCD?  (JA655–60; JA675–83; JA34–42; Dist. Ct. Dkt. 18 at 21–34[2]; Dist. Ct. Dkt. 22 at 22–45, 53–59; JA17–25.)

2.  Did the Bankruptcy Court lack jurisdiction, pursuant to the *Rooker-Feldman* doctrine, to consider WCD's challenge to the Receivership Order under South Carolina state law?  (JA660–61; JA683–87; JA33; Dist. Ct. Dkt. 18 at 35–39; Dist. Ct. Dkt. 22 at 45–53; JA25.)

3.  Did the Bankruptcy Court err as a matter of law in relying on its policy preferences to create an exception to the rule that state law dictates who may authorize a bankruptcy petition on behalf of a corporate debtor?  (JA42–45; Dist. Ct. Dkt. 18 at 44–52; Dist. Ct. Dkt. 22 at 59–63; JA25.)

4.  To the extent the scope of the Receiver's authority under the Receivership Order is ambiguous or nonjusticiable, should the automatic bankruptcy stay be lifted to permit review of the Receivership Order in South Carolina state court?

---

[2] "Dist. Ct. Dkt." and "Bankr. Ct. Dkt." refer to docket entries of the District Court (D.N.J. No. 23-cv-4151) and Bankruptcy Court (Bankr. D.N.J. 23-13575), respectively.

## STATEMENT OF RELATED PROCEEDINGS

This case has not previously been before this Court. This appeal arises from and is related to ongoing bankruptcy proceedings in *In re Whittaker, Clark & Daniels, Inc.*, No. 23-13575 (Bankr. D.N.J.).

## STATEMENT OF THE CASE

### I. Background of WCD and Its Debtor Affiliates

On April 26, 2023, WCD filed a petition for relief under chapter 11 of the Bankruptcy Code. JA225. The same day, voluntary chapter 11 petitions were filed by WCD's Berkshire Hathaway-owned affiliates—Brilliant National Services, Inc. ("Brilliant"), L. A. Terminals, Inc. ("LAT"), and Soco West, Inc. ("Soco") (collectively, the "Debtor Affiliates" and together with WCD, the "Debtors"). WCD, Soco, and LAT are direct or indirect subsidiaries of Brilliant. From the time of their formation until substantially all the Debtors' operational assets were divested in 2004, the Debtors' businesses consisted of storage and distribution of minerals and pigments, including talc, industrial chemicals, and solvents. JA250 (¶ 16).

### II. WCD Is a Shell Company Focused on Defending Against Claims Arising from the Use of Asbestos in Talc Products

WCD began its operations as a supplier and distributor of minerals and pigments in New York in 1918. JA250 (¶ 17). In the ensuing decades, WCD was a supplier of talc containing asbestos for use in industrial settings and cosmetic products. JA298. WCD did not warn consumers that asbestos was in the talc it

supplied, and the FDA later found that its asbestos-related certifications were misleading. JA298.

In 2004, substantially all of WCD, Soco, and Brilliant's operating assets and intellectual property were sold to entities owned by Bain Capital under the umbrella of Brenntag N.A., and those entities assumed certain non-asbestos and non-environmental liabilities related to the transferred assets. JA250–51 (¶ 18).[3] As part of these transactions, WCD, Soco, and Brilliant retained (a) all liability for (i) tort claims resulting from exposure to products containing talc, asbestos, or chemical compounds that they (or their predecessors in interest) processed or distributed, and (ii) environmental remediation costs and obligations relating to their (or their predecessors in interest) production or handling of hazardous materials which contaminated certain properties; and (b) certain assets, including asbestos- and environmental-related insurance receivables and certain real estate. JA250–53 (¶¶ 16–24).

In 2007, WCD and its Debtor Affiliates were purchased by National Indemnity Company, an affiliate of Berkshire Hathaway, and since that time the Debtors have made over $300 million in payments related to talc and asbestos and environmental claims. JA245, 255–56 (¶¶ 3, 31–34).

---

[3] LAT was not involved in the 2004 transactions, as it had previously ceased all operations. JA251 (¶ 19).

### III. The South Carolina Court Appoints a Receiver for WCD and Confirms the Receiver's Broad Authority at a Reconsideration Hearing

On March 3, 2023, a jury rendered a $29 million verdict against WCD in *Sarah J. Plant and Parker Plant v. Avon Products, Inc., et al.*, C/A No. 2022-CP-40-1265 (S.C. C.P.), in the South Carolina Court of Common Pleas (the "South Carolina Court"). Sarah Plant is a 37-year-old who has been diagnosed with advanced mesothelioma. JA305.

On March 6, 2023, concerned about WCD's solvency and uncertain about its control, Plant asked the South Carolina Court to appoint a receiver for WCD. JA296–302. The Receivership motion was heard by Justice Jean Hoefer Toal (Ret.), former Chief Justice of the Supreme Court of South Carolina, acting as Circuit Court Judge in the Court of Common Pleas.[4]

On March 10, 2023, the South Carolina Court granted the Receivership motion on an expedited basis. JA304–11 ("Receivership Order"). The South Carolina Court found that WCD, if not already insolvent, was in imminent danger of insolvency and that expedited appointment of the Receiver was necessary to maintain the "status quo." JA305–08. The Receivership Order vested the Receiver "with the power and authority to fully administer all assets of WCD, accept service

---

[4] Justice Toal served as a Justice and then Chief Justice of the South Carolina Supreme Court from 1988 until her mandatory retirement in 2015. *See Hon. Jean Hoefer Toal*, Univ. of South Carolina, https://perma.cc/4JCF-GYC4 (last visited October 16, 2024).

on behalf of WCD, engage counsel on behalf of WCD and take any and all steps necessary to protect the interests of WCD whatever they may be." JA308. The Receivership Order further explained that "the powers of a receiver are as broad as the law permits." *Id.* The Receivership Order then provided, *"[i]n addition to* the powers of the Receiver set forth herein," several specific rights, authorities, and powers the Receiver would hold. JA309 (emphasis added). The Receivership Order appointed Peter Protopapas, an experienced receiver in asbestos- and/or talc-related litigation, as Receiver. JA308.[5]

On March 16, 2023, the counsel who had previously represented WCD filed a motion for reconsideration of the Receivership Order. JA316. The motion conceded that the South Carolina Court had jurisdiction over WCD and Plant's tort claims but argued that the South Carolina Court lacked jurisdiction to appoint a receiver and that the Receiver lacks authority over WCD's out-of-state assets. *See* JA318–21. The motion argued that these supposed defects rendered the Receivership Order "void." JA323–26.

On April 18, 2023, the South Carolina Court held a hearing on the

---

[5] Mr. Protopapas has been appointed as a receiver in asbestos- and/or talc-related litigation in twenty instances besides the Plant Action. JA274 (¶ 32). Mr. Protopapas was also recently appointed as a receiver over Reinz Wisconsin Gasket, LLC, a defunct asbestos gasket manufacturer, by Vice Chancellor Morgan T. Zurn of the Delaware Court of Chancery. *See In re Reinz Wisconsin Gasket, LLC*, 2023 WL 2568326 (Del. Ch. March 20, 2023).

Reconsideration motion (the "Reconsideration Hearing") and denied the motion from the bench. JA380–428. During the Reconsideration Hearing, Plant's counsel specifically raised the prospect that someone might file a bankruptcy petition on WCD's behalf—explaining that "to the extent there is a consideration of a bankruptcy filing . . . I just want it in the record for any bankruptcy judge that's looking at this issue" and asking the South Carolina Court to confirm that, if a bankruptcy petition were filed, "the Receiver is proper party to the bankruptcy. They [*i.e.*, WCD's officers and directors] don't have authority to enter a bankruptcy. They don't control it [WCD]. . . . [T]hey do not have the authority to enter into a voluntary bankruptcy." JA423 (166:24–167:15). The South Carolina Court expressly and unequivocally agreed that the Receivership Order gave the Receiver exclusive authority to put WCD into bankruptcy and that no "amorphous entity" (WCD's counsel was not forthcoming about who was controlling WCD) could do so on WCD's behalf. *Id.* (167:16–25).

The South Carolina Court gave Plant's counsel one week to memorialize its oral rulings in writing. JA425 (175:4–9). Justice Toal noted that she was providing the parties with more time than usual "for finalizing this [sic] these orders because they have to be in some kind of shape for Appellate Courts to review." JA426 (176:1–7).

Less than one week later, on April 24, 2023, Plant's counsel submitted a

proposed written order memorializing the South Carolina Court's oral ruling denying the reconsideration motion. JA272 (¶ 18); *see* JA430–48. The proposed order confirmed that once the receiver was appointed, "WCD no longer has the rights to administer" its property, and that the removal of those rights "includes, but is not limited to, the ability of the company to institute a bankruptcy proceeding." JA444 n.12. The proposed order also stated that appointment of the Receiver was warranted because "WCD was not being managed for the benefit of its creditors." JA447.

## IV. An Unauthorized Bankruptcy Petition Is Filed on WCD's Behalf

On April 26, 2023, one day before the deadline to respond to Plant's proposed order, a petition for relief under chapter 11 of the Bankruptcy Code was filed for WCD, and the automatic stay provisions of the Bankruptcy Code halted the state-court proceedings. JA225. The Receiver did not authorize the bankruptcy petition. JA272 (¶ 22). The bankruptcy filing was instead purportedly authorized by a group acting as WCD's board of directors.

The record reflects that the entities controlling WCD had started making plans for bankruptcy shortly after the Receivership Order was entered on March 10, 2023. The group formally retained bankruptcy counsel effective March 17, 2023. JA271 (¶ 14). Then, without the Receiver's knowledge or involvement, WCD's board transformed: two directors resigned, two new "independent" directors were appointed—without the consent of the Receiver—and the reconstituted board of

directors appointed Mohsin Meghji of M3 Partners to serve as Chief Restructuring Officer. *See* JA271 (¶ 15); JA259 (¶ 41). On April 12, 2023, still without the Receiver's knowledge or involvement, the group met with bankruptcy attorneys to discuss "strategic alternatives" and the "pending litigation" in South Carolina. JA271 (¶ 16); JA335 (¶¶ 3–4).

On April 26, 2023, eight days *after* the Reconsideration Hearing—where the South Carolina Court made clear that the receivership was intended to prevent WCD's board from filing WCD for bankruptcy—and one day *before* the deadline for WCD to respond to the proposed written order memorializing that ruling, WCD filed a Chapter 11 bankruptcy petition based upon the purported approval of its board of directors. JA225.

From the outset, it was clear that the Chapter 11 petition was filed in direct response to (and in direct conflict with) the Receivership Order. *See* JA323; JA326. One day after the Chapter 11 filing, Meghji filed a declaration asserting that WCD "disputes the validity and enforceability of the receivership order." JA247 (¶ 8). Similarly, at the First Day Hearing, on May 4, 2023, WCD's bankruptcy counsel stated that "the debtors question the validity of the [receivership] order." JA573 (8:15–16). Also at the First Day Hearing, WCD presented a PowerPoint presentation in which it stated that "WCD disputes the validity and enforceability of the receivership order." JA623.

## V. The Bankruptcy Court Denies the Motion to Dismiss the Bankruptcy Case

On May 3, 2023, the Receiver moved to dismiss the Chapter 11 bankruptcy, JA632, and filed an amended motion to dismiss on May 19, 2023, JA649. The Receiver's motion demonstrated that the Receivership Order had divested the board of the authority to approve a bankruptcy filing on WCD's behalf and instead gave such authority to the Receiver alone. The Receiver also contended that the *Rooker-Feldman* doctrine prevented WCD's board from using federal bankruptcy proceedings as a *de facto* appeal of the Receivership Order. JA660–61. On May 30, 2023, the Committee joined the Receiver's motion to dismiss. JA756.

On June 20, 2023, the Bankruptcy Court denied the motion to dismiss in an order and letter opinion. JA27; JA29. The Bankruptcy Court first adopted the parties' stipulated facts, declined to consider whether the South Carolina Court had jurisdiction to enter the Receivership Order, and rejected the Debtors' argument that the Receiver lacked standing to file the Motion to Dismiss. JA30–33. Turning to the merits, the Bankruptcy Court held that the Receivership Order did not remove the board's authority to file a voluntary bankruptcy petition because (1) the Receivership Order did not expressly refer to "bankruptcy," and (2) the South Carolina Court's on-the-record interpretation of the Receivership Order deserved no deference. *See* JA34–45. In the alternative, the Bankruptcy Court held that, as a matter of policy, an "exception to the general rule that state law dictates who may

file bankruptcy on behalf of a corporate debtor" was warranted because of "the unique qualities of asbestos-related bankruptcies, Congressional intent in structuring a scheme under 11 U.S.C. § 524(g) to address such claims[,] and the considerable interests of future, unidentified claimants." JA44–45. The Bankruptcy Court did not address the applicability of the *Rooker-Feldman* doctrine because, in its view, it was not "reviewing or rejecting" the South Carolina Court's ruling. JA33.

On July 3, 2023, the Receiver and the Committee filed notices of appeal to the District Court. *See* Bankr. Ct. Dkt. 246, 247.

## VI. The District Court Dismisses the Appeal

On May 31, 2024, the District Court entered an opinion and order dismissing the Receiver and the Committee's appeal from the Bankruptcy Court's order. Interpreting the Receivership Order, the District Court first determined that South Carolina law "limits the power of a receiver over a corporation to 'the property within this state,'" such that the Receivership Order's references to "the law" or "South Carolina law" implicitly precluded the Receiver from holding exclusive authority to petition for bankruptcy. JA20 (quoting S.C. § 15-65-10(4)). The District Court further attempted to distinguish authorities establishing that orders granting a receiver general authority to manage business affairs provide the receiver with exclusive authority to petition for bankruptcy, claiming that the Receivership Order "does not include explicit language delegating such power." JA22. The

District Court rejected the South Carolina Court's own analysis of the Receivership Order's scope at the Reconsideration Hearing, characterizing it as "comments made briefly during a related hearing," which in its view "were not, in themselves, an 'order' construing [the Court's] 'own previous order'" and therefore not entitled to any deference or consideration. JA25 (citation omitted). The District Court further stated that "because Justice Toal's commentary is not in and of itself a holding," the Bankruptcy Court's "decision not to rely on it cannot be violative of the *Rooker-Feldman* doctrine." *Id.* In a footnote, the District Court stated that it "does not reach" arguments regarding the Bankruptcy Court's reliance on a policy-based "exception to the default bankruptcy rules." *Id.* n.9.

This appeal timely followed.

## SUMMARY OF THE ARGUMENT

The lower courts' orders denying the motion to dismiss WCD's bankruptcy petition are legally erroneous and should be reversed.

***First***, the lower courts erred in finding that the Receivership Order did not vest the exclusive authority to file for bankruptcy in the Receiver. The plain text of the Receivership Order grants the Receiver authority "as broad as the law permits" to "fully administer all assets of WCD" and to "take any and all steps necessary to protect the interests of WCD"—language that clearly encompasses the power to put the corporation into bankruptcy, where its assets will be distributed. JA308. The

South Carolina Court confirmed that the Receiver held such authority in its on-the-record interpretation of the Receivership Order during the Reconsideration Hearing, which the lower courts erred in failing to give any weight. Finally, the lower courts erred in presuming that South Carolina law prohibited the Receiver from holding the authority expressly granted to it—based largely on inapt analogies between unrelated provisions of South Carolina law that no party had briefed or argued. South Carolina plainly permits, and certainly does not prohibit, the Receiver to hold exclusive authority to file for bankruptcy. Properly construed, the Receivership Order granted the Receiver exclusive authority to petition for bankruptcy.

*Second*, the Bankruptcy Court's consideration of WCD's challenge to the Receivership Order violated the *Rooker-Feldman* doctrine, which bars federal courts from hearing *de facto* appeals of state court judgments. Individuals purporting to act on WCD's behalf filed this bankruptcy petition because they were unhappy with the Receivership Order—and with the South Carolina Court's interpretation of that order at the Reconsideration Hearing—and in seeking bankruptcy protection, they attacked the order as "invalid" and "unenforceable." The Bankruptcy Court, for its part, permitted this bankruptcy because it believed the South Carolina Court was "misguided," "erroneous," and "mistaken" about the meaning of its own Receivership Order and about substantive South Carolina law. JA31; JA36; JA38. WCD's challenge to a state-court order—right or wrong—is not one that a federal

court can address consistent with *Rooker-Feldman*, and it should instead have been raised, if at all, on appeal in South Carolina state court.

**Finally**, the Bankruptcy Court's alternative, policy-based rationale for allowing WCD's unauthorized bankruptcy is inappropriate and insufficient to support denial of the Receiver's motion to dismiss. Contrary to the Bankruptcy Court's suggestion, there is no special carve-out in bankruptcy law or state receivership law for mass-tort cases—and certainly none that applies to the Receivership Order in this case. This Court has recently reversed the same Bankruptcy Court's elevation of its policy preferences over settled law in another mass-tort bankruptcy, and it should do so again here.

The judgment below should be reversed.

## ARGUMENT

### I. WCD's Purported Board of Directors Lacked Authority to Petition for Bankruptcy on WCD's Behalf

#### A. Standard of Review Pursuant to Local Rule 28.1(b)

"In reviewing the Bankruptcy Court's determinations, [this Court] exercise[s] the same standard of review as did the District Court." *In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3d Cir. 2012). "Accordingly, the Bankruptcy Court's findings of fact are reviewed only for clear error, while legal determinations are reviewed *de novo*." *Id.* Here, the Bankruptcy Court's holdings regarding the scope of the Receivership Order and the authority of receivers appointed pursuant to South

Carolina law are questions of law, and do not rest on any disputed questions of fact. Accordingly, this Court reviews *de novo*. *Id.*

### B. State Law, Including State-Court Receivership Orders, Determines Who Has Authority to File a Bankruptcy Petition

A bankruptcy court has "no alternative but to dismiss" a petition for a corporate debtor that is filed without authority. *Price v. Gurney*, 324 U.S. 100, 106 (1945). Corporations can act only through individuals, and individuals who do not have authority to speak for a corporation or bind it cannot invoke a bankruptcy court's jurisdiction on the corporation's behalf. *Id.* at 107. Importantly, "state law dictates which persons may file a bankruptcy petition on behalf of a debtor corporation." *In re Sino Clean Energy, Inc.*, 901 F.3d 1139, 1142 (9th Cir. 2018); *see also, e.g.*, *Price*, 324 U.S. at 106–07; *ComScape Telecomms.*, 423 B.R. 816, 830–31 (Bankr. S.D. Ohio Feb. 11, 2010) ("It also is well-settled that applicable state law determines whether a bankruptcy filing was authorized." (collecting cases)).

Given the primacy of state law, courts have long recognized that state-court receivership orders—like the one at issue here—may grant receivers general authority to manage the corporation's affairs, which includes the exclusive authority to file bankruptcy petitions. In *In re Arista Imaging of N. Miami, LLC*, 2020 WL 609613 (Bankr. S.D. Fla. Feb. 7, 2020), for example, a bankruptcy court held that a state-court receivership order granting a receiver "full control over all assets and operations" thereby gave "th[e] receiver the *exclusive authority* to maintain

possession and control of the Debtors' assets and operations." *Id.* at *1, *9 (emphasis added) (dismissing bankruptcy petitions). Similarly, in *WC 1st & Trinity GP, LLC, v. Milligan*, 2021 WL 6750934 (W.D. Tex. 2021), a state-court receivership order granting a receiver "all powers to manage the Receivership Assets" vested the authority to file a bankruptcy petition "*entirely* in the receiver, at the exclusion of the prereceivership management of the entity debtor." *Id.* at *1–2 (collecting cases). And in *In re Monroe Heights Dev. Corp., Inc.*, 2017 WL 3701857 (Bankr. W.D. Pa. Aug. 22, 2017), the court explained that, absent evidence of bias and dereliction of duty, the appointment of a receiver "vest[s] the authority to file bankruptcy for the Debtor exclusively in [the receiver's] hands." *Id.* at *18. Accordingly, state-court receivership orders may—and often do—grant a receiver exclusive authority to put a corporation into bankruptcy.

As discussed below, that is precisely what happened here. By its terms and as confirmed by the South Carolina Court on the record, the Receivership Order grants the Receiver authority over *all* corporate affairs, thereby stripping WCD's board of the authority to put the corporation into bankruptcy.

## C. The Receivership Order Divested WCD's Board of the Authority to File for Bankruptcy

Under South Carolina law, a receiver "is an officer of the Court and is the agency through which the Court acts" and may exercise any power "given to him by the Order of appointment." *Kirven v. Lawrence*, 137 S.E. 2d. 764, 768 (S.C. 1964);

*see also, e.g.*, *Peppertree Resorts, Ltd. v. Cabana Ltd. P'ship*, 431 S.E.2d 598, 600 (S.C. Ct. App. 1993) ("A receiver has those powers given [to] him by his order of appointment.").

Accordingly, whether the Receivership Order gave the Receiver exclusive authority to file for bankruptcy is ultimately a question regarding the proper interpretation of the South Carolina Court's order. "A court order or judgment is construed like any written instrument," and "[w]hether a court order is clear and unambiguous is a question of law for the court." *Campione v. Best*, 868 S.E.2d 378, 382 (S.C. Ct. App. 2021) (citation omitted). "The determinative factor [in construing a court order] is the intent of the court, as gathered, not from an isolated part thereof, but from all the parts of the judgment itself." *Doe v. Bishop of Charleston*, 754 S.E.2d 494, 498 (S.C. 2014) (citation omitted); *cf. Eddins v. Eddins*, 403 S.E.2d 164, 166 (S.C. Ct. App. 1991) ("[I]n construing an ambiguous order or decree, the determinative factor is to ascertain the intent of the judge who wrote the order.").

Here, the Bankruptcy Court misinterpreted the Receivership Order in several critical respects. Properly read, the Receivership Order divested WCD's board of any authority to file for bankruptcy.

### 1. The Text of the Receivership Order Gives the Receiver General Authority to Control the Affairs of WCD, Including Exclusive Authority to File for Bankruptcy

This Court's review of the Receivership Order may begin and end with its plain text: by its terms, the order grants the Receiver unmistakably broad authority to manage WCD's assets and corporate affairs, including the authority to file a bankruptcy petition. In particular, the Order grants the Receiver the general power and authority to "fully administer all assets of WCD" and to "take any and all steps necessary to protect the interests of WCD whatever they may be." JA308. Indeed, the Receiver's power is "as broad as the law permits." *Id.* Applying this Court's precedent and common sense, there can be no serious question that filing a bankruptcy petition is an action taken in service of "administer[ing]" a corporation's "assets" and "protect[ing its] interests." *Id.*; *see, e.g.*, *In re LTL Mgmt., LLC*, 58 F.4th 738, 759 (3d Cir. 2023) ("The Bankruptcy Code is designed in important part to protect and distribute a debtor's assets to satisfy its liabilities."); *LaSala v. Bordier et Cie*, 519 F.3d 121, 127 (3d Cir. 2008) (describing bankruptcy as "a process that seeks to gather and preserve all of the debtor's assets, and distribute them to creditors and interest holders in an orderly fashion"). By the terms of the Receivership Order, therefore, filing for bankruptcy was a power reserved for the Receiver. *See, e.g.*, *Arista Imaging*, 2020 WL 609613, at *1, *9 (order appointing a receiver "with full control over all assets and operations" gave "th[e] receiver the exclusive authority

to maintain possession and control of the Debtors' assets and operations").

The Bankruptcy Court never seriously engaged with the Receivership Order's text, and specifically with the language granting the Receiver "the power and authority [to] fully administer all assets of WCD." Instead, the Bankruptcy Court assumed that an appointed receiver could obtain the authority to approve a corporation's bankruptcy petition *only* if the Receivership Order expressly mentions "bankruptcy" or dissolution of the board of directors. *See* JA36 (relying on the fact that "the Receivership Order makes no mention of bankruptcy or of dissolution of the Board"); *see also* JA38 ("[I]t is a notable omission that [the Receivership Order] fails to specifically reference the displacement of the Board or the Receiver's exclusive authority to file for bankruptcy.").

In support of that assumption, the Bankruptcy Court emphasized that the Receivership Order enumerates several "powers and duties afforded to the Receiver" but does not expressly "include the exclusive power to file for bankruptcy or to deprive the Board of that right." JA34. That reasoning—a distortion of the "canon of construction known as *expressio unius est exclusio alterius*, which means 'the expression of one thing is the exclusion of the other,'" *PJM Power Providers Grp. v. FERC*, 96 F.4th 390, 400 n.6 (3d Cir. 2024)—is without merit. "The *expressio unius* canon applies only when circumstances support a sensible inference that the term left out must have been meant to be excluded." *NLRB v. SW Gen., Inc.*, 580

U.S. 288, 302 (2017) (internal quotation marks omitted). Here, the Receivership Order is clear that the enumerated powers and duties are "*[i]n addition to*" the Receiver's general powers. JA309 (emphasis added). Accordingly, there is nothing "sensible" about inferring the exclusion of any powers not explicitly identified in the Receivership Order, which listed those powers *"*in addition to" the Receiver's mandate to "fully administer all assets of WCD" and to "take any and all steps necessary to protect the interests of WCD." JA308–09. The use of such expansive language defeats any inference that the enumeration of specific powers excludes unenumerated ones. *See, e.g.*, *In re Thriftway Auto Rental Corp.*, 340 F. Supp. 595, 597 (S.D.N.Y. 1971) ("The draftsmen, by utilizing the word 'also' in the last sentence of the statute, created the inference that the powers contained therein are in addition to those granted elsewhere, and should not be read to lessen them."); *see generally* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012) ("Virtually all the authorities who discuss the negative-implication canon emphasize that it must be applied with great caution, since its application depends so much on context").

Moreover, there was no reason for the Receivership Order to explicitly mention bankruptcy because the background principles of South Carolina receivership law are clear. Indeed, more than a century of equitable practice in South Carolina establishes that, when a court appoints a general receiver to manage the

23

affairs of an insolvent corporation, the appointment effectuates "a practical displacement of the boards of directors and the lawfully constituted corporate authorities." *Brookshire v. Farmers' All. Exch.*, 52 S.E. 867, 867 (S.C. 1905); *see infra* § I.D.[6]  Background principles of South Carolina equitable practice thus confirm that the order granted the Receiver ultimate authority over WCD's affairs, and the Receivership Order was required to say no more than it did.

This Court's analysis may thus rest on the text of the Receivership Order alone:  by its terms, the order clearly granted the Receiver broad authority to manage WCD's assets, including the exclusive authority to file a bankruptcy petition.

> ### 2. The Bankruptcy Court's Order Conflicts with the South Carolina Court's Interpretation of the Receivership Order

Beyond the failure to properly interpret the plain text of the Receivership

---

[6] None of this is unique to South Carolina:  receivership law in other states similarly provides for the appointment of a general receiver with authority to take over the affairs of corporations that are insolvent or in imminent danger of insolvency. *See, e.g.*, *Badii ex rel. Badii v. Metro. Hospice, Inc.*, 2012 WL 764961, at *10 (Del. Ch. Mar. 12, 2012) (noting that Delaware statute governing the appointment of a receiver for an insolvent corporation "by its own terms, displaces the board by empowering the receiver 'to take charge of [the corporation's] . . . business affairs' and to do 'all other acts which might be done by the corporation and which may be necessary and or proper'"); *In re StatePark Building Grp., Ltd.* 316 B.R. 466, 471 (Bankr. N.D. Tex. 2004) ("Under Texas law, the appointment of a general receiver displaces and supercedes [sic] in its entirety the pre-receivership management of an entity.") (citations omitted); *Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C. v. Lowenstein Sandler, P.C.*, 839 A.2d 52, 59 (N.J. Super. Ct. App. Div. 2003) (Fisher, J.A.D., concurring) (finding that, unlike a pendente lite receiver, a statutory receiver has broad powers to administer the management of the company, including dissolution).

Order, both the Bankruptcy Court and the District Court failed to square their conclusions with the South Carolina Court's own interpretation and explanation of its order at the Reconsideration Hearing, at which any uncertainty about the scope of the Receiver's powers was resolved. The lower courts' failure to meaningfully engage with the South Carolina Court's analysis of the Receivership Order constitutes reversible legal error.

Under South Carolina law, "on appeal from an order in which a judge construes [her] own previously issued order . . . due deference and great weight should be given to the opinion of the trial judge who had the advantage of knowing [her] own intent." *Eddins*, 403 S.E.2d at 166; *see also Campione*, 868 S.E.2d at 458 ("Courts are empowered to interpret their own orders."). And by the same token, "[a]n appellate court must view the trial court's statements as a whole to determine its reasoning," and "[a]n order should be construed within the context of the proceeding in which it is rendered." *Anderson v. Buonforte*, 617 S.E.2d 750, 753 (S.C. Ct. App. 2005) (quotation marks omitted).

The same deference to a court's interpretation of its own order—like Justice Toal's here—applies well beyond South Carolina, including in the Third Circuit. *See, e.g.*, *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 498 (3d Cir. 1982) ("We must give particular deference to the district court's interpretation of its own order."); *Hastert v. Illinois State Board of Election Commissioners*, 28 F.3d 1430,

1438 (7th Cir. 1994) (court's interpretation of its own order will not be disturbed "absent a clear abuse of discretion"); *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 131 (4th Cir. 1992) (it is "peculiarly within the province of the district court . . . to determine the meaning of its own order" even if the order is "not clear").

And consistent with South Carolina law, courts across the country have long explained that deference is critical because the scope of a receivership order, injunction, or other equitable order "turns upon the intent and effect of the" issuing court's order. *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 88 n.7 (2d Cir. 2014) (quotation marks omitted) (deferring to bankruptcy court's interpretation at hearing of its previously issued injunction). "Few persons are in a better position to understand the meaning" and intended effect of an order than the "judge who oversaw and approved it." *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1203 (7th Cir. 1989). This duty to defer is all the more important when the order and interpretation are from a *state* court concerning a matter of state law. *See Bush v. Gore*, 531 U.S. 98, 112 (2000) (Rehnquist, J., concurring) ("[C]omity and respect for federalism compel us to defer to the decisions of state courts on issues of state law. That practice reflects our understanding that the decisions of state courts are definitive pronouncements of the will of the States as sovereigns.").

Here, according proper respect and deference to the South Carolina Court's interpretation of the Receivership Order, there can be no serious question that the

order granted the Receiver the exclusive authority to file for bankruptcy. Justice Toal repeatedly and emphatically explained at the Reconsideration Hearing that the Receivership Order was intended to create a general receivership vesting broad authority and control in the Receiver—including the authority to file for bankruptcy. At the outset of the Reconsideration Hearing, Justice Toal expressed that she appointed the Receiver to manage WCD specifically because WCD had given the court a "very difficult time" during the underlying litigation:

> We have a receivership statute. I've used the receivership statute in South Carolina to try and make some sense of the corporations who are - - who have a lot of potential liability in these asbestos cases and either haven't responded at all or have financial situations that are vicarious enough that I am concerned about incurred obligations, like in this case with this big verdict, so that I try to, on the front end, appoint someone *to manage the group* who can delve into its principal asset which is generally its insurance to cover these matters. . . . [W]hat they resulted in is having good people *who represent* to [sic] *the company and protect the company* in creating an asset pool sufficient to respond in some kind of sensible way to potential settlement of claims against these corporations that are in financial straits or not operational. So that is the reason. I just want that on the record.

> Whittaker Clark & Daniels presents to the Court as a company that hasn't been in active business since 2004. The Court had a very difficult time with Whittaker Clark & Daniels in the pretrial motion phase of this asbestos trial because Whittaker Clark & Daniels would not respond at all to questions about its financial status, its assets, its assets in this state or elsewhere, its responsibilities to various things. It was a very difficult time for the Court.

JA417 (140:10–141:21) (emphasis added).

After this opening, the South Carolina Court specifically questioned WCD's

lawyers about who controlled WCD, and WCD's lawyers provided an incomplete response:

> THE COURT: Whittaker Clark & Daniels is practically - - I mean, the only person we have ever seen is Dennis St. George, and they say there's a kind of a board, kind of a loose configure to figure out who exactly is in control. Who is in control?
>
> MS. FLYNN [WCD's Attorney]: Raj Mehta.
>
> THE COURT: Yea, that's the - - I'm very well aware of that name.

JA420 (154:18–155:1). When pressed to identify WCD's board of directors, WCD's lawyers refused to tell Justice Toal that a board of directors even existed—which could explain why her orders make no mention of dissolving WCD's board or transferring any of the board's powers to the Receiver.

Justice Toal then made abundantly clear that the Receivership Order prevented WCD's board from filing for bankruptcy as a way for the board, as opposed to the Receiver, to remain in control:

> . . . that was the main factor in my signing the [Receivership Order] so quickly is that I wanted to be sure that something other than kind of a morphous [sic] organization I wasn't quite sure about in terms of asset picture, control or anything else would not simply declare bankruptcy and that entity would still be controlling things. I wanted a receiver that I knew would take it seriously, to look at the asset picture and see what was going on.

JA423 (167:16–25). The *only* way to read the Receivership Order in light of these statements is that the order gave control of WCD's financial affairs to the Receiver and prevented WCD's board from filing for bankruptcy protection as a way to

maintain control. And those on-the-record concerns about who controlled WCD explain why Justice Toal entered the Receivership Order on an expedited basis.

Yet the Bankruptcy Court refused to credit Justice Toal's interpretation of her own order. The Bankruptcy Court appeared to recognize that the South Carolina Court's statements *did* demonstrate the Court's intent to grant the Receiver the exclusive authority to file for bankruptcy—indeed, the Bankruptcy Court observed that Justice Toal's statements "suggest[] that she too shared th[e] belief" that "only the Receiver could put WCD into bankruptcy." JA36; *see also* JA31 (noting "the South Carolina Court's expectations, albeit erroneous and shared by plaintiffs' counsel that placing the Debtor's assets under the courts' control through the appointment of a receiver implicitly precludes the Debtor's bankruptcy filing"). But the Bankruptcy Court held, erroneously, that the South Carolina Court's on-the-record interpretation of its order was off-limits—claiming that the Bankruptcy Court was "constrained" to consider only "the Receivership Order itself" and disavowing as improper any attempt to determine what the South Carolina Court "meant" in issuing the Receivership Order. JA37 (emphasis omitted). That cannot be squared with South Carolina law, which gives "determinative effect" to "the intent of the court," *Doe*, 754 S.E.2d at 498, and "great deference" to the judge's expressed interpretation of her own orders, *Eddins*, 403 S.E.2d at 166.

The Bankruptcy Court further suggested that it would not consider Justice

Toal's interpretation because it was mere "comments" provided from the bench rather than in writing.  JA40 ("[t]his Court will not read further into *any* colloquy undertaken in the context of the Reconsideration Motion.").  But courts have long recognized that the principles of deference apply equally to oral and written interpretations of issued orders.  *See In re Rivera*, 2014 WL 6675693, at *6 (B.A.P. 9th Cir. Nov. 24, 2014) (recognizing that a court "may consider the [issuing] court's comments at the . . . hearing to the extent they constitute the court's interpretation of its own rulings"); *W. Ben. Sols., LLC v. Gustin*, 2012 WL 4417190, at *3 (D. Idaho Sept. 24, 2012) ("Despite not being a written order, this Court is bound to enforce the orders entered in the state proceedings.").[7]

Of course, what Justice Toal feared is exactly what happened.  Despite Justice Toal's direct inquiries regarding who controlled WCD, at no point during the Reconsideration Hearing did any counsel representing WCD inform the court that on April 8, 2023, just ten days prior to the Reconsideration Hearing (and over one

---

[7] In materially identical circumstances, federal courts hold that a defendant who removes a case to federal court before a state court's oral ruling is memorialized in writing cannot ignore or escape the oral ruling.  *See W. Ben. Sols., LLC v. Gustin*, 2012 WL 4417190, at *3 (D. Idaho Sept. 24, 2012); *Pebble Creek Homes, LLC v. Upstream Images, LLC*, 547 F. Supp. 2d 1214, 1218 (D. Utah 2007); *Heidel v. Voight*, 456 F. Supp. 959, 960 (E.D. Wis. 1978).  But here, the Bankruptcy Court rewarded WCD's efforts to capitalize on what WCD later characterized as an "error" by Justice Toal in allowing the parties the opportunity to weigh in on a written order.  Bankr. Ct. Dkt. No. 289 at 2.

month after the Receiver was appointed):  (i) the individuals who had been on WCD's board when the Receivership Order was entered resigned, (ii) two new "independent" directors were appointed, and (iii) those new directors appointed a Chief Restructuring Officer. JA718.  Furthermore, despite Justice Toal's clear statement during the Reconsideration Hearing that the Receivership Order prevents WCD's board from filing for bankruptcy, no representative of WCD informed Justice Toal that on April 12, 2023—just four days prior to the Reconsideration Hearing—restructuring counsel had made a presentation to the board of WCD and its affiliates regarding "strategic alternatives available to the Boards and to the Companies."  *See* JA271 (¶ 16); JA335 (¶ 3).  Unaware of these facts, Justice Toal concluded the Reconsideration Hearing by giving the parties a short period of time to work out a written order that memorialized the rulings made at the hearing.  But one day before that period ran, the bankruptcy petition was filed—based upon purported authorization from WCD's newly appointed board—thereby staying all proceedings before the South Carolina Court and preventing the Receiver from exercising the powers that the Receivership Order granted him.[8]

---

[8] Following the Bankruptcy Court's denial of the motion to dismiss, WCD and its debtor affiliates commenced an adversary proceeding in the Bankruptcy Court against hundreds of talc personal injury plaintiffs and other defendants seeking a determination that successor liability and alter ego claims brought by those plaintiffs against WCD's non-debtor controlling affiliates, present and former, are property of the bankruptcy estate. *Whittaker, Clark & Daniels, Inc. v. Brenntag AG, et al.*, Adv.

The lower courts clearly erred in failing to defer to the South Carolina Court's interpretation of its own order, which left no doubt that the Receivership Order prevented WCD's board from filing for bankruptcy. The board's bankruptcy filing violated the clear text of the Receivership Order, as confirmed by Justice Toal's on-the-record explanation of its scope.

### 3. The Bankruptcy Court Ignored the Manifest Purpose of the Receivership Order

Beyond conflicting with the Receivership Order's text and authoritative interpretation by the South Carolina Court, the lower courts also erred by ignoring the Receivership Order's clear purpose, as set out in the text of the order itself: to prevent those purporting to control WCD from using that control to evade talc and asbestos liability. At the time Justice Toal entered the Receivership Order, this was not merely a hypothetical risk, but a risk that had already begun materializing soon after the Plant jury delivered its verdict. The individual whom WCD's lawyer had identified as WCD's president—Raj Mehta—was also vice president of National Indemnity Company ("NICO"), an insurance company. JA307. Through affiliates, NICO "controls substantial portions of the insurance industry which covers asbestos

---

Proc. No. 23-01245 (MBK), Dkt. 1 (Bankr. D.N.J. Sept. 7, 2023). On August 28, 2024, the Bankruptcy Court entered an order granting WCD's motion for summary judgment with respect to the foregoing. *Id.*, Dkt. 292. Less than one week later, WCD and its debtor affiliates filed a motion to settle those successor liability and alter ego claims in the Bankruptcy Court. Bankr. Ct. Dkt. 1297.

liabilities for substantial numbers of defendants in asbestos litigation" and "has repeatedly been sued by its insureds for its bad faith tactics." *Id.* (citations omitted). Justice Toal recognized that, by Raj Mehta's appointment, NICO was taking steps to avoid paying insurance on WCD's asbestos liabilities—explaining that "there clearly appear to be related company transactions involved in this matter." JA308.

On these grounds and against this backdrop, Justice Toal specifically charged the Receiver with investigating WCD's transactions with affiliates that appeared to be controlling WCD. JA308. The Receivership Order would serve no purpose if, as the Bankruptcy Court concluded, WCD's management and board—all connected to other interested companies—retained an unchecked veto power over the Receiver. Accordingly, the Bankruptcy Court's reading of the order to allow WCD's board to retain the authority to control WCD's affairs—including the power to file for bankruptcy—would effectively nullify the essential purpose of the Receivership Order.

### D. South Carolina Law Allowed the South Carolina Court to Give the Receiver the Power to File Bankruptcy

The Receivership Order was issued "pursuant to South Carolina Law" and granted the Receiver authority "as broad as the law permits." JA308. Pointing to that language, the lower courts claimed the power to independently evaluate what South Carolina law permits, and they concluded that the Receivership Order allowed WCD's board to file for bankruptcy. Their analysis was deeply flawed, as South

Carolina law permits a receiver, like the Receiver here, to be vested with the sole authority to petition for bankruptcy.

The Receiver was appointed pursuant to S.C. Code. Ann. § 15-65-10, which codifies "one of the oldest remedies of the chancery court." S.C. Jurisprudence, *Receivers* § 3. The powers of receivers appointed under this provision are governed not only by the text of Section 15-65-10—which says nothing at all about a receiver's powers—but also by the history of South Carolina's equitable practice, as elaborated in more than a century of case law. This case law confirms that general receiverships tasked with operating businesses effectuate "a practical displacement of the boards of directors and the lawfully constituted corporate authorities." *Brookshire*, 52 S.E. at 867 (citation omitted); *see also, e.g.*, *Montgomery & Crawford v. Arcadia Mills*, 176 S.E. 589, 591 (S.C. 1934) (referring to "the usual powers of [] receivers to protect, preserve and operate [the] property . . . and to secure an orderly and advantageous liquidation thereof"); *Alsobrook v. Watts*, 19 S.C. 539, 543 (1883) (finding that a general receiver has "all the power necessary" to accomplish the receivership's purposes, including the power "to institute [a] proceeding" on behalf of the business); S.C. Jurisprudence, *Receivers* § 19 ("the authority of a receiver to institute a lawsuit is presumed by law"). Thus, the historical practice of South Carolina courts supports interpreting the Receivership Order as conferring upon the Receiver, among other powers, the exclusive right to

initiate bankruptcy proceedings.[9]

The Bankruptcy Court ignored South Carolina case law on general receivers, looking instead to Section 15-65-10, and observing, "there appears to be a dearth of case law addressing the powers of a receiver appointed under § 15-65-10." JA35. For reasons that are not clear, the Bankruptcy Court *sua sponte* focused on "South Carolina case law discussing the powers of receivers appointed under another state statute," Section 33-14-320, deeming "the statute and the cases interpreting it instructive." JA40. Specifically, the Bankruptcy Court found it significant that Section 33-14-320 provides that *custodians* appointed under that section displace a corporate board of directors and can manage the affairs of the corporation, whereas Section 33-14-320 is silent about whether *receivers* appointed under that section displace a corporate board. JA42. On the Bankruptcy Court's view, that silence

---

[9] This feature of South Carolina law is hardly unique; many other jurisdictions observe a similar rule. *See, e.g.*, *First Nat. Bank of Bethel v. Nat'l Pahquioque Bank*, 81 U.S. (14 Wall.) 383, 400 (1871) ("Beyond doubt the appointment of a receiver supersedes the power of the directors to exercise the incidental powers necessary to carry on the business of banking[.]"); *Monmouth Inv. Co. v. Means*, 151 F. 159, 166 (8th Cir. 1906) ("[T]he effect of placing a corporation in the hands of a receiver" is to "displac[e] its governing board of directors."); *In re SA Hospital Acquisition Grp.*, 660 B.R. 97, 109–11 (D. Del. May 31, 2024) (under general receivership statutes of Missouri and Kansas, only court-appointed receiver had authority to oppose involuntary bankruptcy petitions); *Fletcher Cyclopedia of the Law of Corporations* § 7784 (Sept. 2024) ("The appointment of a general receiver for a corporation substantially terminates the powers of the corporate officers with respect to the property in possession of the receiver.").

implies that receivers appointed under Section 33-14-320 may only wind up a corporation, not manage its affairs, and the court extended that implied limitation to receivers appointed under Section 15-65-10. *Id.* In a footnote, the Bankruptcy Court acknowledged that the Receiver here was *not* tasked with winding up WCD, yet the court insisted, without explanation, that "the distinction drawn between the powers of a receiver and custodian in § 33-14-320 remains instructive and persuasive." *Id.* n.4.

Contrary to the Bankruptcy Court's analysis, these two statutes are not remotely comparable. Section 15-65-10 is a codification of the historical equitable remedy of general receivership, *see* S.C. Jurisprudence, *Receivers* § 3, whereas Section 33-14-320 is something else entirely—a new process for *dissolving* corporations "in [] judicial proceeding[s] brought to dissolve a corporation," S.C. Code Ann. § 33-14-320(a). The specific powers granted to receivers and "custodians" appointed under Section 33-14-320 cannot be read as characterizing, much less circumscribing, the sweep of powers available at equity and under the general receivership statute, Section 16-65-10. That much is confirmed by the Official Comment to Section 33-14-320:

> In many states, general statutes or rules of court regulate the appointment of receivers or custodians and define their duties. Section 14.32 (Section 33-14-320) *is designed to supplement these general provisions* and grant the court power to take the steps it considers necessary to resolve the internal corporate problem or to effect liquidation of the corporation in an efficient manner.

S.C. Code Ann. § 33-14-320, cmt. (emphasis added).  Thus, any limitations on receivers appointed under Section 33-14-320 simply do not carry over to receivers appointed under Section 15-65-10.

Furthermore, contrary to the Bankruptcy Court's inference, Section 33-14-320 does not limit receivers.  The court fixated on the supposed discrepancy between (1) Section 33-14-320's express recognition that a custodian appointed under that section displaces a corporate board and (2) Section 33-14-320's silence about whether a receiver appointed under that section displaces a corporate board.  *See* JA41.  A negative implication from statutory silence, however, is a double-edged sword.  *See Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 381 (2013) ("The force of any negative implication, however, depends on context.").  Here, because Section 33-14-320 is expressly designed to "supplement" general provisions like Section 15-65-10, the proper inference to draw is that the South Carolina legislature did not need to state that receivers appointed under Section 33-14-320 displace a board of directors—because the common law already provides for that result.  A custodian, by contrast, would not displace a board without the statute saying so because at common law a custodian, unlike a receiver, simply takes possession of designated assets.  *See A.M. Law & Co. v. Farmers' & Merchants' Bank*, 115 S.E. 812, 814 (S.C. 1923) (quoting and affirming the lower court opinion) (explaining how a statute that expressly gave an examiner "control" of a "business" carried "the powers

of the examiner beyond those of a mere custodian of property and assets").

The Bankruptcy Court's interpretation of South Carolina law, including its *sua sponte* invocation of irrelevant statutory provisions, was erroneous and cannot support the judgment below.

\*　　　\*　　　\*

The Receivership Order's plain text, on-the-record interpretation by the South Carolina Court, clear purpose of preventing evasion of asbestos liability, and background principles of South Carolina law all point in one direction: the Receiver—and not WCD's board—had exclusive authority to put WCD into bankruptcy. The lower courts erred as a matter of law in concluding otherwise.

## II.　The Bankruptcy Court's Review of WCD's Challenge to the Receivership Order Violated the *Rooker-Feldman* Doctrine

There is another reason why the Bankruptcy Court's order should be reversed: under the *Rooker-Feldman* doctrine, the Bankruptcy Court lacked jurisdiction to consider a challenge to the Receivership Order, the clear terms of which granted the Receiver exclusive authority to put the corporation into bankruptcy.

### A.　Standard of Review Pursuant to Local Rule 28.1(b)

The applicability of the *Rooker-Feldman* doctrine is a legal question not dependent on any disputed issues of fact. This Court therefore reviews this question de novo. *See In re Heritage*, 679 F.3d at 139.

## B. The *Rooker-Feldman* Doctrine Bars Federal Review of a *De Facto* Appeal of the Receivership Order

"Under the *Rooker-Feldman* doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling." *Taliaferro v. Darby Tp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006). The doctrine's purpose is straightforward—to prevent "state-court losers complaining of injuries caused by state-court judgments" from seeking what amounts to appellate review from federal courts other than the Supreme Court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) ("Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments.").

Importantly, *Rooker-Feldman* is not limited to *explicit* requests that a federal court reverse a state-court judgment—rather, the question is whether a federal suit "*essentially* appeals from state-court judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010) (emphasis added); *see also, e.g.*, *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) ("A federal action constitutes [] a *de facto* appeal [for *Rooker-Feldman* purposes] where claims raised in the federal court action are inextricably intertwined with the state court's decision such that the adjudication of the federal claims would undercut the state

ruling or require the district court to interpret the application of state laws or procedural rules." (internal quotation marks omitted)); *Bolus v. Cappy*, 141 F. App'x 63, 65 (3d Cir. 2005) (agreeing that a request for a district court "to interpret Pennsylvania's rules of procedure [and] determine that the state court's decision was wrong" was "exactly the type of determination that the *Rooker-Feldman* doctrine prohibits" (citation omitted)). What matters is not form but substance—does a party "essentially invite[] federal courts of first instance to review and reverse unfavorable state-court judgments"? *Exxon Mobil*, 544 U.S. at 283. If the answer is yes, a federal court must stay its hand.

Recognizing this principle, federal courts across the country have long held that *Rooker-Feldman* prevents them from evaluating attacks on the scope of state-court orders—just like those presented in this bankruptcy. In *In re Monroe Heights Development Corporation, Inc.*, 2017 WL 3701857 (Bankr. W.D. Pa. Aug. 22, 2017), for instance, a bankruptcy court determined that "an argument about the *scope* of the Receiver Order" entered by a state court was "a subject for appellate review in the state court, not a basis for this Court to disregard it." *Id.* at *10 (emphasis added); *see also, e.g.*, *Arista Imaging*, 2020 WL 609613, at *10 ("This tactic of filing a chapter 11 case and challenging a prior-entered state court order appears to violate principles of comity underlying the *Rooker-Feldman* doctrine, a doctrine that prohibits state court losers from filing suit in federal court after state court

proceedings have ended, seeking redress of an injury stemming from an adverse state court judgment." (citation and alterations omitted)); *Avery Outdoors, LLC v. Peak Rock Capital, LLC*, 2017 WL 5178063, at *8 (W.D. Tenn. Aug. 7, 2017) (declining, on *Rooker-Feldman* grounds, invitation to rule in a manner that "would be a modification of the Chancery Court order appointing the Receiver"); *In re del Castillo*, 2022 WL 4658687, at *6, *9 (Bankr. D.P.R. Sept. 30, 2022) (observing that *Rooker-Feldman* may require district court to "abstain and defer to the state court to interpret its [o]rder"). Thus, challenges to state-court orders—including, as relevant here, their scope and application—may not be entertained by federal courts consistent with the *Rooker-Feldman* doctrine.

Here, the Bankruptcy Court took up precisely the sort of challenge to a state-court order that *Rooker-Feldman* prohibits. WCD was the "state-court loser" on every issue related to the Receivership Order, and its petition "complain[s] of" and "invit[es] . . . review and reject[ion]" of that order. *Exxon Mobil*, 544 U .S. at 284. Indeed, WCD admitted as much throughout its petition and briefing below—in which it expressly and repeatedly "dispute[d] the validity and enforceability of the receivership order." JA247 (¶ 8); *see also, e.g.*, JA669 (¶ 3) (arguing that the Receivership Order "does not" "displace the WCD Board's authority to file for bankruptcy," and "facially lacks jurisdiction and is invalid"); JA683 (¶ 36) ("[T]he Receivership Order is neither valid nor enforceable as it could only apply to any

WCD assets in South Carolina."); *id.* (arguing that S.C. Code § 15-65-10(4) "does not provide a South Carolina state court with jurisdiction to appoint a receiver to supplant the board of a New Jersey corporation"); JA686–87 (¶ 43) ("[T]he South Carolina Court exceeded its jurisdiction to the extent the Receivership Order could be construed to displace the authority of the WCD Board").  In pursuing bankruptcy, WCD thus asked for a federal court ruling rejecting the scope of a state-court order it believed to be wrong—a request that *Rooker-Feldman* does not allow federal courts to consider.

Though careful to acknowledge *Rooker-Feldman*,[10] the Bankruptcy Court took the bait—concluding that it *was* empowered to review a challenge to the Receivership Order.  In doing so, it concluded not only that Justice Toal was "misguided," "erroneous," and "mistaken" about the scope and meaning of her own Receivership Order, but also about substantive South Carolina law.  JA31; JA36; JA38; *see* JA40–41 (purporting to "find[] additional support for its ruling in analogous South Carolina statutes"); *see also* JA 24 ("Having reviewed the [South

---

[10] *See* JA39 ("This Court is not examining the merits of the South Carolina Court's ruling; nor is it challenging Justice Toal's authority or jurisdiction to enter the Receivership Order, or her rationale in doing so. Ultimately, Justice Toal's comments—explaining that her concern over potential bankruptcy filing was a factor in her decision to appoint a receiver—remain precisely that: comments."); JA25–26 (rejecting applicability of *Rooker-Feldman* on grounds that "Justice Toal's commentary is not in itself a holding").

Carolina] authorities, this Court reaches the same conclusion on appeal."). Whether the Bankruptcy Court's analysis was correct is beside the point—for *Rooker-Feldman* purposes, what matters is that the Bankruptcy Court took up an attack on a decision of a state court and substituted its judgment for hers. The Bankruptcy Court's opinion that Justice Toal was mistaken about the meaning of the Receivership Order is precisely the kind of second-guessing forbidden under *Rooker-Feldman*.

## III. The Bankruptcy Court's Alternative Public Policy Holding Is Meritless

### A. Standard of Review Pursuant to Local Rule 28.1(b)

The Bankruptcy Court's alternative public policy holding was based on its (mistaken) interpretation of the Bankruptcy Code and is reviewed *de novo*. *See In re Heritage*, 679 F.3d at 139.

### B. The Bankruptcy Court's Alternative Holding Should Be Rejected

After concluding (wrongly) that WCD's bankruptcy filing was authorized, the Bankruptcy Court *sua sponte* raised an "additional," public policy basis for its decision. JA42–45.[11] This alternative holding—one the District Court sidestepped on appeal, *see* JA25 n.9—addressed whether there is some discretionary "exception" to the well-established rule that "applicable state law determines whether a

---

[11] Though the Bankruptcy Court later described its alternative holding as "dicta," JA45, the Debtors have argued that it is an "alternative holding," Bankr. Ct. Dkt. 289 ¶ 13.

bankruptcy filing was authorized," *In re 3P Hightstown, LLC*, 631 B.R. 205, 210 (Bankr. D. N.J. 2021) (Kaplan, J.) (citing *Price*, 324 U.S. 100). Relying on a handful of non-binding lower court decisions, the Bankruptcy Court concluded that such an exception exists in "cases involving a creditor-driven intracorporate dispute in order to vindicate federal bankruptcy law supremacy," JA43 (citation omitted), and that it apparently applies *anytime* a bankruptcy is "asbestos-related," JA45. In other words, the Bankruptcy Court concluded that federal bankruptcy courts are free to substitute their own judgment for that of state courts and to claw back any bankruptcy powers vested in a state-court-appointed receiver, so long as the case is "asbestos-related" or otherwise falls within some undefined category of "worthy" exceptions. JA44.

This holding is at odds with this Court's precedent, which recently overturned this same Bankruptcy Court to dispel the notion that general concern about a debtor's potential talc-related liabilities could serve as a basis for allowing an otherwise invalid Chapter 11 petition to move forward. *See In re LTL Mgmt., LLC*, 64 F.4th at 98, 110 (rejecting Bankruptcy Court's holding that a debtor who "sought to resolve talc liability" could overcome its lack of financial distress—a fatal flaw in its bankruptcy filing—by citing that "the interests of current tort creditors and the absence of viable protections for future tort claimants outside bankruptcy" (citation omitted)). In that case too, the Bankruptcy Court had sought to justify its decision based on its "strong conviction that the bankruptcy court [and not the trial courts] is

the optimal venue for redressing the harms of both present and future talc claimants." *Id*. at 99.[12] But, as this Court explained, policy preferences alone cannot cure an otherwise invalid bankruptcy filing. *See id*. at 110.

The Bankruptcy Court's conclusion here is flawed for several other reasons. As noted, state law determines whether a bankruptcy filing is authorized. *See Price*, 324 U.S. at 106; *supra* pp. 18–19. Disregarding this principle, the Bankruptcy Court cited a handful of lower court decisions that have recognized a supposed "exception to the general rule of deferral to state law to determine who is authorized to file a voluntary petition for a corporation." *Monroe Heights*, 2017 WL 3701857, at *14; *see also In re Corp. & Leisure Event Prods., Inc.*, 351 B.R. 724, 731 (Bankr. D. Ariz. 2006); *Sino Clean Energy Inc. ex rel. Baowen Ren v. Seiden*, 565 B.R. 677, 682 n.26 (D. Nev. 2017), *aff'd*, 901 F.3d 1139 (9th Cir. 2018). Those three decisions are non-binding and unpersuasive, but if considered, two of them—*Sino* and *Monroe Heights*—actually support *Appellants'* position. These cases recognize a limited

---

[12] The Bankruptcy Court has made clear its policy views about the proper venue for mass tort cases. *See supra* note 1; *In re LTL Mgmt., LLC*, 637 B.R. at 428 ("Given the Court's view that the establishment of a settlement trust within the bankruptcy system offers a preferred approach to best serve the interests of injured tort claimants and their families, maybe the gates indeed should be opened" to "similar machinations and chapter 11 filings by other companies defending against mass tort claims.").

exception to the rule that state law controls, but only in circumstances where a receiver is not acting in the best interests of a corporation and its creditors.

In *Sino*, for instance, the district court identified "two relevant principles: (1) states are empowered to determine who is best suited to make business decisions for a corporation; but (2) states cannot significantly interfere with a corporation's access to the bankruptcy system." *Sino Clean Energy*, 565 B.R. at 683. Applying these principles to the facts before it, the *Sino* court rejected the argument made by displaced board members—that they, rather than the new, receiver-appointed board, held the power to file for bankruptcy. As the court explained, "there [wa]s no evidence that either the [state-court-appointed] receiver or the new board cannot file for bankruptcy on behalf of Sino, *so there is no bar between Sino and the bankruptcy-court system that might trigger federal preemption*." *Id.* at 683 (emphasis added). Likewise, in *Monroe Heights*, the bankruptcy court declined to depart from the general rule in favor of state law, dismissing the bankruptcy petition on the grounds that the state-court-appointed receiver had sole authority to file for bankruptcy. *See Monroe Heights*, 2017 WL 3701857, at *17 (endorsing the "*Sino* approach" as "comport[ing] more closely with the respect that is rightfully due the outcome in a state court receivership proceeding").

Here, as in *Sino* and *Monroe Heights*, there is no evidence to suggest that the Receiver is acting in anything but a disinterested manner. None has even been cited

by the Bankruptcy Court or WCD. Thus, even if this Court were inclined to recognize the limited preemption exception endorsed in those cases—a dubious proposition given the Supreme Court's holding in *Price*—the facts of this case still would not justify interceding to nullify the powers delegated to the state-court-appointed receiver.

Moreover, the exception announced by the Bankruptcy Court in this case—an exception based on the supposed "unique qualities" of asbestos-related bankruptcies and the enactment of Section 524(g) of the Bankruptcy Code—is different in kind and far more expansive than the narrow exceptions adopted in *Sino* and *Monroe Heights*. For one thing, it is unclear what the Bankruptcy Court meant by the "unique qualities" of asbestos-related bankruptcy cases, or whether such qualities are even present here. And, even if there are truly unique qualities associated with asbestos-related cases, the Bankruptcy Court erred in overriding the clear directive in *Price*—to follow state law without exception when examining whether a bankruptcy petition was filed by an authorized party. To hold otherwise would set a dangerous new precedent, encouraging courts to invent new "exceptions" to settled precedent whenever they believed doing so might advance their own policy preferences (*e.g.*, for the bankruptcy system over the tort system). *Cf. In re Sino Clean Energy, Inc.*, 901 F.3d 1139, 1142 (9th Cir. 2018) ("No matter

the equitable considerations, state law dictates which persons may file a bankruptcy petition on behalf of a debtor corporation").[13]

Ultimately, it appears that the Bankruptcy Court's hostility towards state-court proceedings in cases such as this infected the rest of its analysis—which, although appearing to recognize the broad authority granted by the Receivership Order, nevertheless resisted that authority on the basis of policy preferences. This error is therefore sufficient to require reversal.

---

[13] The Bankruptcy Court also relied on *Leisure*, *see* JA43, but that decision has been criticized as an "outlier" with unpersuasive reasoning that other courts have explicitly rejected, *see Sino Clean Energy Inc.*, 565 B.R. at 681 ("*Leisure* is an outlier, and I find its reasoning unpersuasive."); *Monroe Heights*, 2017 WL 3701857, at *14–17 (examining the holdings in *Leisure* and *Sino* and concluding that "[t]he *Sino* approach also seems to comport more closely with the respect that is rightfully due the outcome in a state court receivership proceeding proper on its face"); *see also In re Sino Clean Energy, Inc.*, 901 F.3d at 1142 (holding *Leisure* "was wrong" to the extent it conflicted with the Ninth Circuit precedent holding that a bankruptcy filing should be dismissed as unauthorized where a rehabilitator had been appointed with exclusive authority to commence bankruptcy proceedings). And to the extent that *Leisure* is understood as standing for the proposition that federal law preempts a state court from "enjoin[ing] a corporation from filing for bankruptcy altogether," *Sino Clean Energy*, 901 F.3d at 1142, this case involves nothing of the sort—the Receivership Order does not bar WCD from filing for bankruptcy, but simply vests the decision whether to do so in the Receiver.

**IV. To the Extent the Scope of the Receivership Order Is Unclear or Nonjusticiable, the Automatic Stay Should Be Lifted Pending Review in State Court**

The Receivership Order clearly grants the Receiver exclusive authority to put WCD into bankruptcy. *Supra* § I. But if the Receivership Order were unclear, the proper course would be for the Bankruptcy Court to grant relief from the automatic stay to allow an appeal of the Receivership Order to proceed in the South Carolina state courts.

The automatic stay of 11 U.S.C. § 362(a) currently prohibits the parties from returning to the South Carolina state courts to obtain further review of the Receivership Order. Under 11 U.S.C. § 362(d)(1), however, "the bankruptcy court shall grant relief from the automatic stay 'for cause.'" *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997) (quoting 11 U.S.C. § 362(d)(1)). "Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." *Id.*

Under Section 362(d)(1), this Court and others across the country have found cause for relief from the automatic stay to allow state courts to resolve disputed issues of state law. *See, e.g.*, *id.* (holding that cause existing for lifting automatic stay for party to pursue appeal in state court, in part due to *Rooker-Feldman* concerns); *In re Gilmore*, 261 B.R. 175, 181 (Bankr. W.D. Pa. 2001) (granting relief from automatic stay to allow debtor to file appeal in Pennsylvania state court); *In re*

*Metz*, 165 B.R. 769, 772 (Bankr. E.D.N.Y. 1994) (granting relief from automatic stay to permit appeal in New York state court); *see also In re Bennett*, 376 B.R. 918, 923–24 (Bankr. W.D. Wis. 2007) (granting relief from automatic stay for parties to seek interpretation of disputed agreement in state court); *In re Allison*, 182 B.R. 881, 886 (Bankr. N.D. Ala. 1995) (granting relief from automatic stay, if necessary, to allow parties to continue litigation related to a state-court contempt order for failure to make certain payments, as "[t]his Court should not speculate as to the state court's intentions, but should instead allow the state court to interpret its own order").[14]

Here, any ambiguity about the scope of the Receiver's authority—and there is none—should be resolved in state court. Indeed, Justice Toal anticipated such an appeal—that is why, at the Reconsideration Hearing, she instructed the parties to work towards finalizing "these orders because they have to be in some kind of shape

---

[14] In an analogous circumstance, courts have also suspended bankruptcy cases under 11 U.S.C. § 305(a) while a party pursues an appeal on a disputed issue of state law. *See, e.g.*, *In re Lake Cnty. Grapevine Nursery Operations*, 441 B.R. 653, 655 (Bankr. N.D. Cal. 2010) (explaining that, in the context of a dispute over who had authority to file for bankruptcy based on an issue of California state law, "[t]he court is quite willing to entertain a motion pursuant to § 305(a) of the Bankruptcy Code seeking to stay Chapter 11 proceedings until [the party] has taken the proper steps to replace Kaesekamp and NVWI as members"); *In re Milestone Educ. Inst., Inc.,* 167 B.R. 716, 724 (Bankr. D. Mass. 1994) (suspending bankruptcy so that parties could resolve question of whether receiver had authority to file for bankruptcy under Massachusetts law, which would "preserve the bankruptcy petition filing date for purposes of bringing preference actions, while permitting the Massachusetts Appeals Court to review the [state court]'s order and address novel and unsettled issues of receivership law").

for Appellate Courts to review." JA426 (176:1–7). While persons purporting to act for WCD attempted to short-circuit that process by filing this bankruptcy petition, they should have challenged the Receivership Order in state court. Thus, at least to the extent this Court concludes that the scope of the Receivership Order is unclear, it should instruct the Bankruptcy Court to grant relief from the automatic stay to allow appellate review in state court.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment below.

Dated: October 17, 2024

/s/ Matthew Kutcher

MATTHEW KUTCHER
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
(312) 881-6500
mkutcher@cooley.com

CULLEN D. SPECKHART
PATRICK J. HAYDEN
EVAN M. LAZEROWITZ
JEREMIAH P. LEDWIDGE
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000

BENJAMIN B. SWEENEY
COOLEY LLP
1333 2nd Street
Suite 400

Santa Monica, CA 90401
(213) 561-3250

ARTHUR J. ABRAMOWITZ
ROSS J. SWITKES
SHERMAN, SILVERSTEIN, KOHL, ROSE
& PODOLSKY, P.A.
308 Harper Drive, Suite 200
Moorestown, NJ 08057
(856) 662-0700

KEVIN C. MACLAY
TODD E. PHILLIPS
SERAFINA A. CONCANNON
CAPLIN & DRYSDALE, CHARTERED
1200 New Hampshire Avenue NW
8th Floor
Washington, DC 20036
(202) 862-7850
*Counsel for Appellant the*
*Official Committee of Talc Claimants*

*/s/ Bryan Killian*
BRYAN KILLIAN
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004
(202) 739-3000
bryan.killian@morganlewis.com

ANDREW J. GALLO
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
(617) 951-8117

*Counsel for Appellant Peter Protopapas*

# CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Local Rules 28.3(d) and 46.1(e), I certify that I, Patrick J. Hayden, am admitted as an attorney and counselor of the United States Court of Appeals for the Third Circuit.

Dated: October 17, 2024

*/s/ Patrick J. Hayden*

PATRICK J. HAYDEN
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000
phayden@cooley.com

*Counsel for Appellant the*
*Official Committee of Talc Claimants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g) and Local Rule 31.1, I certify the following:

1.     This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7) because it contains 12,600 words, excluding those parts exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in Times New Roman 14-point font using Microsoft Word 2010.

3.     This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of the electronic brief is identical to the text of the paper copies and because Cardon Black Defense version 3.4.0.1047 was run on the file containing the electronic version of the brief and no viruses were detected.

Dated: October 17, 2024          */s/ Patrick J. Hayden*

PATRICK J. HAYDEN
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000
phayden@cooley.com

*Counsel for Appellant the*
*Official Committee of Talc Claimants*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on October 17, 2024. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

Dated: October 17, 2024    */s/ Patrick J. Hayden*

          PATRICK J. HAYDEN
          COOLEY LLP
          55 Hudson Yards
          New York, NY 10001
          (212) 479-6000
          phayden@cooley.com

          *Counsel for Appellant the*
          *Official Committee of Talc Claimants*



**JOINT APPENDIX, VOLUME I OF II**

# TABLE OF CONTENTS

PAGE

### Volume I of II
### (Bound with Appellant's Brief)

Appellant Peter Protopapas' Notice of Appeal, dated July 1, 2024
(ECF No. 12) (23-cv-04156) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA1

Appellant The Official Committee of Talc Claimants'
Notice of Appeal, dated July 1, 2024 (ECF No. 13)
(23-cv-04156) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA4

Order of the Honorable Zahid N. Quraishi Appealed From,
dated May 31, 2024 (ECF No. 37) (23-cv-04151) . . . . . . . . . . . . . . . . . . . JA8

Opinion of the Honorable Zahid N. Quraishi Appealed From,
dated May 31, 2024 (ECF No. 36) (23-cv-04151) . . . . . . . . . . . . . . . . . JA10

Bankruptcy Court Order Denying Motion to Dismiss,
dated June 20, 2023 (ECF No. 211) (23-13575-MBK). . . . . . . . . . . . . JA27

Bankruptcy Court Letter Opinion Denying Motion to Dismiss,
dated June 20, 2023 (ECF No. 210) (23-13575-MBK). . . . . . . . . . . . . JA29

### Volume II of II

Bankruptcy Court Docket Entries (23-13575-MBK) . . . . . . . . . . . . . . . . . . . JA47

District Court Docket Entries (23-cv-04151). . . . . . . . . . . . . . . . . . . . . . . JA183

District Court Docket Entries (23-cv-04156). . . . . . . . . . . . . . . . . . . . . . . JA201

Notice of Appointment of Official Committee of Talc Claimants,
filed May 24, 2023 (ECF No. 121) (23-13575-MBK) . . . . . . . . . . . . . JA211

ii

PAGE

Order on Plaintiffs' Motion to Appoint a Receiver, entered
    March 10, 2023 (Court of Common Pleas for the Fifth Judicial
    District, State of South Carolina) .................................. JA213

James Nani, *Judge Kaplan on NJ Bankruptcy Court Getting Its Due:*
    *Q&A (1)*, Bloomberg Law, Aug. 21, 2023 ........................ JA221

Voluntary Petition for Non-Individuals Filing for Bankruptcy,
    filed April 26, 2023 (ECF No. 1) (23-13575-MBK) ................. JA225

Declaration of Mohsin Y. Meghji, Chief Restructuring Officer of
    Whittaker, Clark & Daniels, Inc., in Support of Chapter 11
    Petitions and First Day Motions, filed April 27, 2023
    (ECF No. 5) (23-13575-MBK).................................... JA244

Stipulated Facts in Connection with Motion of Peter Protopapas to
    Dismiss the Chapter 11 Case of Whittaker, Clark & Daniels, Inc.,
    filed June 2, 2023 (ECF No. 157) (23-13575-MBK) .............. JA267

Transcript of May 4, 2023 Hearing, filed May 8, 2023
    (ECF No. 73) (23-13575-MBK) ................................. JA556

First Day PowerPoint Presentation (May 4, 2023) ...................... JA602

Motion of Peter Protopapas to Dismiss the Chapter 11 Case of
    Whittaker, Clark & Daniels, Inc., filed May 3, 2023
    (ECF No. 62) (23-13575-MBK) ................................. JA632

Amended and Revised Motion of Peter Protopapas to Dismiss the
    Chapter 11 Case of Whittaker, Clark & Daniels, Inc.,
    filed May 19, 2023 (ECF No. 117) (23-13575-MBK) ............... JA649

Debtors' Objection to Motion to Dismiss the Chapter 11 Case of
    Whittaker, Clark & Daniels, Inc., filed May 26, 2023
    (ECF No. 124) (23-13575-MBK) ................................. JA663

iii

The Official Committee of Talc Claimants' Joinder to Amended and
Revised Motion of Peter Protopapas to Dismiss the Chapter 11
Case of Whittaker, Clark & Daniels, Inc. and Response to the
Debtors' Objection Thereto, filed May 30, 2023
(ECF No. 132) (23-13575-MBK) .................................. JA756

Transcript of June 6, 2023 Hearing, filed June 9, 2023
(ECF No. 191) (23-13575-MBK) ................................ JA767

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PETER PROTOPAPAS in his capacity as Court-Appointed Receiver and THE OFFICIAL COMMITTEE OF TALC CLAIMANTS, *Appellants*, v. WHITTAKER, CLARK & DANIELS, INC., *Appellee.* | : : : : : : : : : : : : : : : : : | **Civil Action No. 23-4151 (ZNQ)** |

### <u>NOTICE OF APPEAL</u>

Notice is hereby given that Appellant Peter Protopapas, in his capacity as court-appointed receiver, appeals to the United States Court of Appeals for the Third Circuit from the Order dismissing the appeal from the bankruptcy court (Dkt. 37) entered on the 31st day of May, 2024, including all interlocutory orders that merge into the final judgment, including but not limited to the Opinion (Dkt. 36) also entered on the 31st day of May, 2024.

**JA1**

Dated: July 1, 2024

*/s/ Harvey Bartle IV*
**MORGAN, LEWIS & BOCKIUS LLP**
Harvey Bartle IV
502 Carnegie Center
Princeton, NJ 08540-6241
Telephone: (609) 919-6685
Email:  harvey.bartle@morganlewis.com

Andrew J. Gallo
One Federal Street
Boston, MA 02110
Telephone:  (617) 341-7700
Facsimile:   (617) 341-7701

Bryan M. Killian
David B. Salmons
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

*Attorneys for Peter Protopapas, in his*
*capacity as Court-Appointed Receiver*

2

**JA2**

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2024, a true and correct copy of the foregoing document was served via electronic filing upon the counsel of record via the ECF system.

Dated: July 1, 2024                                     *s/Harvey Bartle IV*
                                                        Harvey Bartle IV

**JA3**

**SHERMAN, SILVERSTEIN,
KOHL, ROSE & PODOLSKY, P.A.**
Arthur J. Abramowitz
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
aabramowitz@shermansilverstein.com
rswitkes@shermansilverstein.com

**COOLEY LLP**
Cullen D. Speckhart\*
Matthew L. Kutcher
Evan M. Lazerowitz
Jeremiah P. Ledwidge\*\*
Patrick J. Hayden\*\*
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
cspeckhart@cooley.com
mklein@cooley.com
elazerowitz@cooley.com
jledwidge@cooley.com

**CAPLIN & DRYSDALE,
CHARTERED**
Kevin C. Maclay\*\*
Todd E. Phillips\*\*
Serafina A. Concannon\*\*
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Tel: (202) 862-5000
kmaclay@capdale.com
tphillips@capdale.com
 sconcannon@capdale.com

*Counsel for Appellant
the Official Committee of Talc
Claimants*

\* *Pro Hac Vice* Pending
\*\* *Pro Hac Vice* Forthcoming

1

**JA4**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| |
|---|
| In re: |
| WHITTAKER, CLARK & DANIELS, INC. |

| | |
|---|---|
| PETER PROTOPAPAS and OFFICIAL COMMITTEE OF TALC CLAIMANTS, | Civil Action No. 3:23-cv-04151-ZNQ (consolidated with Civil Action No. 3:23-cv-04156-ZNQ) |
|               Appellants. | |
| v. | |
| WHITTAKER, CLARK & DANIELS, INC., | |
|               Appellee. | |

**<u>NOTICE OF APPEAL</u>**

Notice is hereby given that Appellant the Official Committee of Talc Claimants of Whittaker, Clark & Daniels, Inc. ("WCD") and its affiliated debtors and debtors-in-possession in the above-captioned bankruptcy case appeal to the United States Court of Appeals for the Third Circuit from the District Court's Opinion (Dkt. No. 36) and Order (Dkt. No. 37) entered on May 31, 2024, which dismissed the appeal of the District of New Jersey Bankruptcy Court's Order Denying Motion to Dismiss (Bankr. D.N.J. Case No. 23-13575 (MBK), Dkt. No. 211) entered on June 20, 2023.

Dated: July 1, 2024

                                   */s/ Arthur J. Abramowitz*
                                   **SHERMAN, SILVERSTEIN,
KOHL, ROSE & PODOLSKY, P.A.**
                                   Arthur J. Abramowitz

**JA5**

Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700

**COOLEY LLP**
Cullen D. Speckhart**
Matthew L. Kutcher
Evan M. Lazerowitz
Jeremiah P. Ledwidge**
Patrick J. Hayden**
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000

**CAPLIN & DRYSDALE, CHARTERED**
Kevin C. Maclay**
Todd E. Phillips**
Serafina A. Concannon**
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Tel: (202) 862-5000

*Counsel for Appellant the*
*Official Committee of Talc Claimants*

* *Pro Hac Vice* Pending
** *Pro Hac Vice* Forthcoming

3

**JA6**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 1, 2024, a true and correct copy of the foregoing document was served via electronic filing upon the counsel of record via the ECF system.

Dated: July 1, 2024                                     *<u>/s/ Arthur J. Abramowitz</u>*
                                                                   Arthur J. Abramowitz

4

**JA7**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

**PETER PROTOPAPAS** in his capacity as
Court-Appointed Receiver and **THE
OFFICIAL COMMITTEE OF TALC
CLAIMANTS,**

              Appellants,

          v.

**WHITTAKER, CLARK & DANIELS,
INC.,**

              Appellee.

---

Civil Action No. 23-4151 (ZNQ)

**ORDER**

**QURAISHI, District Judge**

      **THIS MATTER** comes before the Court upon Peter Protopapas', in his capacity as a Court Appointed Receiver ("Receiver"), and the Official Committee of Talc Claimants' ("Talc Claimants," together "Appellants") joint filing of an appeal of the District of New Jersey Bankruptcy Court's ("Bankruptcy Court") decision to deny a motion to dismiss a Chapter 11 bankruptcy filed by Whittaker, Clark & Daniels ("WCD" or "Appellee").  (ECF No. 1.)[1]  For the reasons set forth in the accompanying Opinion,

      **IT IS** on this **31st** day of **May, 2024,**

      **ORDERED** that the appeal from the Bankruptcy Court (ECF No. 1) is hereby **DISMISSED**; and it is further

---

[1] This case was consolidated with Docket Number 23-4156 following a joint motion by the parties in this case.  (ECF No. 6.)

**JA8**

**ORDERED** that the Clerk is instructed to mark this matter **CLOSED**.


_s/ Zahid N. Quraishi_____
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

**JA9**

<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **PETER PROTOPAPAS** in his capacity as Court-Appointed Receiver and **THE OFFICIAL COMMITTEE OF TALC CLAIMANTS,**<br><br>Appellants,<br><br>v.<br><br>**WHITTAKER, CLARK & DANIELS, INC.,**<br><br>Appellee. | Civil Action No. 23-4151 (ZNQ)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

  **THIS MATTER** comes before the Court upon Peter Protopapas', in his capacity as a Court Appointed Receiver ("Receiver"), and the Official Committee of Talc Claimants' ("Talc Claimants," together "Appellants") joint filing of an appeal of the District of New Jersey Bankruptcy Court's ("Bankruptcy Court") decision to deny a motion to dismiss a Chapter 11 bankruptcy filed by Whittaker, Clark & Daniels ("WCD" or "Appellee"). (ECF No. 1.)[1]  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth below, the Court **DISMISSES** Appellants' appeal.

---

[1] This case was consolidated with Docket Number 23-4156 following a joint motion by the parties in this case.  (ECF No. 6.)

**JA10**

I.    **BACKGROUND AND PROCEDURAL HISTORY**

A.   **BACKGROUND ON WCD**

WCD was a New York corporation that from 1918 through 2004 supplied "minerals and pigments" to industrial customers.  (WCD Brief ("WCD Br."), ECF No 22 at 15.)[2]  WCD reincorporated in New Jersey in 1972.  (*Id.*)  At its peak, WCD was "one of the largest talc and industrial compound supply and distribution businesses in the United States."  (ECF No. 18-1 at 851; *see also* WCD Br. at 15.)  Brilliant National Services ("Brilliant") purchased WCD's stock in 1988.  (Appellants' Brief ("App. Br."), ECF No. 18 at 18.)  WCD, Brilliant, and affiliate entities L.A. Terminals, Inc. ("LAT") and Soco West, Inc. ("Soco", collectively, "Debtors"), are all owned by Berkshire Hathaway. (App. Br. at 18.)  WCD, LAT, and Soco are direct or indirect subsidiaries of Brilliant.  (*Id.*)

In 2004 the operating assets and intellectual property of WCD and the affiliate entities were sold to Bain Capital under the umbrella of Benntag N.A., at which time WCD "kept tort liabilities involving asbestos and talc."[3]  (WCD Br. at 15; App. Br. at 19.)  WCD, Soco, and Brilliant also retained liability for environmental remediation costs and obligations relating to their, and their predecessors in interest, "production or handling of hazardous materials which contaminated certain properties" as well as specific assets including "asbestos- and environmental-related insurance receivables and certain real estate."  (App. Br. at 19-20.)  In 2004 WCD stopped

---

[2] Throughout this opinion, references to documents from the various bankruptcy court dockets will be cited as: [Applicable District] Bk. Dkt. [No.].  References to the South Carolina action *Sarah J. Plant and Parker Plant v. Avon Products, Inc., et al.*, C/A No. 2022-CP-40-1265 (S.C. C.P.) will be cited, as appropriate, from documents filed either with this Court or with the District of New Jersey Bankruptcy Court.  All references to documents filed with the district court's docket in this case will cite to the document's ECF No. as filed with the district court.  For consistency across the many filings in this case, all page numbers across filing systems will refer to those stamped by the relevant court's e-filing system and not to the internal pagination of the parties, and internal citations will be converted accordingly.

[3] Specifically, WCD, Soco, and Brilliant "retained [] all liability for [] tort claims resulting from exposure to products containing talc, asbestos, or chemical compounds that they (or their predecessors in interest) processed or distributed." (App. Brief at 19.)

2

**JA11**

operating commercially, and became what Appellants in this case characterize as "a nonoperating shell entity whose corporate existence has been maintained for the sole purpose of managing legacy asbestos- and talc-related liabilities." (*Id.* at 20.)

In 2007 the Debtors were purchased by National Indemnity Company, an affiliate of Berkshire Hathaway. (*Id.*) Since the purchase, the Debtors have paid out $300 million related to asbestos and environmental claims. (*Id.*) As of Appellants' Petition Date, there were approximately 1,012 asbestos- and talc- related litigation claims pending against WCD, and one environmental-related claim. (*Id.*)

**B. THE SOUTH CAROLINA ACTION**

On March 3, 2023 a jury rendered a verdict of over $29 million against WCD in the South Carolina Court of Common Pleas ("South Carolina court") case *Sarah J. Plant and Parker Plant v. Avon Products, Inc.*, *et al.*, C/A No. 2022-CP-40-1265 (S.C. C.P.) related to asbestos exposure in cosmetics leading to mesothelioma. (*Id.*) Following the verdict, plaintiffs in the South Carolina action Sarah J. Plant and Parker Plant (together, "Plant") filed a motion asking the South Carolina court to appoint a receiver for WCD under the South Carolina Code § 15-65-10(4) ("S.C. § 15-65-10(4)"). (*Id.* at 21 (citing ECF No. 18-1 at 91).) S.C. § 15-65-10(4) allows for the appointment of a receiver by a judge of the circuit court in cases where, "a corporation . . . is insolvent or in imminent danger of insolvency . . . and, in like cases, of the property within this state of foreign corporations." S.C. § 15-65-10(4).

Justice Jean Hoefer Toal (ret.), a retired Chief Justice of the Supreme Court of South Carolina who has now been appointed to the trial court bench to oversee South Carolina's asbestos cases, presided over the case. (App. Br. at 21.) Justice Toal granted the motion on an expedited basis on March 10, 2023, finding that based on documents in front of the court, existing jury

**JA12**

verdicts, and the court's knowledge of additional pending litigations against WCD, "WCD appears to actually be insolvent and it is certainly in imminent danger of insolvency." ("Receivership Order", ECF No. 18-1 at 12.) Justice Toal appointed Peter Protopapas as receiver under the statute "pursuant to the South Carolina Law" and conferred the "power and authority [sic] fully administer all assets of WCD, accept service on behalf of WCD, engage counsel on behalf of WCD and take any and all steps necessary to protect the interests of WCD whatever they may be." (*See generally id.* at 8-15.) The Receivership Order specified "the powers of a receiver are as broad as the law permits" and noted "[n]othing in this order is intended to limit the power of the receiver to bring claims against any entity or individual." (*Id.* at 12.) The Receivership Order further enumerated additional rights of the Receiver including collecting accounts receivable from tenants and changing locks to premises at which property was situated. (*Id.* at 13.)

On March 16, 2023, WCD filed a motion for reconsideration of the Receivership Order, asking Justice Toal to vacate the receivership. (App. Br. at 22 (citing ECF No. 18-1 at 111); *see generally* ECF No. 18-1 at 211-222.) During the reconsideration hearing ("Reconsideration Hearing") on April 18, 2023, Plant's counsel argued on the record "to the extent there is a consideration of a bankruptcy filing . . . I just want it in the record for any bankruptcy judge that's looking at this issue that at the present time a receivership is in place" and that during a receivership "the property of [WCD] . . . it's in the property of the Court." (ECF No. 18-1 at 218.) Counsel further urged Justice Toal to agree on the record that once a receivership was in place WCD did not "have the authority to enter a bankruptcy. They don't control [the property]." (*Id.*)

Justice Toal replied on the record that she was "well aware" of the asset situation and "that was the main factor in [her] signing the order so quickly" given she was not clear on WCD's asset picture and wanted to make sure someone "would not simply declare bankruptcy and that entity

**JA13**

would still be controlling things." (*Id.*)  In an oral decision, Justice Toal then held that she was "deny[ing] the motion to reconsider and dissolve the receivership" and that she was "satisfied . . . there [were] sufficient connections with South Carolina of the [WCD] assets . . . to justify the receivership." (*Id.* at 220.)  Her order did not modify the existing Receivership Order. (*Id.* at 220.)  Justice Toal ordered the parties to submit proposed final orders that would be "in some kind of shape for Appellate Courts to review." (App. Br. at 23 (citing ECF No. 18-1 at 221).)

On April 24, 2023, Plant's counsel submitted a proposed order to the South Carolina court, which included language in a footnote that stated "WCD no longer has the rights to administer [the property of the corporation].  This removal of rights includes . . . the ability of the company to institute a bankruptcy proceeding." (WCD Br. at 23 (citing ECF No. 18-1 at 1006 n.12).)  WCD's counsel was required to submit their comments on the proposed order to the South Carolina court on April 27, 2023.  (App. Br. at 26.)

### C.  THE CHAPTER 11 BANKRUPTCY PETITION

One day before the due date for its submission to the South Carolina court on Plant's proposed Reconsideration Order, WCD and its affiliate debtor entities filed a Chapter 11 bankruptcy in the District of New Jersey.  (*Id.*)[4]  A newly constituted WCD Board of Directors (the "Filing BOD") approved the filing of the bankruptcy petition.  (*Id.*)[5]  WCD's bankruptcy docket in the District of New Jersey Bankruptcy Court is number 23-13575.

The Receiver filed a motion to dismiss the bankruptcy action on May 3, 2023 (N.J. Bk. Dkt. 62), followed by an Amended Motion to Dismiss on May 19, 2023 (N.J. Bk. Dkt. 117).

---

[4] Only the WCD bankruptcy is at issue in this appeal.
[5] The Filing BOD was not constituted at the time Justice Toal issued the Receivership Order.  Because a different WCD Board of Directors was constituted at the time of the Order, in this Opinion the Court differentiates between the newly the Filing BOD that approved the Chapter 11 Petition and the WCD Board of Directors more generally addressed in Justice Toal's Receivership Order.

Creditors were appointed to the Official Committee of Talc Claimants by the United States Trustee Martha Hildebrandt according to § 1102(a)(1) of the Bankruptcy Code on May 24, 2023.  (N.J. Bk. Dkt. 121.)  The Talc Claimants then joined the Receiver's Amended Motion to Dismiss.  (N.J. Bk. Dkt. 132.)  On June 6, 2023, a hearing on the joint motion took place in front of the Honorable Michael B. Kaplan, C.J.B.C.  (N.J. Bk. Dkt. 175; *see generally* ECF No. 18-1 at 1115-1191.) Appellants' arguments in front of the Bankruptcy Court relied on the Filing BOD's lack of authority to file a Chapter 11 Bankruptcy Petition in light of the Receivership Order, and further argued that the *Rooker-Feldman* doctrine applied, which prohibits federal appellate review of a state court judgment.[6]  (*Id.*)  Following oral argument, the Bankruptcy Court denied the joint Amended Motion to Dismiss, resulting in the order under appeal in the instant action.  (ECF No. 1-2; N.J. Bk. Dkt. 211; *see generally* "Bk. Op.," N.J. Bk. Dkt. 210.)

In an 18-page Letter Opinion filed on June 20, 2023, the Bankruptcy Court held that "WCD's bankruptcy was filed by entities with proper authority" and that "there exists no cause for dismissal."  (Bk. Op. at 4-5.)  Further, the Bankruptcy Court wrote its opinion did not "intend to examine the merits of the South Carolina Court's ruling with respect to the appointment of the Receiver", "revisit[] whether the South Carolina Court had jurisdiction to enter the Receivership Order" or "look[] behind the Receivership Order into the Receiver's motives, experience, or qualifications."  (*Id.* at 3.)  As such, the Bankruptcy Court determined the *Rooker-Feldman* doctrine did not apply since the Bankruptcy Court's ruling was not violative of Justice Toal's order and did not "review[] or reject[] the underlying judgment."  (*Id.* at 5.)

---

[6] The *Rooker-Feldman* doctrine prevents a federal court from exercising jurisdiction where the relief sought by the plaintiff would essentially "reverse a state court decision or void its ruling."  *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006).

Next, the Bankruptcy Court held that the Receivership Order in this case did not remove the WCD Board of Directors' authority to file for bankruptcy. (*Id.* at 6.)  The Bankruptcy Court relied on the text of the Receivership Order itself, a review of South Carolina laws on the power of receivers, and federal bankruptcy law to determine that the order of appointment of the Receiver did not give him the exclusive authority to file for bankruptcy. (*Id.* at 7.)  The Bankruptcy Court held that under New Jersey state law, the applicable law for a New Jersey corporation, the Board of Directors was authorized to file for bankruptcy. (*Id.* at 9.)

The Bankruptcy Court then examined the impact of Justice Toal's statements at the Reconsideration Hearing regarding a potential bankruptcy filing. (*Id.* at 8.)  However, he found that neither South Carolina law nor the Receivership Order itself vested a receiver with the power to divest the board of a foreign corporation of its power to declare bankruptcy. (*Id.* at 9.)  The Bankruptcy Court held that Appellants' counsel had a "mistaken understanding of the Receivership Order's effect" and that such an interpretation did not square either with federal bankruptcy law or available authorities. (*Id.* at 10.)  Further, the Bankruptcy Court found that Justice Toal's comments at the Reconsideration Hearing did not amount to either a separate holding or modification of her existing order, and the Bankruptcy Court could not interpret it as supplanting the language of the enacted Receivership Order. (*Id.* at 12.)

Appellants filed an appeal in the District Court on July 3, 2023 (N.J. Bk. Dkt. 246) concurrently with a Motion for Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit (N.J. Bk. Dkt. 248).  Appellees filed an Objection to the Motion for Certification of Direct Appeal (N.J. Bk. Dkt. 289), and Appellants replied (N.J. Bk. Dkt. 314). After a hearing on July, 27, 2023 (N.J. Bk. Dkt. 328) the Bankruptcy Court denied the application for certification to the Third Circuit on July 31, 2023 (N.J. Bk. Dkt. Nos. 331, 337).  The District

**JA16**

Court received the Notice of Appeal from the Bankruptcy Court and the Designation of Bankruptcy record on August 3, 2023.  (ECF Nos. 1 and 2.)  Appellants filed their brief with the District Court on September 12, 2023 (App. Br.), Appellee responded (WCD Br.), and Appellants replied (ECF No. 23).

## II.    LEGAL STANDARD

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees.  28 U.S.C. § 158(a).  A district court reviews a bankruptcy court's "legal determinations de novo, its factual findings for clear error and its exercise of discretion for an abuse thereof."  *In re Rashid*, 210 F.3d 201, 205 (3d Cir. 2000); *see In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995) ("On appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . .") (quoting Frmr. Fed. R. Bankr. P. 8013); *see also In re Great Atl. & Pac. Tea Co., Inc.*, Civ. No. 14-4170, 2015 WL 6395967, at *2 n.1 (S.D.N.Y. Oct. 21, 2015) (although Fed. R. Bankr. P. 8013 was removed in the new Federal Rules of Bankruptcy Procedure "logic still compels the same conclusion with respect to the appellate powers of the District Court").  When addressing mixed questions of law and fact, the Court divides the questions into their respective components and applies the appropriate standard to each.  *In re Brown*, 951 F.2d 564, 567 (3d Cir. 1991).

## III.    DISCUSSION

Section 1112(b) of the Bankruptcy Code provides that bankruptcy actions may be dismissed if the movant establishes cause.  11 U.S.C. § 1112(b)(1).  Appellants contend that WCD's bankruptcy petition was filed by a party with no standing to do so - and as a result,

8

# JA17

unauthorized - and therefore should have been properly dismissed under Section 1112(b).  This case comes down to the question of whether the Bankruptcy Court erred in finding there was no cause to dismiss the bankruptcy action.

Appellants in this case argue error on three grounds regarding the bankruptcy court's denial of the motion to dismiss: (1) the Bankruptcy Court "ignor[ed] the plain text of the receivership order and substitut[ed] its own flawed interpretation", (2) the Bankruptcy Court erred by not interpreting the Receivership Order consistently with Justice Toal's on-the-record remarks during the Reconsideration Hearing, and (3) the Bankruptcy Court erred by "relying on its policy preferences" and created an "exception to the rule that state law dictates who may authorize a bankruptcy petition on behalf of a corporate debtor." (App. Br. at 17-18.)  All issues in this appeal are legal issues rather than factual issues, and therefore the Court will review the Bankruptcy Court's legal determinations de novo.

For the reasons below, this Court finds the Bankruptcy Court did not err and affirms its judgment in this case.

## A.    INTERPRETATION OF THE RECEIVERSHIP ORDER

Appellants argue that the Filing BOD lacked authority to petition for bankruptcy on WCD's behalf.  (App. Br. at 33.)  The meat of Appellants' argument is that under South Carolina law Justice Toal divested the WCD Board of Directors of its ability to authorize a bankruptcy.  (*Id.*)  Appellants' position is that "when a state court appoints a general receiver to manage a corporation's affairs, that receiver obtains the sole authority to put the corporation into bankruptcy." (*Id.* at 34 (citing *In re WC 1st & Trinity GP, LLC v. Milligan,* Civ. No. 20-995, 2021 WL 6750934, at *2 (W.D. Tex. Mar. 18, 2021).)  Appellants further argue the text of the

9

**JA18**

Receivership Order plainly divested the WCD Board of Directors of its power by its terms, and that interpretation otherwise is an error by the Bankruptcy Court.  (*Id.* at 37.)

Appellees argue the opposite: that the Bankruptcy Court made "precisely the right call" when he determined that the only proper place to look to the Receiver's powers was the text of the Receivership Order itself, which was silent on the question of the Board of Directors and power to declare bankruptcy.  (WCD Br. at 14, 50-51.)  The Bankruptcy Court properly determined that "under South Carolina law, the Receiver's power derived solely from the order of appointment," and the plain language of the order of appointment here did not "expressly grant[] the Receiver exclusive authority to file for bankruptcy or otherwise displace[] the [WCD Board of Director's] authority to manage WCD's corporate affairs."  (*Id.* at 25-26.)  Further, because WCD is incorporated in New Jersey, it is a "foreign corporation" under South Carolina law and therefore the Receiver's powers are limited by the enacting receivership statute.  (*Id.* at 29, 63 (citing S.C. Code Ann. § 33-1-400 ("defining 'foreign corporation' as a 'corporation for profit incorporated pursuant to a law other than the law of this State'").)

1.  *The Bankruptcy Court's Analysis of the Receivership Order*

This Court finds that the Bankruptcy Court did not err in its analysis of the plain language of the Receivership Order and the powers it conferred under South Carolina law under its enacting statute S.C. § 15-65-10(4).  The Bankruptcy Court appropriately applied South Carolina law and the text of the Receivership Order itself to determine the powers explicitly conferred on the Receiver by Justice Toal's order.  The Bankruptcy Court held that while the case law that exists for receiverships under S.C. § 15-65-10(4) is sparse, such caselaw "clearly establishes that— because a receiver's authority is derived solely from the court . . . —a receiver has no power other than that given him or her by the order of appointment."  (Bk. Op. at 7 (citing *Kirven v. Lawrence,*

**JA19**

244 S.C. 572 (1964); *In re Fifty-Four First Mortg. Bonds*, 15 S.C. 304 (1881)).)  The Bankruptcy Court's review of the Receivership Order found it silent on the question of the WCD Board of Directors and power to declare bankruptcy, and that it only in passing referenced WCD's status as a foreign corporation and how that impacted the enactment of the Receiver's role under South Carolina law.  (*Id.* at 8-9.)

Under South Carolina law, "[a] court order or judgment is construed like any written instrument."  *Campione v. Best*, 435 S.C. 451, 458 (Ct. App. 2021) (citation omitted).  "Whether a court order is clear and unambiguous is a question of law for the court."  *Id.*  Further, "[i]f the language employed is plain and unambiguous, there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used."  *Doe v. Bishop of Charleston*, 407 S.C. 128, 135 (2014) (quoting *Weil v. Weil*, 299 S.C. 84, 90 (Ct. App. 1989)).  The Bankruptcy Court correctly held that absent language or authority in the alternative, the plain language of the Receivership Order did not supplant New Jersey's default rule that the Filing BOD was authorized to file for bankruptcy.  (Bk. Op. at 9.)

The Bankruptcy Court pointed out that while the language of the Receivership Order is broad, it is still enacted "*pursuant to the South Carolina Law*" and expressly included the limiting language that it is "as broad as the law permits" (*Id.* at 6 (citing ECF No. 18-1 at 12) (emphasis added in opinion)).)  The enacting statute in question limits the power of a receiver over a foreign corporation to "the property within this state."  S.C. § 15-65-10(4).  This is intuitive – traditionally, a state court's power is limited to its territorial boundaries.  *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 128 (2023) (observing the history of the Anglo-American legal tradition's recognition that "a tribunal's competence was generally constrained only by the 'territorial limits' of the

11

**JA20**

sovereign that created it"); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (noting states are limited "by their status as coequal sovereigns in a federal system").

WCD correctly points out that this is why mechanisms such as ancillary receiverships, in which receivers can apply to secure out of state property from local courts, exist in states including New Jersey and South Carolina.[7]  (App. Br. at 34 (citing *Umland v. United Pub. Serv. Co.*, 111 N.J. Eq. 563, 567 (Ch. 1932) ("[I]t is the customary practice for the receiver to apply to the courts of the state where the property is located for what is ordinarily denominated ancillary receivership.")); *see also* N.J. Stat. Ann. § 14A:14-2 (observing in the 1968 Commissioner's notes on decisions that "[w]hile this section makes no mention of foreign corporations . . . when read in connection with R.S. 14:14-4 and 14:15-2, [they] confer a limited jurisdiction on the New Jersey courts to appoint receivers for the New Jersey property of foreign corporations"); *Farmer v. CAGC Ins. Co.*, 424 S.C. 579, 583 (Ct. App. 2018) (referring to an ancillary receivership in South Carolina relating to a primary receivership established by North Carolina).  If, as Appellants argue, the South Carolina state court receivership automatically reached past the boundaries of the state, there would be no need for such a system.

> *2. Legal Authorities*

Further, there is little evidence in the case law stemming from S.C. § 15-65-10(4), and Appellants have not provided any, that receiverships under the statute commonly block foreign corporations from declaring bankruptcy or that receivers otherwise enjoy extensive control over foreign corporations.[8]  Although Appellants argue that the Bankruptcy Court did not "seriously

---

[7] There is no evidence in the record showing that the Receiver in this case applied to the New Jersey court for an ancillary receivership.  (WCD Br. at 35.)

[8] There appears to be only one other trial court order citing S.C. § 15-65-10(4) with regard to a foreign corporation, from a case also in front of Justice Toal.  The party in that case made a similar argument to the Appellee's here regarding the limitations of the receivership over foreign corporations.  *See, e.g., Childers v. Davis Mechanical Contractors, Inc.*, Civ. No. 2021-CP-40-03484, 2023 WL 10365071, at *1 (S.C. Com. Pl. Mar. 30, 2023) (in which

**JA21**

engage[] with the Receivership Order's text" and was looking for "magic words," this position is not supported by either the language of the order itself or any caselaw showing South Carolina courts relying on S.C. § 15-65-10(4) to create the type of cross-territorial receiverships endorsed by the Appellants.  (App. Br. at 34, 37.)  More generally, the case law Appellants provide to support their arguments does not persuasively argue otherwise.

Generally, this Court agrees with the Bankruptcy Court that the cases Appellants rely on "for the proposition that the appointment of a receiver automatically displaces a board" are "factually distinguishable and . . . not controlling."  (Bk. Op. at 17 n.6.)  Appellants cite *In re WC 1st & Trinity GP, LLC v. Milligan* for the proposition that "a state court can vest authority to file a bankruptcy petition entirely in a receiver."  (App. Br. at 34 (citing *WC 1st*, 2021 WL 6750934, at \*2.)  However, several factors distinguish *WC 1st* from the present case.  First, the district court in *WC 1st* examined the effect of a state court receivership order over domestic Texas debtors governed by the Texas Business Organizations Code.  *In re WC1st and Trinity LP*, No. 20-10886, W.D. Tex. Bk. Dkt. 51 ("WC 1st Bk. Op.") at 2 (Bankr. W.D. Tx. Sept. 14, 2020).  Since it is undisputed that WCD is a New Jersey corporation incorporated under the laws of New Jersey, i.e.,

---

Justice Toal's order assumed arguendo that a party's interpretation that S.C. § 15-65-10(4) only applied to its property within South Carolina was correct.)  Other court judgments citing the statute do not address the issue.

South Carolina precedent more broadly also pulls against Appellants' contention that the Receivership Order would automatically reach beyond its borders and into the governance of a foreign corporation without any specific language indicating as much.  In *Clark v. Preferred Accident Insurance Company of New York*, the South Carolina Supreme Court wrote that "[e]very State has jurisdiction to determine for itself the liability of property within its territorial limits, to seize and sell such under the process of its Courts."  231 S.C. 167, 175 (1957).  The *Preferred Accident Insurance* court held that in cases where a receiver has been appointed by an out-of-state court, a local receiver could still sequester local property within South Carolina on behalf of local creditors, regardless of the decision by the out-of-state court.  *See Preferred Acc. Ins. Co. of N. Y.*, 231 S.C. at 174–75 ("[T]he local property in a state of a foreign corporation for which [a] receiver . . . has been appointed in another state is subject . . . to sequestration by the appointment of a local receiver [] by the creditors of the corporation, which . . . will take precedence over the rights or title of the [out-of-state] receiver." (citing *Clark v. Williard*, 294 U.S. 211, 214-215).  The *Preferred Accident Insurance* court would be unlikely to hold that a local receiver had precedence over property within the territory over a receiver appointed by an out-of-state court if, as Appellants argue, state court receivers automatically controlled corporations and assets beyond their state borders.  Further, such a position would violate the rights of other states to dispose of the property within their territories discussed elsewhere in the decision.

a foreign corporation under South Carolina law, the comparison here is inapposite. Second, the Texas statute enacting the receivership in question in *WC 1st* is entirely distinct from the South Carolina enacting statute and is, in fact, limited to domestic entities, as evidenced by its title "§ 11.404 Appointment of Receiver to Rehabilitate Domestic Entity." W.D. Tex. Bk. Dkt. 8-13 at 204, 216 (recording the Texas state trial court agreeing at hearing that the receivership was enacted under Texas Business Organizations Code § 11.404). Third, the Receivership Order in *WC 1st* specifically included language that clarified that "[t]he Receiver is granted **the sole and exclusive right to file voluntary petitions** for relief" under the Bankruptcy code. *WC 1st* Bk. Op. at 2 (emphasis in original); *see also* W.D. Tex. Bk. Dkt. 8-2 ¶ 39. Even if the other facts of the cases were not distinguishable, in *WC 1st* the bankruptcy court clearly stated "[h]ere, we have a state court order that gave the Receiver the sole authority to file bankruptcy." (*Id.* at 3.) The Receivership Order at issue in the instant case indisputably does not include explicit language delegating such power. *Compare* Receivership Order, ECF No. 18-1 at 8-15, *with* W.D. Tex. Bk. Dkt. 8-2 ¶ 39. When *WC 1st* is read as a whole, the case supports the Bankruptcy Court's decision to rely squarely on the Receivership Order's plain language and its boundaries within South Carolina law, and provides an example of a receivership order in which a state court clearly gave sole authority to file for bankruptcy to the local receiver.

Appellants' other case on this point, *In re Monroe Heights Development Corporation Inc.*, is also inapposite and unpersuasive. No. 17-10176, 2017 WL 3701857, at *1 (Bankr. W.D. Pa. Aug. 22, 2017); *dismissed*, 573 B.R. 613 (Bankr. W.D. Pa. 2017). The bankruptcy court in *Monroe* found (1) the debtor was a domestic corporation subject to a court order in its home state; (2) the person who filed for bankruptcy was a shareholder rather than the Board of Directors, and under the default Pennsylvania law would not have had authority to file for bankruptcy; and (3) the

Receivership Order itself also clearly specified that no agent of the debtor had authority to commence a bankruptcy proceeding.  2017 WL 3701857, at *1; *see also* Monroe Receivership Order, W.D. Pa. Bk. Dkt. 9-2 at 16.

In the case at hand, the Court agrees with the Bankruptcy Court's assessment that, "[d]espite the Receiver's arguments to the contrary, he is unable to identify any South Carolina state law or language in the Receivership Order that provides for" the WCD Board of Directors to be displaced or divested of its ability to file for bankruptcy. (Bk. Op. at 17.)  Having reviewed the authorities, this Court reaches the same conclusion on appeal.  The Bankruptcy Court therefore correctly held that absent plain language in the Receivership Order, caselaw, or authorities otherwise, the law of the state of incorporation controls who can properly file a bankruptcy petition.  *Matter of Giggles Restaurant, Inc.*, 103 B.R. 549, 552-54 (Bankr. D.N.J. 1989) (applying New Jersey law for a New Jersey corporation).  The Court affirms the Bankruptcy Court's opinion that under New Jersey state law, the text of the Receivership Order did not change the fact that WCD's Board of Directors held the power to file for bankruptcy and properly did so.

### B.      THE RECONSIDERATION HEARING

Appellants further argue that the Bankruptcy Court should have looked beyond the four corners of the Order and taken into account Justice Toal's comments at the Reconsideration Hearing. (App. Br. at 39-51.)  Appellants' position is that Justice Toal's comments at the hearing amounted to an official interpretation of her order, and that by not deferring to said interpretation the Bankruptcy Court violated the *Rooker-Feldman* doctrine.  (*Id.* at 47.)  Appellees disagree.

The Court affirms the Bankruptcy Court's holding that Justice Toal's comments at the hearing do not change the limits of the Receivership Order itself and "do[] not constitute a ruling." (Bk. Op. at 12.)  The Receivership Order itself was not ambiguous, and under South Carolina law

15

**JA24**

there was no room for additional interpretation without ambiguity.  *Bishop of Charleston*, 407 S.C. at 135 ("If the language employed is plain and unambiguous, there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used.") (citation omitted).

While courts are "empowered to interpret their orders," it does not necessarily hold that comments made briefly during a related hearing automatically add language or powers to an unambiguous prior order.   *Campione*, 435 S.C. at 458.   Justice Toal's comments at the Reconsideration Hearing were not, in themselves, an "order" construing her "own previous order," and therefore do not benefit from the same level of "due deference and great weight" as if she had made a holding interpreting her previous order.  *Eddins v. Eddins*, 304 S.C. 133, 136 (Ct. App. 1991); *see also* ECF No. 18-1 at 219-220 (recording Justice Toal's statements that she was "simply hearing these motions about whether to reconsider and whether to vacate" the Receivership Motion and that the holding was that she was "going to deny the motion to reconsider and to dissolve the receivership.")  The Bankruptcy Court was correct to refuse to "read further into any colloquy undertaken in the context of the Reconsideration Motion" and to focus instead on the textual interpretation of the unambiguous Receivership Order and its contextual legal framework.  (Bk. Op. at 12) (emphasis removed).

Further, because Justice Toal's commentary is not in itself a holding, the Bankruptcy Court's decision not to rely on it cannot be violative of the *Rooker-Feldman* doctrine, which only applies to federal review of state court orders.[9]

---

[9] Given that the Court has affirmed the Bankruptcy Court's decision that the Filing BOD had the proper authority to file for WCD's bankruptcy, it does not reach Appellants' argument regarding what they called the Bankruptcy Court's "secondary holding" and any alleged exception to the default bankruptcy rules.

**IV.**   <u>**CONCLUSION**</u>

For the reasons stated above, the Court will affirm the decision of the Bankruptcy Court and will **DISMISS** this appeal.  An appropriate Order will follow.

Date: **May 31, 2024**

<u>s/ Zahid N. Quraishi</u>
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

17

**JA26**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**Order Filed on June 20, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

| | |
|---|---|
| In Re: | |
| In re Whittaker, Clark & Daniels, Inc., et al. | |

| | |
|---|---|
| Case No.: | 23-13575 (MBK) |
| Chapter: | 11 |
| Hearing Date: | June 6, 2023 |
| Judge: | Michael B. Kaplan |

## ORDER DENYING MOTION TO DISMISS

The relief set forth on the following pages, numbered two (2) through _____2_____ is
**ORDERED**.

**DATED: June 20, 2023**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

**JA27**

This matter comes before the Court upon a Motion to Dismiss (ECF No. 117) filed by Peter Protopapas in his capacity as court-appointed receiver seeking dismissal of the chapter 11 bankruptcy petition filed on behalf of Whittaker, Clark & Daniels, Inc. The Official Committee of Talc Claimants filed a joinder.  For the reasons set forth in the accompanying Opinion, and for good cause, it is hereby

ORDERED that the Motion to Dismiss (ECF No. 117) is DENIED.

**JA28**



**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**U.S. COURTHOUSE**
**402 E. STATE STREET**
**TRENTON, NEW JERSEY 08608**

**Hon. Michael B. Kaplan**                                                      **609-858-9360**
**Chief Judge, United States Bankruptcy Court**

June 20, 2023

*All Counsel of Record*

Re:   <u>In re Whittaker, Clark & Daniels, Inc., et al.</u>
      Case No.: 23-13575

Dear Counsel,

Presently before the Court is an amended Motion to Dismiss (the "Motion," ECF No. 117)

filed by Peter Protopapas in his capacity as court-appointed receiver seeking dismissal of the

chapter 11 bankruptcy petition filed on behalf of Whittaker, Clark & Daniels, Inc. ("WCD"[1]). The

Official Committee of Talc Claimants ("TCC") filed a joinder (ECF No. 132).   WCD filed

opposition (ECF No. 124) and the court-appointed receiver filed a Reply (ECF No. 156).   The

Court has reviewed the parties' submissions and fully considered the arguments made during the

hearing on June 6, 2023.  For the reasons stated herein, the Motion is denied.

---

[1] Related entities Brilliant National Services, Inc., Soco West, Inc., and L.A. Terminals, Inc., also filed for
bankruptcy. *See* Case Nos. 23-13576, 13-13578, and 23-13581. The cases are jointly administered with WCD's
bankruptcy serving as the lead case. *See Order Granting Motion for Joint Administration,* ECF No. 72 in Case No.
23-13575.  However, the pending motion to dismiss relates only to WCD's bankruptcy filing, and there are no
pending motions to dismiss with respect to the related filings.

**JA29**

## I.    <u>Jurisdiction</u>

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) & (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The Court issues the following findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052 [2]

## II.    <u>Background</u>

The relevant background is set forth in the jointly-submitted stipulated facts. *Stipulated Facts*, ECF No. 157. WCD was incorporated in New Jersey in December 1972. In 2004, WCD ceased all operations "but continued their corporate existence to manage alleged asbestos and environmental liabilities related to the historical processing and distribution of cosmetic and industrial compounds." *Id.* at ¶ 3. On March 3, 2023, a jury rendered a verdict against WCD exceeding $29 million in an action in South Carolina involving Sarah J. Plant (the "Plant Action"), over which Justice Toal of the South Carolina Court of Common Pleas (the "South Carolina Court") presided. *Id.* at ¶ 7. On March 10, 2023, the South Carolina Court granted the Plant Action plaintiffs' request for the appointment of a receiver over WCD (the "Receivership Order"). *Receivership Order – Ex. 3 to Stipulated Facts*, ECF No. 157. WCD sought reconsideration (the "Reconsideration Motion") and, at the conclusion of oral argument on April 18, 2023, Justice Toal denied the motion in a bench ruling. *See Tr. of Apr. 18, 2023 Hrg. – Ex. 8 to Stipulated Facts*, ECF

---

[2] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

No. 157.  The parties were directed submit forms of order memorializing her ruling.  However, the

WCD board of directors (the "Board") filed voluntary bankruptcy for WCD in this Court prior to

the entry of an order on the Reconsideration Motion in the South Carolina Court.  The instant

Motion followed.

In his Motion, Mr. Protopapas, who is the receiver (the "Receiver") appointed by the South

Carolina Court, seeks dismissal of WCD's chapter 11 bankruptcy case.  The crux of the Receiver's

argument is that the Board lacked authority to approve a WCD bankruptcy filing and that only

he—as receiver—has such power.  WCD raises several arguments in opposition.  The Court

addresses each, in turn.  In doing so, the Court does not intend to examine the merits of the South

Carolina Court's ruling with respect to the appointment of the Receiver.  Likewise, the Court is

not revisiting whether the South Carolina Court had jurisdiction to enter the Receivership Order.

Nor, obviously, is the Court looking behind the Receivership Order into the Receiver's motives,

experience, or qualifications.   Rather, this Court addresses the South Carolina Court's

expectations, albeit erroneous and shared by plaintiffs' counsel, that placing the Debtor's assets

under the courts' control through the appointment of a receiver implicitly precludes the Debtor's

bankruptcy filing, undertaken in a manner consistent with applicable state law and the Debtor's

organizational documents.  It is the province of this Court to question whether such expectations,

standing alone, suffice to achieve such a result.  Simply put, the Bankruptcy Code—specifically

11 U.S.C. § 543—answers the question in the negative.  For the reasons set forth below, the

Receiver's Motion to Dismiss and the TCC's Joinder are denied.

### A. The Receiver's Standing

WCD first challenges the Receiver's standing to file the Motion.  The Court rejects this

argument.  As counsel for the Receiver points out, this Court may *sua sponte* raise the issue of

dismissal where cause appears to exist and—relying on this Court's decision in *3P Hightstown*—the Receiver argues this Court *must* dismiss an improperly-filed case. *See Receiver's Reply* 3-4, ECF No. 156 (citing *In re 3P Hightstown, LLC*, 631 B.R. 205, 209 (Bankr. D.N.J. 2021) (collecting cases explaining that a bankruptcy court can *sua sponte* dismiss a bankruptcy petition for cause under § 1112(b) and is required to dismiss a case without relying on § 1112(b) if the petition was filed without the prerequisite authority) (citations omitted)).  In response to this argument, WCD's Counsel contends that—even if this Court finds cause for dismissal—it is not compelled to dismiss the case and, instead, has discretion to *refuse to* dismiss based on the best interests of the creditors. WCD argues that *3P Hightstown* improperly relies on a Supreme Court case, *Price*, that pre-dates § 1112(b). *See Price v. Gurney*, 324 U.S. 100, 104, 65 S. Ct. 513, 515, 89 L. Ed. 776 (1945). Counsel for the Receiver counters that, because the case was improperly filed, this Court need not look to § 1112(b). *Tr. of June 6, 2023 Hrg.* 14:25-15:2 ("You don't even have to reference Section 1112. You don't even get to Section 1112. The case must be dismissed if there is no authority, which is what we argue here.").  Indeed, there is case law that cuts both ways. *Compare In re ComScape Telecommunications, Inc.*, 423 B.R. 816, 829–30 (Bankr. S.D. Ohio 2010) (collecting cases holding that § 1112(b) provided grounds for dismissal of case filed by individual who lacked authority to file the petition on behalf of the debtor company) *with In re Mid-S. Bus. Assocs., LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016) (citing *Price v. Gurney*, 324 U.S. 100 for the proposition that "a bankruptcy petition filed without proper corporate authority must be dismissed *independent of any finding of 'cause' under § 1112(b)*, because if the Debtor did not have sufficient corporate authority for the filing of its petition, then this Court lacks subject matter jurisdiction over the case") (emphasis added).  Because—for reasons discussed below—this Court concludes that WCD's bankruptcy was filed by entities with proper authority, it likewise concludes that there

exists no cause for dismissal, and this Court need not engage in an academic exercise as to whether dismissal of an improperly-filed case would be discretionary under § 1112(b) or mandatory independent of § 1112(b).

### B.  The *Rooker-Feldman* Doctrine

This doctrine—whose name is derived from two Supreme Court cases—precludes lower federal courts from exercising appellate jurisdiction over final state court judgments.[3]   The Receiver asserts that *Rooker-Feldman* mandates dismissal of WCD's bankruptcy filing because a finding that WCD had authority to file would amount to re-litigation of issues already decided by the South Carolina Court.  WCD contends that, because the Receivership Order in the instant case was an interlocutory order, the *Rooker-Feldman* doctrine is inapplicable and the Receivership Order is not entitled to full faith and credit. *See WCD's Obj.* 18, ECF No. 124 (citing S.C. CODE ANN. § 14-3-330).  The Court need not address the applicability of this doctrine because—even assuming it applies—the Court's present ruling is not violative.  The Supreme Court has clarified that the *Rooker-Feldman* doctrine applies in only those narrow circumstances where state court losers ask a federal court to review and reject the state court's judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005); *Vuyanich v. Smithton Borough*, 5 F.4th 379, 387 (3d Cir. 2021).  Here, however, this Court is not reviewing or rejecting the underlying judgment or otherwise issuing a ruling that is inconsistent with the South Carolina Court's judgment.  A more detailed discussion on this issue follows.

---

[3] *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923).

### C. __Authority to File for Bankruptcy__

At the heart of this dispute is who—the Board or the Receiver—held authority to commence the WCD bankruptcy filing.  The parties agree that, prior to the appointment of the Receiver, the Board could have authorized the filing of a voluntary bankruptcy petition for WCD.  However, the Receiver contends that, after the entry of the Receivership Order, he possessed the sole and exclusive authority to commence a filing.  Based on a review of the Receivership Order, case law, applicable South Carolina statutes, and federal bankruptcy statutes, this Court cannot agree.  Indeed, as the Receiver argues, an order appointing a receiver *can* remove a board of directors' authority to file bankruptcy.  The Receivership Order in the instant case, however, did no such thing.

The Receiver relies on language of the Receivership Order, which he describes as "broad."  Admittedly, the Receivership Order affords the Receiver a host of powers and duties.  However, it makes no mention of dissolution of the Board or of the authority to file for bankruptcy.  While the Receiver emphasizes language in the Receivership Order that grants him "the power and authority [to] fully administer *all* assets of WCD," the Court notes that the Receiver omits the qualifying language immediately preceding the highlighted portion. *Receivership Order* 5, ECF No. 157 (emphasis added).  Read in full, the Order states that Mr. Protopapas "is appointed Receiver in this case *pursuant to the South Carolina Law* with the power and authority [to] fully administer all assets of WCD." *Id.* (emphasis added).  The Receivership Order later acknowledges that "the powers of a receiver are as broad as the law permits," *id.*, before continuing to identify specific powers and duties afforded to the Receiver in the instant case—none of which include the exclusive power to file for bankruptcy or to deprive the Board of that right.

The motion resulting in the Receivership Order sought the appointment of receiver under S.C. CODE ANN. § 15-65-10.  That statute is a civil remedy and contemplates the appointment of a receiver where—as is relevant here—a corporation "is insolvent or in imminent danger of insolvency." § 15-65-10(4); *see also Receivership Order* 5, ECF No. 157 (finding that "the application is meritorious under the applicable statute because WCD appears to actually be insolvent and it is certainly in imminent danger of insolvency").  Unfortunately, there appears to be a dearth of case law addressing the powers of a receiver appointed under § 15-65-10. *See, e.g.*, *Zurich Am. Ins. Co. v. Covil Corp.*, No. 1:18-CV-932, 2019 WL 3205676, at *3 n.6 (M.D.N.C. July 16, 2019) (stating that § 15-65-10 "addresses when a receiver may be appointed but not the scope of their powers").  And the few cases this Court has been able to locate are not from this century.  However, the dated case law clearly establishes that—because a receiver's authority is derived solely from the court, and because a receiver is subject only to the court's direction—a receiver has no power other than that given him or her by the order of appointment. *See e.g.*, *Kirven v. Lawrence* (S.C. 1964) 244 S.C. 572, 137 S.E.2d 764; *In re Fifty-Four First Mortg Bonds*, 15 SC 304 (1881) (holding that a receiver is an executive officer of the court, administering the assets of the estate under the direction of the court, and his authority resting only in the orders by which he is appointed).  Thus, this Court is constrained to look to the Receivership Order when interpreting the power afforded the Receiver in this case.

The Receiver urges this Court to look beyond the Receivership Order to Justice Toal's oral ruling on the subsequent Motion for Reconsideration.  Specifically, the Receiver points to the following exchange between Mr. Branham (plaintiffs' counsel) and Justice Toal:

> MR. BRANHAM: Okay. The last thing I want to say is, I am concerned enough about their insolvency to just note this for the record.  You have entered a receivership. I don't know what you're going to do here. But assuming that you

maintain the receivership, the property of Whittaker Clark & Daniels, as any custody alleges, it's in the property of the Court.  Once that receivership order, it's in the property of the Court.  And so to the extent there is a consideration of a bankruptcy filing, which I have some concerns about, I just want it in the record for any bankruptcy judge that's looking at this issue that at the present time a receivership is in place.

And as the Court well knows, **once that receivership order is in place, they no longer hold the property, the receiver holds the property. The receiver is proper party to the bankruptcy. They don't have the authority to enter a bankruptcy**. They don't control it.

Now, if Your Honor vacates it and all that kind of thing, that changes things. But as we stand here right this second, they do not have the authority to enter into a voluntary bankruptcy.

THE COURT:  I'm well aware, that was the main factor in my signing the order so quickly is that I wanted to be sure that something other than kind of amorphous organization I wasn't quite sure about in terms of asset picture, control or anything else would not simply declare bankruptcy and that entity would still be controlling things. **I wanted a receiver that I knew would take it seriously, to look at the asset picture and see what was going on.**

And that is what we've set up under the South Carolina receivership, this receivership as we have for many, many others. I get that.

*Tr. of Apr. 18, 2023 Hrg. – Exhibit 8 to Stipulated Facts* 166:14 – 168:3, ECF No. 63-4 (emphasis

added).   Clearly, counsel was under the impression that with the Court's appointment of the

Receiver having control over the assets, only the Receiver could put WCD into bankruptcy.

Admittedly, Justice Toal's response suggests that she too shared this belief.   To the extent that

Justice Toal's comment that the entity whose assets were under the Receiver's control "*would* not

simply declare bankruptcy" can be interpreted as her understanding that the Board *could* not

declare bankruptcy—meaning, that they lacked the authority to declare bankruptcy—this

understanding is misguided.   As previously discussed, a receiver's powers are derived from the

order appointing him or her.   In this case, the Receivership Order makes no mention of bankruptcy

or of the dissolution of the Board. Nor does South Carolina law expressly vest a receiver with such

exclusive authority or automatically displace the existing management. It is well-settled that applicable state law determines whether a bankruptcy filing was authorized. *See Price,* 324 U.S. at 106, 65 S. Ct. 513 (holding that those "who purport to act on behalf of the corporation" must have "been granted authority by local law to institute the proceedings"); *In re Sino Clean Energy, Inc.*, 901 F.3d 1139, 1142 (9th Cir. 2018) ("[S]tate law dictates which persons may file a bankruptcy petition on behalf of a debtor corporation."); *In re ComScape Telecommunications, Inc.*, 423 B.R. at 829–32 (collecting cases and stating that "bankruptcy courts generally look to state law to determine who is authorized to file a voluntary petition for a corporation, partnership or other kind of organizational entity"). Pursuant to applicable state law in this case—New Jersey state law—the Board was authorized to file for bankruptcy.

The Court recognizes that, during oral argument on this Motion, Mr. Branham emphasized repeatedly his belief that that Receivership Order did, in fact, provide the Receiver with exclusive authority to file for bankruptcy. Indeed, in response to the Debtor's argument that Justice Toal had not divested the Board of power to file for bankruptcy in her ruling on the Reconsideration Motion, Mr. Branham agreed. Specifically, he explained "[s]he said, I already gave it to you in the first order. I don't need to give it to you again." *Tr. of June 6, 2023 Hrg.* 63:25-64:1, ECF No. 191. When this Court inquired what language of the Receivership Order gave this relief, counsel responded, "The entirety of the order." *Id.* at 64:7. Mr. Branham further stressed that this Court should focus on what Justice Toal *meant* when she issued the Receivership Order. However, as stated previously, this Court is constrained to interpret the Receiver's powers based on the Receivership Order itself.

This Court will not, and cannot, give force to any subjective belief that the Receivership Order achieved something beyond the powers outlined therein—especially when that expansive

**JA37**

interpretation would contravene case law and the Bankruptcy Code; specifically, 11 U.S.C. § 543, which compels the turnover of property of the estate held by a receiver. *See also* 11 U.S.C. § 101(11)(C) (defining a receiver as a custodian "that is appointed or authorized to take charge of property of the debtor . . . for the benefit of the debtor's creditors"); *Sovereign Bank v. Schwab*, 414 F.3d 450, 454 (3d Cir. 2005). Thus, this Court cannot give weight to the Receiver's argument, which is based on Mr. Branham's mistaken understanding of the Receivership Order's effect. Likewise, to the extent the South Carolina Court shared Mr. Branham's understanding, this Court cannot alter the Receivership Order's language or ultimate legal impact to afford it that subjective, desired effect. Indeed, it remains open to pure speculation as to whether Justice Toal would have taken the next extraordinary step of displacing the board of directors of a foreign corporation as part of a provisional remedy, as a means to prevent a bankruptcy filing. To the extent she were so inclined, this Court would expect an explicit direction in that regard in her Receivership Order. In this same vein, it is worth noting that the Receivership Order was very specific and explicitly identified many powers. Given the detail and length of the Receivership Order, it is a notable omission that it fails to specifically reference the displacement of the Board or the Receiver's exclusive authority to file for bankruptcy.

The Court finds further support for its conclusion in another exchange with counsel during oral argument. The Court queried whether the Receiver could leave the Board in place to operate and manage the company if he so chose. When Mr. Branham responded in the affirmative, the Court asked whether, as a corollary, that meant the Board stayed in place until such time as the Receiver took a formal step to dissolve or remove them. Mr. Branham responded:

> No, because [Justice Toal] indicated, she was clear on the record, that the intent of that order, what that order actually did was preclude the authority to run that company and hand it to Mr. Protopapas. That's what she did in that order. He didn't

have to do anything more affirmatively to say, you don't have authority. She had
already said it.

*Tr. of June 6, 2023 Hrg.*, 65:8-13. As an initial matter, the response does not answer the "bigger

picture" question raised by the Court about the general procedure and mechanics of a receivership.

In any event, this Court again disagrees with Mr. Branham's interpretation.  As Mr. Branham

concedes, the Receivership Order precludes the Board from running certain aspects of the

company and gives those controls to the Receiver.  The Receivership Order is clear as to those

aspects.  However, this Court disagrees with the notion that an order appointing a receiver does

not have to affirmatively reference the authority granted to a receiver and/or taken away from a

board of directors.  The case law belies this position. *See e.g.*, *Kirven v. Lawrence* 244 S.C. 572

(stating that a receiver has no power other than that given him or her by the order of appointment);

*In re Fifty-Four First Mortg Bonds*, 15 SC 304 (same).  Therefore, as to affirmative removal of

the Board's authority to file for bankruptcy, contrary to Mr. Branham's statement, Justice Toal had

not "already said it." *Tr. of June 6, 2023 Hrg.* 65:12-13.  The Receivership Order was silent as to

this power.

        This Court takes seriously counsel's allegation that this Court is improperly sitting in

review of Justice Toal's order. *See, e.g. Tr. of June 6, 2023 Hrg.* 66:14-21.  That is precisely what

this Court is avoiding.  This Court is not examining the merits of the South Carolina Court's ruling;

nor is it challenging Justice Toal's authority or jurisdiction to enter the Receivership Order, or her

rationale in doing so.  Instead, the Court undertakes only to assess the Receivership Order's impact,

if any, on the Board's ability to file bankruptcy in this jurisdiction.  That analysis requires this

Court to focus on the powers afforded the Received by text of the Receivership Order and by the

South Carolina Court's affirmative rulings.  Ultimately, Justice Toal's comments—explaining that

her concern over potential bankruptcy filing was a factor in her decision to appoint a receiver—remain precisely that: comments.  The transcript excerpt highlighted by the Receiver does not constitute a ruling.  Rather, Justice Toal's oral ruling was limited to denying the motion seeking reconsideration and dissolution of the receivership. *Tr. of Apr. 18, 2023 Hrg.* at 174:25—175:3 ("So what I'm going to do is this: I'm going to deny the motion to reconsider and to dissolve the receivership. And I do that on the record now.").

Other portions of the transcript on the Reconsideration Motion reflect that Justice Toal knew there remained open questions regarding the scope of the Receiver's powers and that she anticipated litigation on the issue. *Tr. of Apr. 18, 2023 Hrg.* 175:12-14 ("If there gets to be some litigation about how in charge the receiver is, that will just have to be as it is.  I think I've done what I could to protect the potential of these assets.").  This Court will not read further into *any* colloquy undertaken in the context of the Reconsideration Motion.  Instead, applicable case law dictates that this Court look to the Receivership Order to determine the scope of the Receiver's powers.  Again, nothing in the Receivership Order grants the Receiver sole authority to file for bankruptcy or divests the Board of such authority.

This Court finds additional support for its ruling in analogous South Carolina statutes.  This Court identified South Carolina case law discussing the powers of receivers appointed under another state statute: S.C. CODE ANN. § 33-14-320.  That statute contemplates the appointment of a receiver or custodian in the course of a judicial dissolution, which—admittedly—is a different context that the appointment of a receiver as a civil remedy to protect creditor assets under § 15-65-10.  Nevertheless, the Court finds the statute and the cases interpreting it instructive.  Just as an impartial receiver may be appointed under § 15-65-10 to preserve property, *see In re Citizens' Exch. Bank of Denmark,* 140 S.C. 471, 139 S.E. 135, 143 (1927), a receiver may be appointed

under § 33-14-320 for the purpose of placing company assets in "impartial hands" so "that the proceeds may be administered according to the priorities of the claims thereto." *Shapemasters Golf Course Builders, Inc. v. Shapemasters, Inc.*, 360 S.C. 473, 479, 602 S.E.2d 83, 87 (Ct. App. 2004) (quoting *National Cash Register Co. v. Burns*, 217 S.C. 310, 316, 60 S.E.2d 615, 618 (1950)).

Further, just as the concern that property will be lost or materially injured or impaired is cause for appointment of a receiver under § 15-65-10, South Carolina courts have acknowledged similar concerns when discussing appointment of a receiver under § 33-14-320. *See Shapemasters*, 360 S.C. at 479 (explaining that "the potential harm in not having an unbiased party to protect a corporation's assets," is sufficient to render a decision not to appoint a receiver under § 33-14-320 immediately appealable). Indeed, Justice Toal recognized this concern in her rulings. Specifically, she discussed the need to "protect the potential of these assets" in her oral ruling on the Reconsideration Motion, *Tr. of Apr. 18, 2023 Hrg.* 175:15, and the need to make an "expedited ruling in this matter to preserve the status quo" in her Receivership Order under § 15-65-10. Accordingly, this Court looks to § 33-14-320 for guidance in interpreting the scope of the Receiver's duties in this case and finds further support for the conclusion that the Receivership Order here did not divest the Board of its authority to file for bankruptcy.

Section 33-14-320 addresses the appointment of both receivers and custodians. Notably, the South Carolina Appellate Court recognizes that "[r]eceivers and custodians are distinguishable." *Shapemasters Golf Course Builders, Inc. v. Shapemasters, Inc.*, 360 S.C. 473, 479, 602 S.E.2d 83, 86 (Ct. App. 2004). While a receiver "(i) may dispose of all or any part of the assets of the corporation wherever located, at a public or private sale, **if authorized by the court**; and (ii) may sue and defend in his own name as receiver of the corporation in all courts of this State," a custodian "may exercise all of the powers of the corporation, **through or in place of its**

**board of directors or officers, to the extent necessary to manage the affairs of the corporation**

**in the best interests of its shareholders and creditors.**" S.C. CODE ANN. § 33-14-320 (emphasis

added).  Thus, while a receiver's abilities are limited to protecting assets and aiding in effectuating

judgments under § 15-65-10 or "wind[ing] up and liquidat[ing] the business and affairs" under §

33-14-320, only a custodian is vested with the power to "manage the affairs of the corporation,"

*see Shapemasters*, 360 S.C. at 479.  Here, Mr. Protopapas is a receiver.  His duties are limited to

those that can be inferred from the statute or those set forth in the Receivership Order.  He is not a

custodian acting in place of the Board and, absent a court order affording him such status, he is

not the entity authorized to file for bankruptcy.[4]

Finally, the Court finds additional support in case law cited by the parties.  First, in a

decision out of the Western District of Pennsylvania, *In re Monroe*, the bankruptcy court

considered which entity—a shareholder or court-appointed receiver—had the authority to file for

bankruptcy. *In re Monroe Heights Dev. Corp., Inc.*, No. 2017 WL 3701857 (Bankr. W.D. Pa. Aug.

22, 2017), dismissed, 573 B.R. 613 (Bankr. W.D. Pa. 2017).  In making its decision, the *Monroe*

court discussed two other relevant cases—each of which involved a debtor who filed bankruptcy

after the appointment of a receiver under state law: *In re Corp. & Leisure Event Prods., Inc.*

("*Leisure*"), 351 B.R. 724 (Bankr. D. Ariz. 2006), and *Sino Clean Energy Inc. by & through*

*Baowen Ren v. Seiden*, 565 B.R. 677, 682 (D. Nev. 2017), *aff'd sub nom. In re Sino Clean Energy,*

*Inc.* ("*Sino*"), 901 F.3d 1139 (9th Cir. 2018).  The courts in *Leisure* and *Sino* reached essentially

opposite results.  The *Leisure* court held that federal bankruptcy law preempted state law and, thus,

---

[4] Mr. Branham asserted during oral argument that the Receiver in the instant case was not winding up the company's
affairs, as would a receiver appointed under § 33-14-320, but was "marshaling and controlling the company to
marshal the assets for the benefit of the creditors [under § 15-65-10]." *Tr. of June 6, 2023 Hrg.* 62:12-14, ECF No.
191.  The Court acknowledges that the respective purposes of the two statutes are different.  Nevertheless, the
distinction drawn between the powers of a receiver and custodian in § 33-14-320 remains instructive and persuasive.

the corporate debtor and its officers and directors properly filed for bankruptcy.  The *Sino* court, on the other hand, found that the former board members, who had been replaced by the receiver months prior, were without authority to file for bankruptcy.  Like the court in *Monroe*, this Court does not view *Leisure* and *Sino* as irreconcilable.  Both courts applied the same concepts and analysis—just to highly dissimilar facts.

In *Leisure*, the receiver was appointed at the request of a creditor and the bankruptcy was filed shortly after the receiver's appointment.  In *Sino*, the receiver was appointed because of a dispute between shareholders and the board of directors, and the bankruptcy was filed by the former board nearly a year after the receiver's appointment, and more than seven months after the receiver had dismissed and replaced the board.  The facts of the instant case more closely resemble those in *Leisure* and *Monroe*; specifically, this case also involves the appointment of a receiver at the request of a creditor and a bankruptcy filing shortly thereafter.  And—as the *Monroe* court points out—*Leisure's* holding recognized "that an exception to the general rule of deferral to state law to determine who is authorized to file a voluntary petition for a corporation is necessary in cases involving a creditor-driven intracorporate dispute in order to vindicate federal bankruptcy law supremacy." *In re Monroe*, 2017 WL 3701857, at *14; *see also id.* at *16.  This Court agrees.[5]

Like the courts in *Leisure, Sino,* and *Monroe*, this Court declines to establish a bright line rule for when this exception should apply.  Instead, the applicable statutes and case law suggest that the decision is discretionary. *See, e.g.*, 11 U.S.C. § 543(d)(1) (affording bankruptcy courts

---

[5] In affirming the bankruptcy court's ruling in *Sino*, the Ninth Circuit likewise recognized the limited holding in *Leisure*, describing it to mean that "where a state court purports to enjoin a corporation from filing bankruptcy altogether, federal law preempts that injunction." *In re Sino Clean Energy, Inc.*, 901 F.3d 1139, 1142 (9th Cir. 2018).  Because the company in *Sino* was "fully able to file for bankruptcy through valid filings made by its eligible board of directors," the holding in *Leisure* was "inapposite." *Id.*  This lends further support to the conclusion that the rulings in *Leisure* and *Sino* are not wholly irreconcilable.

Page **15** of **18**

**JA43**

discretionary powers to compel or not compel a receiver to turn over property to the estate); 11

U.S.C. § 305(a)(1) (affording bankruptcy courts discretionary powers to abstain or suspend

proceedings if the interests of creditors and the debtor would be better served). The *Sino* court

likewise observed that exceptions may apply in certain circumstances. *See Sino*, 565 B.R. at 682

n.26 ("Perhaps this case would be different if appellants could show that a receiver was biased or

significantly delayed in appointing a new board, thus interfering with the corporations' ability to

get into bankruptcy court in a timely matter.").

The case law demonstrates that the outcome of this discretionary decision depends in large

part on the point from which the court starts. The *Monroe* and *Sino* courts began with the

presumption that the appointment of the receiver vested the authority to file bankruptcy exclusively

in the receiver's hands, and a debtor could rebut that presumption. The *Leisure* court, however,

"started with the view that those formerly in control of a corporation should still be able to file a

bankruptcy for it . . . leaving it up to the receiver to show why under the particular facts of the case

that view was wrong and the case should not proceed." *In re Monroe*, 2017 WL 3701857, at *17

(discussing *Leisure*). For reasons previously discussed, this Court finds that the Board in the

present case possessed the authority to file for bankruptcy under state law; therefore, an inquiry

into whether an exception to the general rule applies is unnecessary. However, were this Court to

undertake such an analysis, this Court's reasoning aligns more closely with that in *Leisure* and it

would be inclined to start with the presumption outlined therein. Nevertheless, even starting with

the converse presumption set forth in *Monroe* and *Sino*—and assuming that the Receiver in the

instant case possessed the exclusive authority to file bankruptcy under state law by virtue of

his appointment—given the facts of the instant case, the Court finds that access to the bankruptcy

system is of paramount importance and, thus, this case presents a worthy exception to the general

rule that state law dictates who may file bankruptcy on behalf of a corporate debtor.  In so finding,
the Court considers the unique qualities of asbestos-related bankruptcies, Congressional intent in
structuring a scheme under 11 U.S.C. § 524(g) to address such claims and the considerable interests
of future, unidentified claimants.

### III.   <u>Conclusion</u>

Ultimately, this Court cannot conclude that the Receivership Order displaced the Board
and/or divested it of its ability to file for bankruptcy under state law.  Despite the Receiver's
arguments to the contrary, he is unable to identify any South Carolina state law or language in the
Receivership Order that provides for this relief.[6]  Moreover, even assuming that appointment of
the Receiver established him as the sole entity with authority to file bankruptcy under state law,
this Court determines that the circumstances weigh in favor of preserving the constitutional right

---

[6] The cases on which the Receiver relies for the proposition that the appointment of a receiver automatically
displaces a board are factually distinguishable and, in any event, are not controlling.  In *Monroe*, the order
appointing the receiver specifically "vested [the receiver] with the standing and all power and sole authority of . . .
the board of directors or manager of the Defendant[.]" *Order Appointing Receiver* ¶ 22, ECF No. 9-2 in Case No.
17-10176 (W.D. Pa. Bankr. Ct.).  No such language appears in the Receivership Order in the instant case.  In *Sino*,
the board of directors had been dismissed by the receiver more than seven months before they filed for bankruptcy.
Thus, "the individuals who filed the bankruptcy petition were not members of the board of directors of [the
company] at the time they filed the petition, and they were not authorized to file a bankruptcy petition on behalf of
[the company]." *In re Sino Clean Energy, Inc.*, 901 F.3d 1139, 1141 (9th Cir. 2018).  Here, however, the Receiver
had not dismissed the Board.  Likewise, in *Oil & Gas Co. v. Duryee*, 9 F.3d 771, 772 (9th Cir. 1993), the state court
issued a temporary restraining order that specifically enjoined the company's former president from filing for
bankruptcy on its behalf, but he filed anyway.  Here, the South Carolina Court issued no such injunction.  The
receiver cites to *Monmouth Inv. Co. v. Means*, 151 F. 159, 166 (8th Cir. 1906) in support of his argument that a
receiver displaces a board.  However, the quoted language has been paraphrased to afford it a meaning beyond its
initial intent and, in any event, it is dicta.  Finally, the Receiver's reliance on South Carolina case law characterizing
the appointment of a receiver as a "practical displacement of the boards of directors," *Brookshire v. Farmers' All.
Exch.*, 73 S.C. 131, 52 S.E. 867, 867 (1905), and indicating that a receiver "stands in the shoes of the debtor,"
*Carroll v. Cash Mills*, 125 S.C. 332, 118 S.E. 290, 297 (1923), is unavailing. As an initial matter, the cases cited
predate the Bankruptcy Code.  Regardless, there is no dispute that, upon appointment, a receiver takes on many of
the rights, responsibilities, and duties of a board of directors.  That fact, and the case law cited in the Receiver's
briefs, do nothing to support the Receiver's contention that the exclusive right to file for bankruptcy is automatically
included among those rights.

to bankruptcy and, thus, warrant an exception to the general rule that state law determines who has

authority to file bankruptcy for a corporation.  For the reasons set forth above, the Court denies

the Receiver's Motion to Dismiss and the TCC's Joinder.  The Court will enter an Order consistent

with this Opinion.

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Cc:     Filed on CM/ECF

**JA46**