# United States Court of Appeals
# for the Third Circuit

IN RE:

WHITTAKER, CLARK & DANIELS, INC.,

*Debtor-Appellee*,

PETER PROTOPAPAS; OFFICIAL COMMITTEE OF TALC CLAIMANTS,

*Appellants*,

v.

WHITTAKER, CLARK & DANIELS, INC.,

*Appellee,*

On Appeal from the United States District Court for the District of New Jersey
Civil Action No. No. 23-4151 (Quraishi, J.)

## APPELLANTS' CONSOLIDATED REPLY BRIEF

BRYAN KILLIAN
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004
bryan.killian@morganlewis.com

ANDREW J. GALLO
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110

*Counsel for Appellant Peter Protopapas*

MATTHEW KUTCHER
COOLEY LLP
110 North Wacker Drive, Suite 4200
Chicago, IL 60606
mkutcher@cooley.com

CULLEN D. SPECKHART
PATRICK J. HAYDEN
EVAN M. LAZEROWITZ
JEREMIAH P. LEDWIDGE
COOLEY LLP
55 Hudson Yards
New York, NY 10001

BENJAMIN B. SWEENEY
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401

*Counsel for Appellant the Official Committee
of Talc Claimants*

*(Additional Counsel Listed in Signature Block)*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................1

ARGUMENT ......................................................................................................3

I.    WCD's Purported Board of Directors Lacked Authority to Petition for
      Bankruptcy on WCD's Behalf.........................................................................3

      A.    The Receivership Order Divested WCD's Board of the Authority to
            File for Bankruptcy ...............................................................................3

            1.    The Text of the Receivership Order Gives the Receiver
                  Exclusive Authority to File for Bankruptcy ..............................3
            2.    The Bankruptcy Court's Order Conflicts with the South
                  Carolina Court's Interpretation of the Receivership Order ........9

      B.    South Carolina Law Allowed the South Carolina Court to Give the
            Receiver the Power to File Bankruptcy ..............................................13

      C.    New Jersey Law Does Not Override the Clear Terms and Effect of the
            Receivership Order ..............................................................................19

II.   The Bankruptcy Court's Review of WCD's Challenge to the Receivership
      Order Violated the *Rooker-Feldman* Doctrine..............................................22

III.  The Bankruptcy Court's Alternative Public Policy Holding Is Meritless.....25

IV.   To the Extent the Scope of the Receivership Order Is Unclear or
      Nonjusticiable, the Automatic Stay Should Be Lifted Pending Review in
      State Court ...........................................................................................................26

CONCLUSION.....................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Altman*,
2018 WL 3133164 (B.A.P. 9th Cir. June 26, 2018) ............................................21

*In re Am. Slicing Mach. Co.*,
118 S.E. 303 (S.C. 1923) ............................................................................................16

*In re Arista Imaging of N. Mia., LLC*,
2020 WL 609613 (Bankr. S.D. Fla. Feb. 7, 2020) ..........................................8

*Blakely v. Wards*,
738 F.3d 607 (4th Cir. 2013) ..................................................................................10

*Brookshire v. Farmers' All. Exch.*,
52 S.E. 867 (S.C. 1905) .......................................................................................9, 15

*Cape plc v. Anglo Am. plc*,
2024 WL 4647873 (D.S.C. Aug. 13, 2024) ...............................................15, 23

*City of Chicago v. Fulton*,
592 U.S. 154 (2021) ......................................................................................................5

*Clark v. Painted Post Lumber Co.*,
89 N.J. Eq. 409 (Ch. 1918) ....................................................................................20

*Doe v. Bishop of Charleston*,
754 S.E.2d 494 (S.C. 2014) ...................................................................................10

*Eddins v. Eddins*,
403 S.E.2d 164 (S.C. Ct. App. 1991) ...............................................................10

*In re Fifty-Four First Mortg. Bonds*,
15 S.C. 304 (1881) .......................................................................................................15

*In re Gen-Air Plumbing & Remodeling, Inc.*,
208 B.R. 426 (Bankr. N.D. Ill. 1997) ....................................................7, 8, 23

*Gertz v. Robert Welch, Inc.*,
680 F.2d 527 (7th Cir. 1982) .................................................................................10

**Page(s)**

*H & H Beverage Distribs. v. Dep't of Revenue*,
850 F.2d 165 (3d Cir. 1988) ...................................................................26

*Hurd v. City of Elizabeth*,
41 N.J.L. 1 (Sup. Ct. 1879) ...................................................................20

*IMO Indus., Inc. v. Kiekart AG*,
155 F.3d 254 (3d Cir. 1998) ...................................................................16

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ...................................................................16

*Kars 4 Kids Inc. v. Am. Can!*,
98 F.4th 436 (3d Cir. 2024) ...................................................................16

*In re LTL Mgmt.*,
64 F.4th 84 (3d Cir. 2023) ...................................................................25, 26

*McCray v. Fid. Nat'l Title Ins. Co.*,
682 F.3d 229 (3d Cir. 2012) ...................................................................21

*Minch Fam. LLLP v. Buffalo-Red River Watershed Dist.*,
628 F.3d 960 (8th Cir. 2010) ...................................................................4

*New Castle Cnty. v. Hartford Accident & Indem. Co.*,
933 F.2d 1162 (3d Cir. 1991) ...................................................................10, 11

*NLRB v. SW Gen., Inc.*,
580 U.S. 288 (2017)...................................................................7

*Okatie Hotel Grp., LLC v. Amerisure Ins. Co.*,
2006 WL 91577 (D.S.C. Jan. 13, 2006) ...................................................................18

*Pollock v. Carolina Interstate Bldg. & Loan Ass'n*,
25 S.E. 977 (S.C. 1896) ...................................................................17

*Sangamo Weston, Inc. v. Nat'l Sur. Corp.*,
414 S.E.2d 127 (S.C. 1992) ...................................................................18

**Page(s)**

*Shaffer v. Heitner*,
433 U.S. 186 (1977)............................................................................................17

*Stone v. N.J. & H. R. Ry. & Ferry Co.*,
75 N.J.L. 172 (Sup. Ct. 1907)...........................................................................20

*Tibbs v. 3M Co.*,
No. 2023-001461 (S.C. 2023)............................................................................27

*Welch v. 3M Co.*,
2023 WL 10365075 (S.C. Ct. Com. Pl. June 21, 2023) ....................................15

*Welch v. Atlas Turner, Inc.*,
No. 2023-001096 (S.C. 2023)............................................................................27

*In re Whittaker, Clark & Daniels, Inc.*,
2023 WL 4111338 (Bankr. D.N.J. June 20, 2023)............................................17

*Williams v. Wynder*,
232 F. App'x 177 (3d Cir. 2007) ........................................................................24

*Ysleta Del Sur Pueblo v. Texas*,
596 U.S. 685 (2022)..............................................................................................6

**Statutes**

11 U.S.C. § 541 ........................................................................................................5

S.C. Code
§ 15-65-10...............................................................................................14, 15, 16
§ 33-14-320.......................................................................................................13

**Other Authorities**

*Administer*, Black's Law Dictionary (12th ed. 2024)...............................................5

*Asset*, Black's Law Dictionary (12th ed. 2024).......................................................5

*Assets*, Merriam-Webster.com Dictionary, https://www.merriam-
webster.com/dictionary/asset..............................................................................5

**Page(s)**

*Fully*, Merriam-Webster.com Dictionary, https://www. merriam-webster.com/dictionary/full ................................................................4

# INTRODUCTION

WCD provides little defense of the Bankruptcy Court's refusal to dismiss its unauthorized bankruptcy petition. Its brief retreats from the text of the Receivership Order, the South Carolina Court's on-the-record construction of the order, and even the Bankruptcy Court's own reasoning. WCD thus confirms that it had no power to petition for bankruptcy without the consent of the Receiver, and that this proceeding is no more than a challenge to the South Carolina Court's appointment of a state-court receiver.

The plain text of the Receivership Order grants the Receiver the power to "fully administer all assets of WCD" and to "take any and all steps necessary to protect the interests of WCD." WCD is simply unable to square this text with its view that actors other than the Receiver could nonetheless petition for bankruptcy. Instead, WCD offers half-hearted arguments that this text does not mean what it says—even suggesting that "administer[ing] all assets," which only the Receiver can do, is somehow *not* a part of bankruptcy. That position is not defensible, and WCD nowhere explains how a receiver with express authority over "all assets" could share power with others who could—without even telling the Receiver—put WCD (and its assets) into bankruptcy.

Nor does WCD dispute that the South Carolina Court's on-the-record construction of the Receivership Order confirmed that the Receiver would have

1

exclusive authority to make any decisions regarding bankruptcy. As Justice Toal put it, the order would ensure that no "amorphous organization" purporting to act on WCD's behalf would "simply declare bankruptcy"—precisely what happened days later. JA423. WCD cannot reconcile this construction with its view of the Receivership Order, so it asks this Court to ignore what Justice Toal explained—downplaying these statements as stray remarks worthy of no consideration. That is wrong as a matter of law and fact: a court's construction of its own prior order is entitled to deference, and here, the record is clear that Justice Toal's remarks were not merely musings made in passing, but rather, as counsel requested, "to provide a record for any bankruptcy judge that's looking at this issue." *Id.*

Ultimately, WCD rests its case on a view of South Carolina law that Justice Toal expressly rejected. In WCD's view, the Receiver cannot hold exclusive bankruptcy authority because South Carolina receivership law does not permit receivers to exercise authority over out-of-state assets. But that is exactly the same argument WCD advanced in state court, and it was unsuccessful—for good reasons, including because controlling South Carolina precedent holds that insurance policies that would cover "property, lives, or interests" in South Carolina are deemed to be "within" the state for purposes of the receivership statute. But whether or not one agrees with Justice Toal's assessment of South Carolina law, WCD's effort to challenge it in federal court—and the Bankruptcy Court's conclusion that Justice

2

Toal was simply "misguided," "erroneous," and "mistaken"—cannot be squared with the *Rooker-Feldman* doctrine. If WCD believes that Justice Toal was wrong about South Carolina law, the proper recourse is a state-court appeal, not these federal bankruptcy proceedings.

This Court should reverse, and WCD's bankruptcy petition should be dismissed.

## ARGUMENT

### I. WCD's Purported Board of Directors Lacked Authority to Petition for Bankruptcy on WCD's Behalf

#### A. The Receivership Order Divested WCD's Board of the Authority to File for Bankruptcy

By its terms and as the South Carolina Court made clear on the record, the Receivership Order vested the exclusive authority to file for bankruptcy in the Receiver, and the Bankruptcy Court was required to dismiss the petition. *See* Opening Br. 17-38. Attempting to defend the Bankruptcy Court's ruling, WCD advances the same arguments the South Carolina Court rightly rejected and avoids any meaningful engagement with the text, context, or purpose of the Receivership Order. *See* WCD Br. 22-52. WCD's arguments provide no basis to affirm.

##### 1. The Text of the Receivership Order Gives the Receiver Exclusive Authority to File for Bankruptcy

The Receivership Order grants the Receiver the power to "fully administer all assets of WCD" and to "take any and all steps necessary to protect the interests of

3

WCD whatever they may be." JA308; *see* Opening Br. 20-24. Filing a bankruptcy petition is plainly an action taken in service both of "administer[ing]" a corporation's assets and "protect[ing its] interests." JA308. WCD's responses lack merit. *See* WCD Br. 27-39.

*First*, WCD argues that Appellants have not adequately interpreted this text, deeming the opening brief's analysis "cursory" or "perfunctory." WCD Br. 37-38. But the text speaks for itself: as WCD appears to recognize, "fully administer all assets" represents a plenary grant of authority over WCD's property. *See* WCD Br. 36 ("[B]y giving Protopapas the ability to administer assets, the state court empowered him to manage what WCD owned."). And WCD does not dispute that this Court has used such language—protecting a corporation's "assets" and "interests"—to describe the central features of bankruptcy. Opening Br. 21-22 (collecting cases).

Any further interpretive exercise confirms what common sense dictates: the order's language provides the Receiver exclusive bankruptcy authority.[1] "Fully" means "completely." *Fully*, Merriam-Webster.com Dictionary, https://www.

---

[1] While WCD appears to question whether South Carolina law applies to the interpretation of the order, WCD Br. 26, courts consistently interpret court orders under the law of the jurisdiction in which the order was issued. *See Minch Fam. LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 967 (8th Cir. 2010) (applying Minnesota law to interpretation of Minnesota state court order). WCD itself does the same here. WCD Br. 28-29.

merriam-webster.com/dictionary/fully. "Administer" means "[t]o manage (work or money) for a business or organization"—here, for WCD. *Administer*, Black's Law Dictionary (12th ed. 2024). And "assets" means, as relevant here, "*[a]ll* the property of a person (*esp. a bankrupt* or deceased person) available for paying debts or for distribution." *Asset*, Black's Law Dictionary (12th ed. 2024) (emphasis added); *see also Assets*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/asset ("[T]he entire property of a person, association, corporation, or *estate* applicable or subject to the payment of debts." (emphasis added)). Taken together, the Receivership Order granted the Receiver the power to completely manage all of WCD's property.

*Second*, WCD attempts to raise a barrier between "assets" and "corporate affairs," with the Receiver confined to the former and excluded from the latter—including, supposedly, bankruptcy authority. WCD Br. 35-36. That is baseless. Section 541 of Title 11 is entitled "*Property* of the estate" and catalogues which assets are part of the bankruptcy estate—most expansively, "all legal or equitable *interests* of the debtor in *property* as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added). And "the filing of a bankruptcy petition operates as a stay of any act to exercise control over the property of the estate." *City of Chicago v. Fulton*, 592 U.S. 154, 158 (2021) (quotation marks omitted). Thus, it would be inherently inconsistent with the Receiver's authority over WCD's "assets" and

WCD's "interests" for another actor to have authority to wrest control over those assets through a bankruptcy petition. Indeed, the Receivership Order's express grant of authority to the Receiver to "fully administer all assets of WCD" would be a nullity if someone else could put the corporation into bankruptcy. JA308; *see Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698-99 (2022) (courts must interpret language "so that effect is given to all provisions, so that no part will be inoperative or superfluous, void or insignificant" (quotation marks omitted)). The South Carolina Court granted the Receiver this express authority for a reason, but WCD's interpretation would render it a dead letter.

WCD claims that "the receivership order's grant of the power to administer assets meant Protopapas could manage WCD's property in South Carolina." WCD Br. 36. But Justice Toal rejected precisely this argument—namely, that "a receiver can only be appointed for a foreign corporation to the extent of their property within this state"—in denying WCD's motion to vacate or reconsider the Receivership Order, holding that "the law does not limit a receiver's authority in this manner." JA443. To the extent that WCD disagreed with Justice Toal as a matter of state law, its proper recourse was an appeal in state court, not an end-run around the order in federal bankruptcy proceedings. *See infra* §§ I.B, II.

***Third***, WCD argues that the Receivership Order does not encompass the power to file for bankruptcy because it does not use the term "bankruptcy," insisting

6

that "silence matters."  WCD Br. 29; *see id.* at 32-33.  In WCD's view, "the receivership order's list of enumerated powers" evinces an intent to exclude the power to petition for bankruptcy from the Receivership Order's otherwise broad delegation of authority to the Receiver.  WCD Br. 32-33.  But WCD again overplays the role of this canon of interpretation, which applies "only when circumstances support a sensible inference that the term left out must have been meant to be excluded," *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) (cleaned up).  Those circumstances do not exist here, not least because the enumerated powers are listed "[i]n addition to" the powers "set forth" elsewhere in the order—including the power to "fully administer all assets of WCD" and to "protect the interests of WCD."  JA308-09; *see* Opening Br. 22-23.  If WCD's interpretation were accepted, the South Carolina Court's use of "in addition to" would also serve no purpose—according to WCD, the Receiver enjoys the "specific" powers identified in the Receivership Order's list, but WCD does not identify any other powers that existed "in addition to" those that the Court enumerated.  *See* WCD Br. 32-33.

To be sure, WCD notes that some receivership orders in other cases have used the term "bankruptcy."  WCD Br. 30-32.  But there is no formula for precisely how to articulate a receiver's bankruptcy-related authority, and language as broad as the Receivership Order's easily suffices.  In *In re Gen-Air Plumbing & Remodeling, Inc.*, 208 B.R. 426 (Bankr. N.D. Ill. 1997), for instance, a receivership order

authorized a receiver "to represent the interests of the corporation" and "to conduct whatever he deems necessary to run this business"—apparently with no explicit reference to bankruptcy—and the court readily determined that this language prohibited a former officer and director from filing for bankruptcy, explaining that "when a receiver is appointed, the functions of the corporation's managers and officers are suspended and the receiver stands in their place." *Id.* at 429-30 (applying Illinois law); *see also In re Arista Imaging of N. Mia., LLC*, 2020 WL 609613, at *1, *9 (Bankr. S.D. Fla. Feb. 7, 2020) (similar).

Moreover, beyond its reference to the Receiver's power to "fully administer all assets," other provisions of the Receivership Order confirm that the Receiver would hold bankruptcy authority. The Receivership Order explained, for instance, that it granted the request to appoint a receiver in an expedited manner "to preserve the status quo," and it went on empower the Receiver to "take any and all steps necessary to protect the interests of WCD whatever they may be," and to investigate WCD's property. JA308-09. Permitting WCD's board to file for bankruptcy would eviscerate these provisions because, upon such filing, the "status quo" (in which WCD was not in bankruptcy proceedings) would necessarily be disturbed, and the Receiver would lose any ability to investigate WCD or exercise other enumerated powers. JA309.

***Finally***, WCD dismisses Appellants' invocation of longstanding South

Carolina precedent establishing that when courts "appoint receivers for corporations, . . . such appointment is a practical displacement of the boards of directors." *Brookshire v. Farmers' All. Exch.*, 52 S.E. 867, 867 (S.C. 1905); *see* WCD Br. 33-35; Opening Br. 23-24. WCD notes that in *Brookshire*, the court ultimately "rejected a request to appoint a receiver" over a South Carolina corporation. WCD Br. 34. But these factual distinctions do not change the underlying principle of receivership law articulated in *Brookshire*, which was not specific to whether the corporation was domestic or foreign, or any other facts of the *Brookshire* case, but rather addressed generally the impact of appointing a receiver to manage a corporation. *See also infra* § I.B.

### 2. The Bankruptcy Court's Order Conflicts with the South Carolina Court's Interpretation of the Receivership Order

Beyond its erroneous interpretation of the Receivership Order's text, the Bankruptcy Court failed to grapple with the South Carolina Court's on-the-record explanation of its effect—one that deserved deference and left no doubt that only the Receiver could make any decisions regarding bankruptcy. Opening Br. 24-32; *see* JA423-24 (167:14-168:3) (agreeing that "they do not have the authority to enter into a voluntary bankruptcy" and stating that an "amorphous organization" may not "simply declare bankruptcy"). The Bankruptcy Court appeared to recognize that this is indeed how the South Carolina Court understood the Receiver's powers, *see* Opening Br. 29 (citing JA31, JA36), and WCD makes no argument that the court

9

meant anything other than what it said. Instead, WCD largely urges this Court to ignore Justice Toal's interpretation of her own order. *See* WCD Br. 42-46. This Court should decline that invitation.

*First*, WCD ignores the "due deference and great weight" that courts must give a judge's construction of her own previously issued order. *Eddins v. Eddins*, 403 S.E.2d 164, 166 (S.C. Ct. App. 1991); *see* Opening Br. 25-26. Courts demand that deference because, when a reviewing court interprets a judicial order like the Receivership Order, "[t]he determinative factor is the intent of the court," *Doe v. Bishop of Charleston*, 754 S.E.2d 494, 498 (S.C. 2014) (citation omitted), and "the trial judge [construing her prior order] ha[s] the advantage of knowing [her] own intent," *Eddins*, 403 S.E.2d at 166.

WCD baldly disagrees with this principle but provides no basis to depart from it, and the cases it cites are far afield. WCD Br. 42-43. Indeed, most of the cases WCD cites do not involve a court's construction or interpretation of its own prior order at all. *See Blakely v. Wards*, 738 F.3d 607 (4th Cir. 2013) (en banc)[2]; *Gertz v. Robert Welch, Inc.*, 680 F.2d 527 (7th Cir. 1982). The one exception is *New Castle County v. Hartford Accident & Indemnity Co.*, 933 F.2d 1162 (3d Cir. 1991), which

---

[2] The portion of *Blakely* quoted by WCD is actually the dissent, on a proposition rejected by the majority. 738 F.3d at 628 (Motz, J., dissenting); *see id.* at 615 (majority op.).

did review a district court's determination as to the effect of an order it had previously issued, but the panel there held that the clear terms of the order confirmed its own analysis of the accompanying opinion—a conclusion that cuts against WCD in light of the clear terms of the Receivership Order here. *Id.* at 1204-05; *supra* § I.A.1.

***Second***, WCD seeks to downplay what actually occurred at the Reconsideration Hearing—claiming that "all the state court did was deny WCD's motion," and that the South Carolina Court's explanation of the Receivership Order was a "a brief discussion on a topic not formally before the court." WCD Br. 43-44. To the contrary, WCD's motion had advanced the same arguments it now presents in defense of its bankruptcy—namely, that the Receivership Order was "void" under receivership laws because, among other things, the Receiver lacked authority over WCD's out-of-state assets. JA323-26. And far from stray remarks, the South Carolina Court agreed that individuals other than the Receiver "don't have [] authority to enter into a voluntary bankruptcy" when specifically asked to provide a "record for any bankruptcy judge that's looking at this issue." JA423-24 (166:14-168:3). Justice Toal's conclusion was thus designed to aid any bankruptcy court's review, and the Bankruptcy Court's refusal to take Justice Toal at her word was error.

Moreover, an unauthorized bankruptcy was no mere "hypothetical" at the time

11

of the April 18, 2023 hearing.  WCD Br. 45.  Plant's counsel expressed "concerns" about a potential bankruptcy filing, JA423 (166:24-167:4), for good reason:  the group purporting to act on WCD's behalf had, in fact, formally retained bankruptcy counsel over one month before the hearing, JA271 (¶ 14), and had met with bankruptcy attorneys just six days before the hearing to discuss the "pending litigation" in South Carolina, JA335.  Moreover, only ten days before the hearing, on April 8, 2023, WCD's existing directors resigned, and two newly installed directors appointed a Chief Restructuring Officer.  JA271 (¶ 15); *see* Opening Br. 30-31.  And to the extent the group's bankruptcy plans were unclear at the time of the hearing, that was the result of their evasion—indeed, counsel provided the Court little information about WCD's control or assets when repeatedly pressed by the Court.  *See* JA418-20.

*Finally*, WCD claims that the South Carolina Court's construction of the Receivership Order is not relevant because the order unambiguously permitted this bankruptcy.  WCD Br. 45-46.  That argument rings hollow.  In state court, WCD argued that the Receivership Order was "void" because it granted the Receiver authority over out-of-state assets—an argument the South Carolina Court rejected.  JA323-26; *see* JA443.  Now, WCD claims the Receivership Order says the opposite—the order's text unambiguously "extended only to WCD's property in South Carolina."  WCD Br. 27 (heading).  WCD's own flip-flopping as to what the

Receivership Order means is reason enough to consider the South Carolina Court's on-the-record explanation of the order's effect. And to the extent the Receivership Order is deemed unambiguous, it is only because its text clearly provides the Receiver exclusive authority to petition for bankruptcy. *Supra* § I.A.1.

**B.** **South Carolina Law Allowed the South Carolina Court to Give the Receiver the Power to File Bankruptcy**

The Receivership Order was issued "pursuant to South Carolina Law" and granted the Receiver authority "as broad as the law permits." JA308. The Receivership Order's reference to South Carolina law did not strip the Receiver of bankruptcy authority, and the Bankruptcy Court erred in concluding otherwise. Opening Br. 33-38.

WCD does not meaningfully defend the Bankruptcy Court's analysis of South Carolina law. *See* WCD Br. 40-42, 48-52. The Bankruptcy Court's state-law analysis turned on a statutory provision relating to corporate custodians (not receivers), *see* JA40-42 (discussing S.C. Code § 33-14-320), but WCD does not claim that analysis was correct or even relevant—instead, WCD says only that "[n]othing prevented" the Bankruptcy Court from looking to that provision. WCD Br. 51; *see* Opening Br. 35-38.

Rather than stand by what the Bankruptcy Court actually said about South Carolina law, WCD identifies a different—and now "primary"—reason why South Carolina law confines the Receiver's authority: the "territorial limits of state

13

courts." WCD Br. 48-52. WCD purports to ground this limitation in S.C. Code § 15-65-10(4), which refers to "property within the State" in the context of foreign corporations.[3] And in WCD's view, this provision precludes the Receiver from holding bankruptcy authority because WCD does not have any property in South Carolina. WCD Br. 48-52. This argument fails for multiple reasons.

*First*, WCD made exactly this argument to the South Carolina Court and lost. In particular, WCD argued that the Receivership Order was "void" because Section 10(4) "only allows a South Carolina court to appoint a receiver over the assets of a foreign corporation that are found 'within the State.'" JA325; *see also* JA427 (180:8-13) (Reconsideration Hearing). But Justice Toal expressly disagreed, explaining that although "[a]ccording to WCD the statute provides that a receiver can only be appointed for a foreign corporation to the extent of their property within this state," South Carolina law in fact "does not limit a receiver's authority in this manner." JA443; *see also* JA443-45 (holding that WCD's "property," consisting of insurance assets, are located within South Carolina for purposes of Section 10(4)); JA427 (180:14-181:19) (same). WCD's arguments regarding South Carolina law are thus nothing more than a direct challenge to the validity of the Justice Toal's

---

[3] WCD criticizes Appellants for "ignor[ing]" the text of Section 10(4), WCD Br. 40-41, but the Bankruptcy Court did not even mention the text that WCD now finds dispositive ("property within the State") or the "territorial limits" it supposedly imposes on South Carolina receivers of foreign corporations, *see* JA35; JA40-42.

ruling on a matter of state law, which federal courts are prohibited from considering pursuant to the *Rooker-Feldman* doctrine. *See infra* § II; *Cape plc v. Anglo Am. plc*, 2024 WL 4647873, at *4 (D.S.C. Aug. 13, 2024) (rejecting argument that receiver "cannot assert control over assets outside of South Carolina" because "questions interpreting the statutory authority of the Receiver must be raised in state court and, if necessary, appealed through the state system" (citing *Rooker* and *Feldman*)).

***Second***, while unnecessary for this Court to reach, WCD's reading of Section 10(4) conflicts with South Carolina precedent interpreting the provision. "That the South Carolina receivership [statute] references 'property within this state' is not a limitation on the Receiver's authority," but rather is a reference "consistent with principles of comity," which "support a state court's authority to vest a statutory receiver to assert an insolvent corporation's rights of action." *Welch v. 3M Co.*, 2023 WL 10365075, at *2 (S.C. Ct. Com. Pl. June 21, 2023). Under South Carolina precedent, therefore, Section 10(4) does not confine the receiver's authority, which is instead governed by more than a century of equitable practice—recognizing that the appointment of a receiver effects a "practical displacement of the boards of directors." *Brookshire*, 52 S.E. at 867; *see* Opening Br. 34 (collecting cases). As a receiver, Mr. Protopapas is "an executive officer of the court, to administer the assets of the estate under the direction of the court." *In re Fifty-Four First Mortg. Bonds*, 15 S.C. 304, 314 (1881) (quoting *Gadsden v. Whaley*, 14 S.C. 210, 215 (1880)). He

thus holds possession of WCD's assets as an "arm of the court." *In re Am. Slicing Mach. Co.*, 118 S.E. 303, 304 (S.C. 1923). Like the Bankruptcy Court, WCD attempts to cabin some of these cases concerning equitable receivership practice to their facts, WCD Br. 50; JA45 n.6, but none of their holdings depended on the facts WCD cites, such as whether the corporation at issue was domestic or foreign. Tellingly, WCD does not cite a single case to support its preferred view of a receiver's authority in analogous circumstances.[4]

The construction that South Carolina courts, including Justice Toal in this case, have given Section 10(4) reflects basic principles of personal jurisdiction. As WCD notes, it is undisputed that the scope of a receiver's authority may not exceed the jurisdiction of the appointing court. *See* WCD Br. 51 (citing *Pollock v. Carolina Interstate Bldg. & Loan Ass'n*, 25 S.E. 977, 980 (S.C. 1896)). But it is also undisputed that state courts may exercise *in personam* jurisdiction over out-of-state defendants, including those that have no physical property in that state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317-19 (1945); *IMO Indus., Inc. v. Kiekart AG*, 155 F.3d 254, 259 (3d Cir. 1998) ("Physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant."). The

---

[4] WCD alludes to due process considerations, WCD Br. 48-49, but did not advance any constitutional argument in bankruptcy court, *see* JA663-89. Any such argument has accordingly been forfeited. *Kars 4 Kids Inc. v. Am. Can!*, 98 F.4th 436, 452 (3d Cir. 2024).

necessary result of exercising jurisdiction over such defendants, then, is that "a judgment [from that state court] could affect [their] ***interest in property outside the State***." *Shaffer v. Heitner*, 433 U.S. 186, 197 (1977) (emphasis added).

Here, no one disputes that the South Carolina Court held personal jurisdiction over the claims brought against WCD, a New Jersey corporation with sufficient contacts with South Carolina. *See id.* at 202. This jurisdiction allowed Justice Toal to enter a $29 million verdict against this New Jersey corporation with, it claims, no physical property in South Carolina, and to award other remedies, including a receivership. *Id.*; *see also In re Whittaker, Clark & Daniels, Inc.*, 2023 WL 4111338, at *3 (Bankr. D.N.J. June 20, 2023) (characterizing receivership statute as "a civil remedy"). And in appointing Mr. Protopapas as Receiver, the South Carolina Court granted him the same authority it had over WCD by virtue of that jurisdiction. Contrary to WCD's assertions, therefore, the court did not "*acquire* extraterritorial jurisdiction" by appointing the Receiver; instead, consistent with *Pollock*, the Receiver was given the same power and authority over WCD as the court had in exercising its specific jurisdiction. 25 S.E. at 980.

***Third***, even assuming South Carolina state courts may not appoint receivers over foreign corporations with no assets in the state, WCD is incorrect in asserting it has no property in South Carolina within the meaning of the South Carolina receivership statute—an argument that, again, the South Carolina Court rejected in

this case. As Justice Toal explained during the Reconsideration Hearing, the authority to appoint a receiver derives from the availability of the corporation's assets "to satisfy a South Carolina obligation," as explained in *Sangamo Weston, Inc. v. National Surety Corp.*, 414 S.E.2d 127 (S.C. 1992). *See* JA427 (180:14-25). *Sangamo*, in turn, holds that under South Carolina law, "[a]ll contracts of insurance on property, lives, or interests in this state ***are considered to be made in the State*** . . . and are subject to the laws of this state." 414 S.E.2d at 130 (quoting S.C. Code § 38-61-10) (emphasis added). As a result, insurance policies that would cover "property, lives, or interests" in South Carolina—even if executed or if the policyholders or insurers reside outside the state—establish sufficient and significant contact with South Carolina. *Id.* at 130-31; *see also Okatie Hotel Grp., LLC v. Amerisure Ins. Co.*, 2006 WL 91577, at *4 (D.S.C. Jan. 13, 2006) (explaining that "neither the South Carolina Supreme Court in *Sangamo* nor the statute emphasize the location of property or lives upon inception of the insurance contract" and "emphasize only the general location of property, lives, and interests within the state and that it is immaterial where the contract was entered into" (internal quotation marks omitted)).

Here, a significant portion of WCD's current assets are in the form of asbestos- and environmental-related insurance receivables, which, by virtue of the $29 million verdict rendered against WCD in the South Carolina Court, are

considered South Carolinian assets. *See* JA575 (20:19-20) (discussing assets consisting of "approximately $107.5 million of insurance coverage"); *see also* Bankr. Ct. Dkt. 134 at 27 (WCD schedule of assets listing interest in approximately fourteen liability insurance policies). Accordingly, Justice Toal recognized (over WCD's objections) that WCD's property is "within" South Carolina and thus properly subject to the receivership.

### C. New Jersey Law Does Not Override the Clear Terms and Effect of the Receivership Order

Finally, WCD faults Appellants for not "mention[ing]" New Jersey law, which by default gives the power to place a corporation into bankruptcy to the corporation's board of directors. WCD Br. 22-26. But no one in this case challenges the uncontroversial proposition that state law generally recognizes a corporation's board as having the default authority to decide whether to put the corporation into bankruptcy—indeed, Appellants recognized precisely that principle, based on the same authority WCD now invokes, in their opening brief. *See* Opening Br. 18 (citing, *inter alia*, *Price v. Gurney*, 324 U.S. 100 (1945)). Rather, this case is about when that default rule can be *displaced*—including through the appointment of a receiver. And here, the express terms of the Receivership Order accomplished that displacement, allowing the Receiver to "fully administer all assets of WCD" to and

make any decisions regarding bankruptcy.  JA308.[5]

But even if it were considered, New Jersey law recognizes the authority out-of-state receivers generally enjoy over New Jersey corporations.  Under New Jersey law, "[d]omestic creditors are not entitled to a preference," and "[t]he policy of [New Jersey] . . . is not to prefer domestic creditors over foreign creditors, in any case of dissolution or insolvency."  *Clark v. Painted Post Lumber Co.*, 89 N.J. Eq. 409, 410 (Ch. 1918).  The primary case WCD cites, *Stone v. New Jersey & H. R. Railway & Ferry Co.*, 75 N.J.L. 172 (Sup. Ct. 1907), illustrates this principle:  there, the New Jersey Supreme Court *rejected* the argument that it should "give the New Jersey creditor an advantage over [a foreign receiver]," explaining that while the receiver could not exercise his powers to disadvantage creditors in New Jersey, "comity requires that he should be acknowledged and aided," and "assets will be so administered that creditors in this state and in the foreign jurisdiction [] fare alike."  *Id.* at 174-75; *see also Hurd v. City of Elizabeth*, 41 N.J.L. 1, 3 (Sup. Ct. 1879) (similar).  If relevant, therefore, the general policy of New Jersey law is to promote and protect the interests of foreign receivers—not to block them altogether.[6]

---

[5] The New Jersey cases WCD cites, *see* WCD Br. 23, are inapposite:  none involved receivers, much less questions about a receiver's bankruptcy-related authority.

[6] WCD claims that Appellants have "forfeited any arguments" regarding New Jersey law because they were not addressed in the opening brief, WCD Br. 24, but "it is well settled that where an appellee raises a[n] argument not addressed by the

Acknowledging that New Jersey accords respect to out-of-state receivers, WCD then faults the Receiver for not following a procedure that WCD itself made impossible. According to WCD, the Receiver "needed to convince a New Jersey court to appoint him as an ancillary receiver and to vest him with control over WCD's corporate affairs." WCD Br. 25. But by filing for bankruptcy before the South Carolina Court could even issue a written order memorializing its denial of WCD's motion for reconsideration—indeed, one day before WCD's response to that proposed order was due—WCD stripped the Receiver of any ability to do anything in "New Jersey court" or any other court, with the automatic stay immediately taking effect. WCD Br. 25. WCD's Kafka-esque suggestion that the Receiver "never went through the proper channels" and was thus left without any authority at all, WCD Br. 26, by virtue of WCD's unauthorized bankruptcy, provides no basis to defend the Bankruptcy Court's ruling or to justify WCD's tactics. *See, e.g.*, *In re Altman*, 2018 WL 3133164, at *2-3, *6 (B.A.P. 9th Cir. June 26, 2018) (holding that proceeding in state court to seek appointment of receiver "would result in a violation of the automatic stay").

---

appellant in its opening brief, the appellant may reply," as Appellants do with respect to WCD's misguided invocation of New Jersey law, *McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 241 (3d Cir. 2012) (internal quotation marks omitted).

**II.  The Bankruptcy Court's Review of WCD's Challenge to the Receivership Order Violated the *Rooker-Feldman* Doctrine**

Ultimately, WCD urges this Court to hold that the South Carolina Court was simply wrong as a matter of state law, a request that the *Rooker-Feldman* doctrine prohibits.  Opening Br. 38-43.  The Bankruptcy Court impermissibly joined in repudiating the South Carolina Court—finding Justice Toal was "misguided," "erroneous," and "mistaken" in vesting the Receiver with such expansive authority.  JA31; JA36; JA38; *see* Opening Br. 38-43.

WCD is unable to explain how its bankruptcy petition is anything but a *de facto* appeal of the Receivership Order.  Indeed, WCD's bankruptcy filings are replete with arguments that were already rejected by Justice Toal.  For example, WCD argued in state court that the Receivership Order was "void" because the South Carolina court "does not have either constitutional or statutory jurisdiction or authority sufficient to appoint a receiver over WCD."  JA326.  Justice Toal rejected this argument, finding "sufficient connections with South Carolina of the Whittaker Clark & Daniels assets . . . to justify the receivership."  JA425.  Yet WCD included an explicit challenge to the Receivership Order in its First Day Declaration—"WCD disputes the validity and enforceability of the receivership order."  JA247.

Although WCD now offers the conclusory statement that "WCD's chapter 11 petition . . . does not challenge the receivership order's validity or the state court's jurisdiction," WCD Br. 57, WCD cannot distance itself from its own assertions.

22

Courts across the country have long held that *Rooker-Feldman* prohibits the use of bankruptcy proceedings to challenge state-court receivership orders, and that is precisely what has happened here. Opening Br. 40-41 (collecting cases); *see also, e.g.*, *Gen-Air*, 208 B.R. at 431 (holding that "[t]he bankruptcy court is not the proper forum to collaterally attack any actions of the state court," including "the state court's appointment of the Receiver," as "[t]he Rooker-Feldman doctrine makes it clear that the decisions of state courts may not be reviewed by the lower federal courts"); *Cape*, 2024 WL 4647873, at *4 (holding that "questions interpreting the statutory authority of the Receiver must be raised in state court and, if necessary, appealed through the state system" under *Rooker-Feldman*).

WCD makes a number of additional arguments, but none is persuasive. ***First***, WCD tries to skirt the *Rooker-Feldman* doctrine by asserting that its Chapter 11 petition is an "independent" claim with potential relief that is sufficiently different from "what WCD could have obtained by seeking appellate review of the Plant verdict or the receivership." WCD Br. 54. But potential appellate review of the Plant verdict is irrelevant to whether the WCD board was authorized to file for bankruptcy. Only appellate review of the Receivership Order matters, and WCD provides no serious argument that the issues relevant to such an appeal would be any different from the issues presented in this one. WCD's arguments would be identical, just as they are identical to the arguments it made in seeking

reconsideration of the Receivership Order.  *Compare, e.g.*, JA323 (arguing in motion for reconsideration that the South Carolina Court "does not have jurisdiction to enter a receivership over a New Jersey corporation with no assets located in South Carolina"), *with* WCD Br. 48-49 (arguing that the South Carolina state court did not have the exterritorial authority required to issue the Receivership Order).

**Second**, WCD claims that recognizing the *Rooker-Feldman* problem with its case "would mean federal courts could never assess parties' arguments concerning the effect of state-court orders on federal lawsuits."  WCD Br. 56.  But Appellants agree that federal courts have the ability to *interpret* state court orders.  What the *Rooker-Feldman* doctrine prohibits is taking the next step to substitute their own legal conclusions in place of the state court's, as demonstrated by the authority WCD cites.  *See Williams v. Wynder*, 232 F. App'x 177, 178-80 (3d Cir. 2007) (unpublished) (interpreting scope of state court order under state law, without deciding whether order was correct as a matter of state law).  But that is what WCD seeks to do here:  after Justice Toal rejected its arguments regarding the territorial limitations South Carolina law places on a receiver's authority, *see* JA308; JA425, WCD turned to federal courts to argue—in Bankruptcy Court, district court, and here—that Justice Toal's conclusions violated South Carolina law.[7]

---

[7] While WCD complains that *Rooker-Feldman* doctrine is not applicable because the receivership is not "final," it was only WCD's own actions to halt all proceedings—

24

*Finally*, WCD argues that its "entitlement to chapter 11 relief is a question of federal bankruptcy law for a federal bankruptcy court, not South Carolina appellate courts." WCD Br. 58. While WCD is correct that whether WCD satisfies chapter 11's requirements is a question of federal bankruptcy law, whether the filing of the Chapter 11 petition was authorized is an independent question and relies on the Receivership Order, the plain text of which prohibits such a filing. *See supra* § 1.

## III. The Bankruptcy Court's Alternative Public Policy Holding Is Meritless

The Bankruptcy Court also impermissibly based its ruling on an additional point of public policy—namely, a discretionary "exception" to the rule that "applicable state law determines whether a bankruptcy filing was authorized" in "cases involving a creditor-driven intracorporate dispute in order to vindicate federal bankruptcy law supremacy," including in "asbestos-related" cases. JA43-45; *see* Opening Br. 43-48.

WCD attempts to minimize the Bankruptcy Court's reasoning by relying on the court's *post hoc* characterization of this rationale as "pure dicta." WCD Br. 60. But WCD itself has characterized this rationale as an "alternative holding." Bankr. Ct. Dkt. 289 (¶ 13). Moreover, whether this Court's recent decision in *In re LTL Management* and the present bankruptcy matter are factually distinguishable is of no

---

filing for bankruptcy the day before its deadline for responding to the proposed written order—that precluded any further review in state court. *Supra* pp. 20-21.

moment—what matters is this Bankruptcy Court's clear (and stated) preference for channeling mass-tort litigation through the bankruptcy system and removing it from state court. *See In re LTL Mgmt.*, 64 F.4th 84, 110 (3d Cir. 2023) (noting "strong conviction that the bankruptcy court is the optimal venue for redressing the harms of both present and future talc claimants"). This preference necessarily colored the Court's analysis in denying the Receiver's motion to dismiss, and as in *LTL*, this Court should reverse.

## IV. To the Extent the Scope of the Receivership Order Is Unclear or Nonjusticiable, the Automatic Stay Should Be Lifted Pending Review in State Court

As Appellants have explained, WCD's petition should be dismissed as unauthorized. But if the scope of the Receivership Order were deemed unclear or a matter properly decided by a state court, the practical solution is to lift the automatic bankruptcy stay for WCD to pursue an appeal of the Receivership Order in state court. Opening Br. 49-50.

WCD responds that this argument has been forfeited and that the Bankruptcy Court would need to grant relief from the stay in the first instance. WCD Br. 61-62. But this Court enjoys wide latitude in how it fashions instructions on remand, and it has specifically instructed bankruptcy courts to consider whether to lift an automatic stay to permit adjudication of a state court appeal. *See H & H Beverage Distribs. v. Dep't of Revenue*, 850 F.2d 165, 168 n.2 (3d Cir. 1988) ("On remand, the bankruptcy

26

court must decide whether to lift the stay to allow completion of [the debtor's] state appeal."). And despite WCD's claim of forfeiture, such an instruction would follow directly from the Receiver's position since the inception of this case: the scope of Justice Toal's jurisdiction is for South Carolina courts to resolve. *See* JA644 (arguing in motion to dismiss that "[t]he only proper avenue for WCD to challenge the receivership court's rulings is in the South Carolina appellate courts").

That approach may be sensible because the South Carolina Supreme Court is currently considering two cases that involve challenges to Justice Toal's appointment of Mr. Protopapas as receiver over foreign corporations related to asbestos liability and have been consolidated and scheduled for argument on February 11, 2025. *See Welch v. Atlas Turner, Inc.*, No. 2023-001096 (S.C. 2023); *Tibbs v. 3M Co.*, No. 2023-001461 (S.C. 2023).

While the Receivership Order is clear and requires dismissal of this bankruptcy, any uncertainty regarding its scope, including any related questions of South Carolina law, would warrant relief from the automatic stay.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment below.

Dated: January 15, 2025          */s/ Matthew Kutcher*

MATTHEW KUTCHER
COOLEY LLP
110 N. Wacker Drive

Suite 4200
Chicago, IL  60606
(312) 881-6500
mkutcher@cooley.com

CULLEN D. SPECKHART
PATRICK J. HAYDEN
EVAN M. LAZEROWITZ
JEREMIAH P. LEDWIDGE
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000

BENJAMIN B. SWEENEY
COOLEY LLP
1333 2nd Street
Suite 400
Santa Monica, CA 90401
(213) 561-3250

ARTHUR J. ABRAMOWITZ
ROSS J. SWITKES
SHERMAN, SILVERSTEIN, KOHL, ROSE
& PODOLSKY, P.A.
308 Harper Drive, Suite 200
Moorestown, NJ 08057
(856) 662-0700

KEVIN C. MACLAY
TODD E. PHILLIPS
SERAFINA A. CONCANNON
CAPLIN & DRYSDALE, CHARTERED
1200 New Hampshire Avenue NW
8th Floor
Washington, DC 20036
(202) 862-7850
*Counsel for Appellant the*
*Official Committee of Talc Claimants*

*/s/ Bryan Killian*

BRYAN KILLIAN
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004
(202) 739-3000
bryan.killian@morganlewis.com

ANDREW J. GALLO
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
(617) 951-8117

*Counsel for Appellant Peter Protopapas*

**CERTIFICATION OF BAR MEMBERSHIP**

Pursuant to Local Rules 28.3(d) and 46.1(e), I certify that I, Matthew Kutcher, am admitted as an attorney and counselor of the United States Court of Appeals for the Third Circuit.

Dated: January 15, 2025       */s/ Matthew Kutcher*

                                MATTHEW KUTCHER
                                COOLEY LLP
                                110 N. Wacker Drive
                                Suite 4200
                                Chicago, IL  60606
                                (312) 881-6500
                                mkutcher@cooley.com

                                *Counsel for Appellant the*
                                *Official Committee of Talc Claimants*

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to Federal Rule of Appellate Procedure 32(g) and Local Rule 31.1, I certify the following:

1.      This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7) because it contains 6,498 words, excluding those parts exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in Times New Roman 14-point font using Microsoft Word 2010.

3.      This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of the electronic brief is identical to the text of the paper copies and because Webroot Endpoint Protection v. 9.0.31.86 was run on the file containing the electronic version of the brief and no viruses were detected.

Dated: January 15, 2025                    */s/ Matthew Kutcher*

MATTHEW KUTCHER
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL  60606
(312) 881-6500
mkutcher@cooley.com

*Counsel for Appellant the*
*Official Committee of Talc Claimants*

31

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on January 15, 2025. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

Dated: January 15, 2025

*/s/ Matthew Kutcher*

MATTHEW KUTCHER
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
(312) 881-6500
mkutcher@cooley.com

*Counsel for Appellant the*
*Official Committee of Talc Claimants*