Nos. 24-2210, 24-2211 & 25-1044

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

————————————

IN RE: WHITTAKER, CLARK & DANIELS, INC.,
*Debtor*,

————————————

WHITTAKER, CLARK & DANIELS, INC., *et al.*,
*Debtors-Appellees*,

v.

BRENNTAG AG, *et al.*,
*Defendants*,

OFFICIAL COMMITTEE OF TALC CLAIMANTS
*Intervenor-Appellant.*

————————————

On Direct Appeal from the United States Bankruptcy Court
for the District of New Jersey
Ch. 11 No. 23-13575; Adv. Proc. No. 23-01245

————————————

## DEBTORS-APPELLEES' RESPONSE
## TO PETITION FOR REHEARING

MICHAEL D. SIROTA
WARREN A. USATINE
FELICE R. YUDKIN
COLE SCHOTZ P.C.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601

PAUL D. CLEMENT
*Counsel of Record*
C. HARKER RHODES IV
NICHOLAS A. AQUART
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, Virginia 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel to Debtors-Appellees*
*(Additional Counsel Listed on Inside Cover)*

November 6, 2025

G. David Dean
COLE SCHOTZ P.C.
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801

Seth Van Aalten
Anthony De Leo
COLE SCHOTZ P.C.
1325 Avenue of the Americas
19th Floor
New York, New York 10019

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and Local Rule 26.1.1, Whittaker, Clark & Daniels, Inc., Brilliant National Services, Inc., L. A. Terminals, Inc., and Soco West, Inc. make the following disclosures:

Whittaker, Clark & Daniels, Inc.'s parent corporations are Soco West, Inc., Brilliant National Services Inc., Ringwalt & Liesche Co., Columbia Insurance Company, BH Columbia Inc, and Berkshire Hathaway Inc. No publicly held companies hold 10% or more of Whittaker, Clark Daniels, Inc.'s stock directly. Berkshire Hathaway Inc., however, holds 10% or more of Whittaker, Clark & Daniels, Inc.'s stock indirectly.

Brilliant National Services Inc.'s parent corporations are Ringwalt & Liesche Co., Columbia Insurance Company, BH Columbia Inc, and Berkshire Hathaway Inc. No publicly held companies hold 10% or more of Brilliant National Services Inc.'s stock directly. Berkshire Hathaway Inc., however, holds 10% or more of Brilliant National Services Inc.'s stock indirectly.

L.A. Terminals, Inc.'s parent corporations are Brilliant National Services Inc., Ringwalt & Liesche Co., Columbia Insurance Company, BH Columbia Inc, and Berkshire Hathaway Inc. No publicly held companies hold 10% or more of L.A. Terminals, Inc.'s stock directly. Berkshire Hathaway Inc., however, holds 10% or more of L.A. Terminals, Inc.'s stock indirectly.

Soco West, Inc.'s parent corporations are Brilliant National Services Inc., Ringwalt & Liesche Co., Columbia Insurance Company, BH Columbia Inc, and Berkshire Hathaway Inc. No publicly held companies hold 10% or more of Soco West, Inc.'s stock directly. Berkshire Hathaway Inc., however, holds 10% or more of Soco West, Inc.'s stock indirectly.

The members of Appellant the Official Committee of Talc Claimants are: (i) Kathy Ripley Didawick, on behalf of Ann Ripley; (ii) Blue Cross Blue Shield Association; (iii) Katia Figueroa; (iv) Virginia Harrington; (v) Juliet Gray; (vi) Sandra Jankowski, individually and on behalf of Leo Jankowski; (vii) Sarah Plant; (viii) Tara Valentine, on behalf of Patricia Krempecki; and (ix) Shelly Yerkes.

The Future Claims Representative is the Hon. Shelley C. Chapman (Ret.).

Other active participants in the Debtors' Chapter 11 cases are: (i) Brenntag AG; (ii) Brenntag Canada Inc.; (iii) Brenntag Great Lakes, LLC; (iv) Brenntag Mid-South, Inc.; (v) Brenntag North America, Inc.; (vi) Brenntag Northeast, Inc.; (vii) Brenntag Pacific, Inc.; (viii) Brenntag Southeast, Inc.; (ix) Brenntag Southwest, Inc.; (x) Brenntag Specialties, Inc.; (xi) Brenntag Specialties LLC; (xii) Coastal Chemical Co., LLC; (xiii) Mineral and Pigment Solutions, Inc.; (xiv) Berkshire Hathaway Inc.; (xv) National Indemnity Company; (xvi) National Liability & Fire Insurance Company; (xvii) Columbia Insurance Company; (xviii) BH Columbia Inc.; (xix) Ringwalt & Liesche Co.; and (xx) Resolute Management, Inc.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................... i

TABLE OF AUTHORITIES.................................................................................. iv

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 2

      A.     Legal Background ........................................................................ 2

      B.     Factual Background....................................................................... 3

      C.     The Panel's Decision ................................................................... 4

ARGUMENT ......................................................................................................... 6

I.     The Unanimous Panel Decision Agrees With The Statutory Text, This Court's Precedent, And Decisions From Other Circuits. ...................... 6

II.    *Emoral* And Its Progeny Were Correctly Decided. ..................................... 13

III.    This Case Is An Especially Poor Candidate For Rehearing. ........................ 15

CONCLUSION ...................................................................................................... 17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**Cases**

*Ahcom, Ltd. v. Smeding,*
623 F.3d 1248 (9th Cir. 2010)........................................................................12

*Bd. of Trs. of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc.,*
296 F.3d 164 (3d Cir. 2002)...................................................... 6, 7, 10, 14

*Diacetyl Plaintiffs v. Aaroma Holdings, LLC,*
574 U.S. 974 (2014).......................................................................................13

*Harrington v. Purdue Pharma L.P.,*
603 U.S. 204 (2024).............................................................................. 2, 16

*In re Educators Grp. Health Tr.,*
25 F.3d 1281 (5th Cir. 1994).........................................................................13

*In re Emoral, Inc.,*
740 F.3d 875 (3d Cir. 2014)................................................................ *passim*

*In re Icarus Holding, LLC,*
391 F.3d 1315 (11th Cir. 2004)....................................................................13

*In re Marvel Ent. Grp.,*
140 F.3d 463 (3d Cir. 1998).............................................................................2

*In re Ozark Rest. Equip. Co.,*
816 F.2d 1222 (8th Cir. 1987).......................................................................13

*In re Tronox Inc.,*
855 F.3d 84 (2d Cir. 2017) ....................................................... 12, 15

*In re Wilton Armetale, Inc.,*
968 F.3d 273 (3d Cir. 2020)............................................................... *passim*

*Kalb, Voorhis & Co. v. Am. Fin. Corp.,*
8 F.3d 130 (2d Cir. 1993)..............................................................................12

*Riccio v. Sentry Credit, Inc.,*
954 F.3d 582 (3d Cir. 2020).................................................................. 13, 15

*Steyr-Daimler-Puch of Am. Corp. v. Pappas*,
   852 F.2d 132 (4th Cir. 1988)................................................................12

**Statutes**

11 U.S.C. §511(a)(1) ...........................................................................9

11 U.S.C. §541 ....................................................................................2

11 U.S.C. §541(a)(1)................................................................... 2, 6, 7

11 U.S.C. §541(a)(7)............................................................................2

11 U.S.C. §544(a)................................................................................3

11 U.S.C. §544(b) ...............................................................................3

11 U.S.C. §1107(a)..............................................................................2

**Rule**

Fed.R.Bankr.P. 9019 ..........................................................................17

# INTRODUCTION

The rehearing petition makes the bold claim that a unanimous panel decision that carefully applied circuit law in fact created a massive intra-circuit conflict. In reality, this case is an exceptionally poor candidate for rehearing. That unanimous decision correctly applied this Court's well-settled precedent and creates no conflict with any decision from this Court or any other federal court of appeals. Indeed, the closest the Committee comes to finding support for their contrary view comes from a dissenting opinion. For over a decade, this Court has defined property of the bankruptcy estate to include claims that (1) "existed at the commencement of the bankruptcy," and (2) are "'general' to the estate" rather than "personal." *In re Wilton Armetale, Inc.*, 968 F.3d 273, 282 (3d Cir. 2020) (brackets omitted); *see In re Emoral, Inc.*, 740 F.3d 875, 881 (3d Cir. 2014). As the panel correctly explained, the successor-liability claims at issue here readily meet that test, and the Committee's attempts to escape that conclusion are meritless. The Committee therefore tries to graft a third requirement onto that established two-part test, insisting that a claim must also be one that the debtor could bring in its own name outside of bankruptcy. But as the panel recognized, that invented additional requirement mistakes a sufficient condition for a necessary one, cannot be squared with this Court's precedent, and would allow creditors to jump the line and pursue claims outside of bankruptcy that should be resolved in the bankruptcy process. And contrary to what

the Committee suggests, nothing in the panel decision remotely undermines or circumvents *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), which addressed an entirely different question.

In the alternative, and in implicit recognition that the panel faithfully applied circuit law, the Committee asks this Court to overrule more than a decade of its established precedent—without even mentioning, let alone attempting to satisfy, the relevant *stare decisis* factors. Settled law, which other circuits have found persuasive, cannot so cavalierly be cast aside. This Court should deny rehearing.

## BACKGROUND

### A. Legal Background

When a debtor files a Chapter 11 petition, its property becomes a bankruptcy estate. 11 U.S.C. §541. In the absence of a bankruptcy trustee, the debtor exercises the trustee's powers as a "debtor-in-possession" of the estate. *See id.* §1107(a). The debtor-in-possession has a strict fiduciary duty to "protect and conserve" the bankruptcy estate "for the benefit of creditors." *In re Marvel Ent. Grp.*, 140 F.3d 463, 474 (3d Cir. 1998).

The bankruptcy estate encompasses all the debtor's property, including "all legal or equitable interests of the debtor in property as of the commencement of the case" and "any interest in property that the estate acquires after the commencement of the case." 11 U.S.C. §541(a)(1), (7). A debtor-in-possession may also step into

the shoes of a hypothetical or actual creditor and assert claims for the benefit of the estate. *Id.* §544(a)-(b).

**B.     Factual Background**

1. The Debtors are four companies that manufactured and distributed various industrial chemicals and minerals. Op.8. In 2004, the Debtors sold most of their assets to Brenntag North America. *Id.* The Debtors retained all liability for asbestos-related tort claims only to the extent arising from their historic operations before the closing of the sale to Brenntag, and agreed to indemnify Brenntag and its affiliates for any liabilities arising out of such tort claims. *Id.*

Since 2007, the Debtors have paid over $300 million in connection with the defense and resolution of over 1,000 lawsuits involving some 2,700 plaintiffs raising asbestos- and environmental-related claims. JA274, 283-84; *see* Op.9. Because that litigation threatened to exhaust the Debtors' remaining resources, the Debtors filed Chapter 11 bankruptcy petitions. JA285, 288.

To preserve their assets for all their creditors, honor the priorities set forth in the Code, and maximize the chances of negotiating a global resolution, the Debtors filed an adversary proceeding seeking a declaratory judgment that certain successor-liability tort claims are property of the Debtors' estates, giving the Debtors sole authority to pursue and settle those claims while their Chapter 11 cases are pending. JA415, 443; *see* Op.11. The Committee intervened, arguing (as relevant here) that

while most successor-liability claims were admittedly part of the Debtors' estates, there should be a carveout for certain asbestos-related claims in certain states based on the so-called "product-line" theory, under which a company that "acquires the manufacturing assets of another corporation and undertakes essentially the same manufacturing operation and practices" may in certain circumstances be held liable for defects in the prior owner's products. Op.11 n.2; *see* Op.11-12.

The bankruptcy court granted summary judgment for the Debtors. It held that under this Court's decision in *Emoral*, the relevant successor-liability claims are property of the Debtors' estates under §541(a). It alternatively held that those claims were also within the Debtors' estates under §544(a)(1) as claims that could be brought by a hypothetical lien creditor. Op.12-13.

## C.     The Panel's Decision

In a unanimous opinion written by Judge Ambro and joined in full by Judges Krause and Matey, the panel affirmed, holding that the bankruptcy court had correctly determined that the successor-liability claims here are property of the Debtors' estates under §541(a) and this Court's settled precedent. Op.26-33. Under *Emoral* and its progeny, "two conditions must be met" for a claim to belong to a debtor's estate: the claim (1) "must have existed at the outset of the bankruptcy," and (2) "must be a 'general' claim" rather than a claim that is "'personal' to a specific creditor." Op.27 (quoting *Emoral*, 740 F.3d at 879). Because it is undisputed that

4

the claims here existed at the outset of the bankruptcy, Op.29 n.12, the panel focused on whether the claims are "general" or "personal," Op.27. That inquiry turns "not on the nature of the injury, but on the theory of liability." Op.27 (quoting *Wilton Armetale*, 968 F.3d at 282). A claim is general when its "theory of liability depends on facts concerning the relationship between the defendant and another party—that is, 'facts generally available to any creditor." Op.28 (quoting *Emoral*, 740 F.3d at 881). In contrast, "a claim is 'personal' when the creditor's injury can be 'directly traced' to wrongful conduct committed by the defendant." Op.27-28 (quoting *Wilton Armetale*, 968 F.3d at 283).

In *Emoral*, the panel explained, this Court applied that test to hold that claims against a successor entity (Aaroma) were "general" claims because the "only theory of liability as to those claims depended on Aaroma's status as Emoral's successor, not its relationship with or conduct toward the plaintiffs." Op.28-29. This case, the panel recognized, "mirrors *Emoral*," as "[t]he Committee's theory of liability against Brenntag depends exclusively on the latter's relationship with the Debtors, not on [Brenntag's] interaction with the individual claimants themselves." Op.29.

The panel rejected the Committee's attempt to "add a third prong to th[e] property-of-the-estate test" by asserting that a claim can be part of the estate only if the debtor had a "cause of action to assert before filing for bankruptcy." Op.30. As the panel explained, that argument—for which the Committee invoked "language

from a footnote" in *Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 n.5 (3d Cir. 2002)—"divines too much from too little." Op.30. While a debtor's "ability to assert[] the claim on his own behalf under state law" is *sufficient* to make the claim property of the estate, "it is not necessary"—which is why neither *Foodtown*, nor *Emoral*, nor *Wilton Armetale* "impose[s] an additional, freestanding condition that a debtor be able to pursue the cause of action under state law." Op.30.[1]

## ARGUMENT

### I. The Unanimous Panel Decision Accords With The Statutory Text, This Court's Precedent, And Decisions From Other Circuits.

The Committee begins by asserting that the unanimous panel decision conflicts with "the plain text of §541(a)(1)," "precedent of this Court," and "all other circuits to have addressed this issue." Pet.6 (capitalization altered). Those bold assertions are wrong at every turn.

1. Section 541(a)(1) is expansive, providing that the bankruptcy estate includes "all legal or equitable interests of the debtor in property," including causes of action, "wherever located and by whomever held." 11 U.S.C. §541(a)(1). As that statutory text makes clear, the estate includes not only claims held by the debtor

---

[1] Judges Ambro and Krause also filed concurrences debating whether state or federal choice-of-law rules govern in bankruptcy. The Committee targets not that issue, but an issue on which the panel was entirely in accord.

itself, but also "all legal or equitable interests of the debtor" in claims "held" by others. *Id.* The Committee does not (and cannot) dispute that property of the estate under §541(a)(1) can include "creditors' claims against a third party," Pet.6, and identifies no conflict between the text of §541(a)(1) and the panel's holding that the Debtors had "legal or equitable interests" in the claims at issue here, Op.26.

2. The Committee fares no better in asserting a conflict between the panel's decision and this Court's decisions in *Wilton Armetale*, *Emoral*, and *Foodtown*. *Contra* Pet.6. The unanimous panel faithfully and carefully applied those precedents, and the Committee's position draws support only from the dissenting opinion in *Emoral*.

As the panel correctly recognized, under this Court's precedent, a claim constitutes property of the estate under §541(a)(1) if it meets two conditions: the claim (1) "must have existed at the outset of the bankruptcy," and (2) "must be a 'general' claim" rather than "'personal' to a specific creditor." Op.27 (quoting *Emoral*, 740 F.3d at 879); *see Wilton Armetale*, 968 F.3d at 282-83; *Foodtown*, 296 F.3d at 170 & n.8. Both elements are satisfied here. Op.27-33.

The Committee does not even contest the first condition. Instead, it challenges the panel's application of the second element, asserting that the inquiry "focuses on whether the 'harm [was] done mainly to the debtor," resulting in only 'indirect[] injur[y]' to creditors." Pet.6 (quoting *Wilton Armetale*, 968 F.3d at 283). That is a

remarkable claim for the Committee to make when it never quoted that language in its merits briefing. It is also wrong: While "harm done mainly to the debtor *can* indirectly injure the creditors, making the claim a general one," that is not the only way to establish a general claim. *Wilton Armetale*, 968 F.3d at 283 (emphasis added). *Emoral* proves the point: The claims there were "based on a 'mere continuation' theory," and did not allege that the successor (Aaroma) had harmed the debtor (Emoral) in any way. 740 F.3d at 880.

In reality, to decide whether a claim is general, the determinative inquiry is whether the theory of liability is "based on facts generally available to any creditor" such that "recovery would serve to increase the pool of assets available to all creditors." *Wilton Armetale*, 968 F.3d at 283 (quoting *Emoral*, 740 F.3d at 881). Conversely, a claim is personal "[o]nly when a particular creditor suffers a direct, particularized injury that can be 'directly traced' to the defendant's conduct." *Id.* Here, the claims at issue are "based on facts generally available to any creditor"— namely, the relationship between the Debtors and Brenntag—and the plaintiffs do not allege any injury that can be "'directly traced' to [Brenntag's] conduct" vis-à-vis the plaintiffs. *Id.*; *see* Op.29. Therefore, under *Wilton Armetale*, *Emoral*, and *Foodtown*, the product-line claims here, like the other successor-liability claims, are "general, not personal." *Wilton Armetale*, 968 F.3d at 283.

3. The Committee claims that the panel "misread *Emoral* in two critical ways." Pet.8. It is wrong on both counts.

First, the Committee asserts that *Emoral* created not a two-part test but a three-part test, by imposing an "additional, freestanding condition" that the debtor must be able to "pursue the cause of action under state law" outside of bankruptcy. Pet.8. Not so. While this Court has sometimes described the general-versus-personal inquiry as looking to whether "the debtor could have asserted the claim on his own behalf under state law," Pet.8 (quoting *Emoral*, 740 F.3d at 879), it has never treated that inquiry as determinative. On the contrary, *Emoral* noted that it was "difficult to imagine a factual scenario" outside of bankruptcy where Emoral "would *or could* bring a claim for successor liability against Aaroma" under state law. 740 F.3d at 881 (emphasis added). And neither *Wilton Armetale* nor *Emoral* analyzed whether the debtors could have brought the claims under state law outside of bankruptcy, confirming that the ability to do so is not some third element of the test. Moreover, Congress knows how to expressly refer to state law outside of bankruptcy, *see, e.g.*, 11 U.S.C. §511(a)(1) ("applicable nonbankruptcy law"), and pointedly did not do so in §541(a)(1).

The Committee devotes three sentences to arguing that *Foodtown* requires this third element, but that is plainly incorrect. *Contra* Pet.8-9. In *Foodtown*, this Court observed that the third-party defendants had directly injured the plaintiffs by their

9

"evasion of withdrawal liability," and so the resulting claim was "personal to the [plaintiffs]." 296 F.3d at 171. *Foodtown* thus stands only for the undisputed proposition that when the plaintiff's injury "can be 'directly traced' to the [third-party] defendant's conduct," the claim is personal. *Wilton Armetale*, 968 F.3d at 283; *see Foodtown*, 296 F.3d at 171. Here, by contrast, "[t]he Committee's theory of liability against Brenntag depends exclusively on the latter's relationship with the Debtors, not on any interaction with the individual claimants themselves." Op.29.

The Committee's proposed approach not only lacks grounding in circuit precedent, but makes no sense. Treating a debtor's ability to bring a claim under state law outside of bankruptcy as determinative would create a patchwork regime in which otherwise identical successor-liability claims are treated differently based on difficult and hypothetical state-law questions, even if those claims are unquestionably general in nature and recovery on those claims would (and should) inure to the benefit of all creditors. The problem is particularly acute because even where debtors could bring such claims in theory, they are highly unlikely to do so in practice absent a bankruptcy, as this Court recognized in *Emoral*. 740 F.3d at 881. As a result, there would be little on-point precedent, and bankruptcy judges would be flying blind in answering these state-law questions. There is no reason to believe that Congress would have foisted that difficult inquiry on bankruptcy judges, especially when it would open the door for certain creditors with no direct injury

10

from a third party to jump the line and undermine "the orderly distribution of assets in bankruptcy" and the "fundamental bankruptcy policy of equitable distribution to all creditors." *Id.* at 879.

Second, the Committee contends that a claim is estate property under *Emoral* "only if it 'inures to the benefit of all creditors,'" and that the panel "ignored" that purported requirement. Pet.10 (quoting *Emoral*, 740 F.3d at 879). Wrong again. *Emoral* does not impose a freestanding benefit-of-all-creditors requirement. Instead, *Emoral* simply observes that making general claims estate property *necessarily* "inures to the benefit of all creditors," by promoting equitable distribution and avoiding a counterproductive race to the courthouse. 740 F.3d at 879.

The Committee argues that because "other creditors have not suffered injury 'the same in kind' as the tort plaintiffs," the product-line claims "cannot be deemed estate property." Pet.11. But as the panel explained, under *Wilton Armetale* and *Emoral*, whether a claim is general or personal depends "not on the nature of the injury, but on the theory of liability." Op.31 (quoting *Wilton Armetale*, 968 F.3d at 282). Because "the facts necessary to establish liability" under the Committee's product-line theory—namely, "the successor's relationship with the manufacturer"—are "generally available to any creditor," the product-line claims (like all the successor-liability tort claims) are general whether or not the Debtors' commercial and contract creditors suffered the same injury. Op.31-32. The

Committee's contrary argument simply "echoes arguments raised in the *Emoral* dissent" that "[t]he *Emoral* majority … rejected." Op.33.

4. The Committee is also flat wrong to claim that "[e]very circuit to consider the issue" has reached the opposite result. *Contra* Pet.9-10. In fact, the Second Circuit has squarely adopted the reasoning of *Emoral*, agreeing that a claim is general when it is "based on facts generally available to any creditor, and recovery would serve to increase the pool of assets available to all creditors," regardless of the "nature of the [particular] injury" that the plaintiffs suffered. *In re Tronox Inc.*, 855 F.3d 84, 103-04 (2d Cir. 2017). Accepting the Committee's arguments would thus create a split with the Second Circuit over the proper interpretation of *Emoral*.

The Committee invokes various cases that it says show the panel erred in holding that a claim can be property of the estate even if the debtor could not bring that claim outside of bankruptcy. Pet.9-10. Two of those cases simply demonstrate that (as the panel concluded) a debtor's ability to bring a claim under state law is *sufficient* to make the claim property of the estate, not that it is necessary. *See Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993); *Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988). Another three are irrelevant. *See Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1251-52 (9th Cir. 2010) (addressing a "substantive alter ego claim" that did not exist under state law, and thus could not be brought by the debtor *or* the creditor); *In re Educators Grp. Health*

*Tr.*, 25 F.3d 1281, 1284-86 (5th Cir. 1994) (holding that certain claims belonged to creditors because they "allege[d] a direct injury to the plaintiff school districts" from the defendants' actions); *In re Ozark Rest. Equip. Co.*, 816 F.2d 1222, 1225 (8th Cir. 1987) (looking to state law to determine "the nature of the alter ego theory"); *see also* JA76 (distinguishing *Ozark*). That leaves one case, decided over twenty years ago, which the Committee never cited for this point in its merits briefing. *See In re Icarus Holding, LLC*, 391 F.3d 1315 (11th Cir. 2004). That case was decided long before this Court's persuasive analysis in *Emoral* (and before *Emoral*'s adoption by the Second Circuit), and this Court denied rehearing en banc in *Emoral* and the Supreme Court denied certiorari despite the purported conflict. *See Diacetyl Plaintiffs v. Aaroma Holdings, LLC*, 574 U.S. 974 (2014) (mem.) (denying certiorari). There is no good reason to grant rehearing now.

## II. *Emoral* And Its Progeny Were Correctly Decided.

Implicitly recognizing that the unanimous panel faithfully applied circuit precedent, the Committee alternatively asks this Court to overrule *Emoral*. Pet.11-12. But the Committee does not even acknowledge the fundamental rule of *stare decisis*, let alone explain what "special justifications" would warrant abandoning the basic principle that "today's Court should stand by yesterday's decisions." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 590 (3d Cir. 2020) (en banc). *Stare decisis* continues to apply when this Court sits en banc. *Id.* The Committee's failure to

engage with *stare decisis* alone warrants denying the Committee's extraordinary request to overrule a decade of settled law.

The Committee asserts that *Emoral* was "wrongly decided," and that *Wilton Armetale* and *Foodtown* show the "nature of the underlying injury is key" to deciding whether a claim is general. Pet.11-12. Not so. In fact, as the panel recognized, *Wilton Armetale* explicitly rejects that proposition. 968 F.3d at 282 ("[W]e focus not on the nature of the injury, but on the theory of liability."); *see* Op.27. The Committee nevertheless offers no argument that *Wilton Armetale* should also be overruled. And the Committee simply misreads *Foodtown*: The claim there was personal not because of the "nature of the underlying injury" to the creditor, *contra* Pet.12, but because the plaintiff suffered "direct injury" from the defendants' *own conduct*—specifically, their "evasion of withdrawal liability." 296 F.3d at 170. The Committee alleges no direct injury from Brenntag's conduct here.

The Committee next invokes the *Emoral* dissent. Pet.12-13. The Committee's felt need to do so fatally undermines its claim that the unanimous panel deviated from *Emoral*, but does not advance its case for overruling that decision. Needless to say, the *Emoral* majority carefully considered the dissent's (and the Committee's) view that the nature of the underlying injury should control, and persuasively rejected it. 740 F.3d at 879-82. This Court then reached the same conclusion again in *Wilton Armetale*. 968 F.3d at 282. The Committee may disagree

14

with those decisions, but that cannot justify overruling settled precedent. *Riccio*, 954 F.3d at 590.

The Committee turns to decisions from other circuits, but they provide equally little support. Indeed, the only decision that post-dates *Emoral*—the Second Circuit's decision in *Tronox*—explicitly *adopted* the *Emoral* majority's sound reasoning, and "disagree[d] with" the *Emoral* dissent's "focus on the nature of the toxic-tort injury." 855 F.3d at 103. It would be bizarre to pull the rug out from under the Second Circuit and create a circuit split by overruling *Emoral* after the Second Circuit adopted it.

## III. This Case Is An Especially Poor Candidate For Rehearing.

1. Even if there were any reason to rethink the panel's decision or *Emoral*, this case is an extremely poor candidate for rehearing, as the result here would be the same even under the Committee's approach.

First, as the Debtors have explained, nothing in state law precludes the Debtors from bringing claims based on a product-line theory of successor liability to recover for the benefit of their creditors. Debtors.Br.29-31. Thus, even if there were a third requirement that the debtor be able to bring the claim under state law, that requirement would be met here.

Second, even if (as the Committee argues) allegations of harm to the debtor were necessary to make a claim general, the product-line claims here would meet

that test, as they *do* involve allegations that the product-line purchase depleted the Debtors' assets.  *See* Berkshire.Br.17-19, 33-34.  *Contra* Pet.2-3, 10-11, 13-14.

Third, even if the successor-liability claims here were not property of the Debtors' estates under §541(a), those claims would still be estate property under §541(a)(7) and §544(a), because they are general claims that could be brought by a hypothetical lien creditor, as the bankruptcy court held.  Debtors.Br.38-47.  That provides an independent basis for affirming the bankruptcy court's decision, underscoring that rehearing would serve no purpose.

2. The Committee insists that rehearing is warranted because (it says) the panel's decision "lays the groundwork to circumvent" the Supreme Court's decision in *Purdue*.  Pet.15-16.  But as the Committee acknowledges, *Purdue* involved a different statutory provision and addressed a separate question.  Indeed, *Purdue* explicitly recognized that "no one questions" a debtor's ability to resolve claims that *are* property of the estate, like the claims here.  603 U.S. at 219.  That decision accordingly has no bearing on this case.

Finally, the Committee's parade of horribles depends on assuming debtors-in-possession will act in bad faith to harm their creditors.  Pet.16.  That assumption is baseless.  As the panel explained, debtors-in-possession "do not enjoy unbounded discretion" in pursuing or settling creditor claims; instead, "they owe fiduciary duties to all creditors … to maximize the value of the estate."  Op.35 n.16.  And any

settlement in bankruptcy, including the settlement here (which would provide half a *billion* dollars to resolve the estate claims), must be scrutinized by the bankruptcy court to ensure it is reasonable and in the best interests of the estate. *Id.*; *see* Fed.R.Bankr.P. 9019. Those safeguards provide more than adequate protection to ensure debtors-in-possession will not settle on terms that are unreasonable or unfair.

## CONCLUSION

This Court should deny rehearing.

Respectfully submitted,

*s/Paul D. Clement*

MICHAEL D. SIROTA
WARREN A. USATINE
FELICE R. YUDKIN
COLE SCHOTZ P.C.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601

G. DAVID DEAN
COLE SCHOTZ P.C.
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801

SETH VAN AALTEN
ANTHONY DE LEO
COLE SCHOTZ P.C.
1325 Avenue of the Americas,
19th Floor
New York, New York 10019

PAUL D. CLEMENT
C. HARKER RHODES IV
NICHOLAS A. AQUART
CLEMENT & MURPHY PLLC
706 Duke Street
Alexandria, Virginia 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel to Debtors-Appellees*

November 6, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume requirements and limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 3,897 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

3. This brief complies with L.A.R. 46.1 because at least one of the attorneys whose name appears on the brief was duly admitted to the Bar of the United States Court of Appeals for the Third Circuit, and is presently a member in good standing at the Bar of said court.

4. This brief complies with L.A.R. 31.1(c) because the text of the electronic brief is identical to the text in the paper copies dispatched on November 6, 2025, and because the virus detection program SentinelOne Agent, version 21.7.7.40005, has been run on the file and no virus was detected.

_s/Paul D. Clement_
Paul D. Clement

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2025, I electronically filed the above with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/Paul D. Clement*
Paul D. Clement